MARC N. BERNSTEIN (SBN 145837)
Email: mbernstein@blgrp.com
SUSAN S. BORANIAN (SBN 173788)
Email: sboranian@blgrp.com
THE BERNSTEIN LAW GROUP, P.C.
555 Montgomery Street, Suite 1650
San Francisco, CA 94111
Telephone: (415) 765-6633
Facsimile: (415) 283-4804

Attorneys for Plaintiff,
BERENICE BRACKETT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BERENICE BRACKETT,<br><br>    Plaintiff,<br><br>vs.<br><br>HILTON HOTELS CORPORATION, a Delaware Corporation, HILTON SUPPLY MANAGEMENT, INC., a Delaware Corporation, KEVIN A. BARRY, an individual, KEVIN BARRY FINE ART ASSOCIATES, a California Corporation, JOHN or JANE DOES 1-100, individuals of presently unknown identity, and ABC CORPORATIONS 1-300, corporations of presently unknown identity,<br><br>    Defendants. | Case No. CV 08-02100 WHA<br><br>**PLAINTIFF BERENICE BRACKETT'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER**<br><br>Hearing:    June 19, 2008<br>Time:       8:00 a.m.<br>Courtroom:  9<br>Judge:     Hon. William H. Alsup |

# TABLE OF CONTENTS

Page

I.      BACKGROUND ........................................................................................ 3

   A.    THE BARRY DEFENDANTS:  NORTHERN DISTRICT ART
         MERCHANTS, AND APPROPRIATORS HERE OF COPYRIGHTED
         PRINTS........................................................................................................... 3

   B.    THE HILTON DEFENDANTS:   NORTHERN DISTRICT
         HOSPITALITY GIANTS, AND ADVERTISERS HERE OF
         INFRINGING IMAGES .................................................................................. 5

II.     ARGUMENT ............................................................................................. 6

   A.    VENUE IS PROPER IN THIS DISTRICT ..................................................... 6

         1.    Venue Is Proper Under Section 1400(a) In Any District
               In Which A Defendant Is Subject to Personal Jurisdiction. ........... 6

         2.    This Court Has Personal Jurisdiction (And Thus Venue)
               Over All Defendants, And For At Least Three Independent
               Reasons. ........................................................................................... 8

               a.  The Court Has Specific Jurisdiction........................................... 8

                   i.   Purposeful Availment ........................................................... 9

                   ii.  Nexus With Forum-Related Activities............................... 11

                   iii  Reasonableness................................................................... 11

               b.  The Court Has General Jurisdiction. ....................................... 14

               c.  All Defendants Are Local Residents Amenable To
                   Jurisdiction Anywhere In The State........................................ 16

   B.    DEFENDANTS' VENUE-TRANSFER ARGUMENTS DO NOT
         OVERCOME THE STRONG PRESUMPTION IN FAVOR OF THE
         PLAINTIFF'S CHOSEN FORUM................................................................ 17

         1.    The Private Interest Factors Favor This District. ........................ 18

         2.    The Public Interest Factors Favor This District............................ 20

i

**TABLE OF CONTENTS**

Page

3.    Courts Have Declined Transfer In Similar Cases ........................ 20

C.    THE STATE TORT CLAIMS ARE NOT PREEMPTED ........................... 22

1.    State Claims With At Least One "Extra Element"
Not Found In Copyright Law Are Not Preempted. .................... 22

2.    Intentional Interference Claims Have Two "Extra Elements,"
As This And Other Courts Have Found ........................................ 22

III.    CONCLUSION ................................................................................................ 25

## TABLE OF AUTHORITIES

Page

**Cases**

*Aagard v. Palomar Builders, Inc.,*
   344 F. Supp. 2d 1211 (E.D. Cal. 2004) ........................................................................... 24

*AdVideo, Inc. v. Kimel Broad. Group, Inc.,*
   727 F. Supp. 1337 (N.D. Cal. 1989) ................................................................. 6, 7, 11, 21

*AEC One Stop Group, Inc. v. CD Listening Bar, Inc.,*
   326 F. Supp. 2d 525 (S.D.N.Y. 2004) ............................................................................ 19

*Altera Corp. v. Clear Logic, Inc.,*
   424 F.3d 1079 (9th Cir. 2005) ............................................................................... 23, 24

*Anichini, Inc. v. Campbell,*
   No. 1:05 CV-55, 2005 WL 2464191 (D. Vt. Oct. 4, 2005) ............................................. 14

*Autodesk, Inc. v. RK Mace Eng'g,*
   No. C 03-5128 VRW, 2004 WL 603382, at *5-*7 (N.D. Cal. Mar. 11, 2004) .......... 10, 17

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
   223 F.3d 1082 (9th Cir. 2000) ....................................................................................... 15

*Blue Compass Corp. v. Polish Masters of America,*
   777 F. Supp. 4 (D. Vt. 1991) ........................................................................................ 14

*Botkin v. Safeco Ins. Co. of America,*
   No. C 03-0246 WHA, 2003 WL 1888873 (N.D. Cal. Apr. 14, 2003) ............................ 21

*Brayton Purcell LLP v. Recordon & Recordon,*
   361 F. Supp. 2d 1135 (N.D. Cal. 2005) ................................................................. passim

*Brush Creek Media, Inc. v. Boujaklian,*
   No. C 02-3491 EDL, 2002 WL 1906620, (N.D. Cal. Aug. 19, 2002) ....................... 23, 24

*Cavallo, Ruffalo & Fargnoli v. Torres,*
   No. C 88-04637 SVW (EX), 1988 WL 161313 (C.D. Cal. Dec. 12, 1988) ............... 23, 24

# TABLE OF AUTHORITIES

Page

*Cochran v. NYP Holdings, Inc.,*

    58 F. Supp. 2d 1113 (C.D. Cal. 1998) ............................................................................ 18

*Columbia Pictures Television v. Krypton Broadcasting, Inc.,*

    106 F.3d 284 (9th Cir. 1997) ..............................................................................passim

*David v. Alphin,*

    No. C 06-04763 WHA, 2007 WL 39400, (N.D. Cal. 2007 Jan. 4, 2007)............. 18, 19, 21

*Decker Coal Co. v. Commonwealth Edison Co.,*

    805 F.2d 834 (9th Cir. 1986) ........................................................................... 17, 18

*Droke House Publishers, Inc. v. Aladdin Distrib. Corp.,*

    352 F. Supp. 1062 (N. D. Ga. 1972) .................................................................. 7, 13

*Dudash v. Varnell Struck & Assoc., Inc.,*

    No. C 04-2748 MHP, 2004 WL 2623903, at * 4 (N.D. Cal. Nov. 16, 2004)..................... 8

*Feltner v. Columbia Pictures Television,*

    523 U.S. 340, 118 S. Ct. 1279 (1998)............................................................... 2, 6

*Goldberg v. Cameron,*

    482 F. Supp. 2d 1136 (N.D. Cal. 2007)..................................................................passim

*Harper & Row Publishers, Inc. v. Nation Enterprises,*

    501 F. Supp. 848 (S.D.N.Y. 1980)................................................................... 24

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*

    466 U.S. 408, 104 S. Ct. 1868 (1952)............................................................... 15

*Jonathan Browning, Inc. v. Venetian Casino Resort, LLC,*

    No. C 07-3983 JSW, 2007 WL 4532214, at *6 (N.D. Cal. Dec. 19, 2007)..............passim

*Kodadek v. MTV Networks, Inc.,*

    152 F.3d 1209 (9th Cir.1998) ........................................................................... 22

*Menken v. EMM,*

    503 F.3d 1050 (9th Cir. 2007) ......................................................................... 12

Plaintiff's Opposition to Defendants' Motion to Dismiss        Case No. CV 08-02100 WHA

# TABLE OF AUTHORITIES

Page

*Mihalek Corp. v. Michigan,*

   595 F. Supp. 903 (E.D. Mich.1984) .................................................................... 7

*Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.,*

   8 F.3d 441 (7th Cir. 1993) ................................................................................. 6

*Multistate Legal Studies, Inc. v. Marino,*

   No. CV 96-5118 ABC (RNBx), 1996 WL 786124 (C.D. Cal. Nov. 4, 1996) .................. 21

*Ochoa v. J.B. Martin and Sons Farms, Inc.,*

   287 F.3d 1182 (9th Cir. 2002) ............................................................. 10, 11, 16

*Quality Improvements Consultants, Inc. v. Williams,*

   No. Civ. 02-3994 (JEL/JGL), 2003 WL 543393, at *7 - *8 (D. Minn. Feb. 24, 2003) ..... 14

*Real Good Toys, Inc. v. XL Machine Ltd.,*

   163 F. Supp. 2d 421 (D. Vt. 2001) ..................................................................... 14

*Schwarzenegger v. Fred Martin Motor Co.,*

   374 F.3d 797 (9th Cir. 2004) .................................................................... 7, 8, 15

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.,*

   No. C 07-0635 JCS, 2007 WL 1455903, (N.D. Cal. May 16, 2007) .................... 22, 23, 24

*STX, Inc. v. Trik Stik, Inc.,*

   708 F. Supp. 1551 (N.D. Cal. 1988) ................................................................... 19

*Summit Machine Tool Mfg. Corp. v. Victor CNC Sys., Inc.,*

   7 F.3d 1434 (9th Cir. 1993) .............................................................................. 23

*Time, Inc. v. Manning,*

   366 F.2d 690 (5th Cir. 1966) ............................................................................. 7

*VE Holding Corp. v. Johnson Gas Appliance Co.,*

   917 F.2d 1574 (Fed. Cir. 1990) ........................................................................ 17

*Williams v. Bowman,*

   157 F. Supp. 2d 1103 (N.D. Cal. 2001) ............................................................. 19

# TABLE OF AUTHORITIES

Page

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
433 F.3d 1199 (9th Cir.), *cert. denied*, 126 S. Ct. 2332 (2006) .......................................... 15

**Statutes**

17 U.S.C. § 106(1), (2), (3), & (5) ........................................................................................ 23

17 U.S.C. § 504 .................................................................................................................... 23

28 U.S.C. Section 1391 ........................................................................................................... 7

28 U.S.C. Section 1400 .................................................................................................. passim

**Other Authorities**

2 William W Schwarzer et al.,
*Federal Civil Procedure Before Trial* § 8:102 (Rev. #1 2008) ............................................. 8

H.R. Rep. No. 100-889, at 70 (1988),
*reprinted in* 1988 U.S.C.C.A.N. 5982, 6031 ..................................................................... 17

Plaintiff's Opposition to Defendants' Motion to Dismiss          Case No. CV 08-02100 WHA

1    This is plaintiff Berenice Brackett's opposition to the motion to dismiss or

2    transfer filed by defendants Kevin Barry, Kevin Barry Fine Art Associates, Hilton

3    Hotels Corporation, and Hilton Supply Management Company.

4    This case presents an unusually stark example of copyright infringement.

5    Defendants are in the business of selecting art and placing it in hotel rooms

6    throughout the United States.  (Declaration of David G. Coyle In Opposition to

7    Defendants' Motion to Dismiss or Transfer (Coyle Decl.) ¶ 4.)  They liked the art of

8    Brennie Brackett, who lived in Sonoma County.  (*Id.* at ¶¶ 10, 13.)  They bought three

9    of her limited-edition prints from the Marin County art dealer who sold her work.

10   (*Id.*)

11   Then they asked the dealer whether Ms. Brackett would consent to the mass-

12   production and distribution of the prints, for use in hundreds or thousands of hotel

13   rooms.  (*Id.*)  On behalf of Ms. Brackett, the dealer unequivocally said no.  (*Id.*)

14   The defendants then copied the prints anyway.  They made hundreds or

15   thousands of copies and placed them in hotel rooms nationwide.  (*Id.* at ¶¶ 16-17.)

16   They also put images of the works on Web pages intended to attract hotel franchisees

17   and customers.  (*Id.*)  Kevin Barry confided to a witness in the Northern District that

18   he had made and sold the copies, and that he knew doing so was wrong.

19   (Declaration of Victoria Ryan In Opposition to Defendants' Motion to Dismiss or

20   Transfer (Ryan Decl.) ¶¶ 4-7.)  With the case for liability thus very strong, trial will

21   largely concern willfulness and damages.

22   Defendants now move the Court for (1) dismissal for improper venue, or

23   alternatively, (2) discretionary transfer of the case to the Central District, and (3)

24   dismissal of Ms. Brackett's tortious interference claims as preempted by federal

25   copyright law.  Each argument fails.  Copyright venue lies in any district that has

26   jurisdiction over the defendants.  *E.g.*, *Columbia Pictures Television v. Krypton*

27

Plaintiff's Opposition to Defendants' Motion to Dismiss          Case No. CV 08-02100 WHA

1    *Broadcasting, Inc.*, 106 F.3d 284, 288-89 (9th Cir. 1997), *rev'd on other grounds sub nom.*

2    *Feltner v. Columbia Pictures Television*, 523 U.S. 340, 118 S. Ct. 1279 (1998).  Here, the

3    Northern District's jurisdiction is unquestionable.  In addition to deep and

4    longstanding business ties with this district, the defendants specifically came here to

5    buy the artwork they illegally copied and distributed.  Hilton also unlawfully

6    displayed the art on its website to attract customers from, among other places, this

7    district.  These and other facts overwhelmingly demonstrate personal jurisdiction,

8    and hence venue.

9        The Court should also decline defendants' request for a discretionary transfer.

10    All four defendants regularly do business in this district, key events occurred here,

11    and there are important witnesses here who could not be compelled to attend a

12    Central District trial.  A strong presumption favors the plaintiff's chosen forum.  *E.g.*,

13    *Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*, No. C 07-3983 JSW, 2007 WL

14    4532214, at *6 (N.D. Cal. Dec. 19, 2007).  That presumption is especially meaningful

15    here, where Ms. Brackett is a Sonoma County resident who has no business in L.A.

16    and rarely travels there.  (Declaration of Berenice Brackett In Opposition to

17    Defendants' Motion to Dismiss or Transfer (Brackett Decl.) ¶¶ 3-5.)  Her

18    inconvenience and expense in litigating this case in Los Angeles far outweighs any

19    inconvenience the reverse trip would cause defendants, two of whom have fifty

20    hotels in the district and the other two of whom regularly conduct business here.

21        Finally, defendants urge that Ms. Brackett's state law tortious interference

22    claims are preempted by copyright law.  Defendants rely on a twenty-year-old, out-

23    of-circuit decision that is not the law here.  As we show, on facts very similar to those

24    here the Ninth Circuit, this Court, and other courts in the circuit have all upheld

25    tortious interference claims in the face of copyright preemption challenges.

26

27

I.      BACKGROUND

    A.      THE BARRY DEFENDANTS:

        NORTHERN DISTRICT ART MERCHANTS, AND
        APPROPRIATORS HERE OF COPYRIGHTED PRINTS

Defendant Kevin Barry is a Los Angeles-based art dealer, and the proprietor of defendant Kevin Barry Fine Art Associates, a California corporation. (Compl. ¶¶ 8-9, 15; Declaration of Marc N. Bernstein In Opposition to Defendants' Motion to Dismiss or Transfer (Bernstein Decl.) Exh. A; Coyle Decl. ¶ 4.)  For at least the past five years, Barry and his company have regularly done business in the Northern District of California.  (Coyle Decl. ¶¶ 4-11 & Exhs. A-C, E.)  As one example, since 2003 the Barry defendants have had a continuous, ongoing purchasing and consignment relationship with ArtBrokers, Inc., an art publisher and dealer in Marin County.  (*Id.* at ¶¶ 2-11 & Exhs. A-C, E.)  ArtBrokers regularly consigned and sold art to the Barry defendants.  (*Id.* at ¶ 5.)  Mr. Barry and his employees personally traveled to ArtBrokers to browse its art collection.  (*Id.* at ¶ 8.)  A business record shows over eighty sale transactions between ArtBrokers and the Barry defendants, including invoices sent from Marin and payments made there by the Barry defendants.  (*Id.* at ¶ 6 & Exh. A.)  Sample sales invoices and consignment records also clearly demonstrate ongoing business between the Barry defendants and ArtBrokers.  (*Id.* at ¶ 7 & Exh. B.)

The Barry defendants come to the Northern District not just to buy art, but also to sell it.  (*Id.* at ¶¶ 8-9 & Exh. C.)  For example, in an e-mail to potential Northern California art customers, Barry's company announced that its employee (and Mr. Barry's daughter) Allison Barry was coming to the Bay Area to "show[] new original artwork by a wide variety of artists."  (*Id.* Exh. C.)  The e-mail offered to have

1   Allison "stop by your office" in the event "you are currently looking for artwork for

2   your interior project." (*Id.*) The Barry defendants also supply art to a San Rafael-

3   based interior design firm. (*Id.* at ¶ 9.)

4       In late 2005 or early 2006, the Barry defendants bought three limited-edition

5   Brennie Brackett "giclées" from ArtBrokers. (*Id.* at ¶¶ 10-11 & Exhs. D-E.) A "giclee"

6   is a high-resolution, high-quality print of artwork, typically on canvas or fine paper.

7   (*Id.* at ¶ 3.) ArtBrokers is the exclusive outlet for Ms. Brackett's giclées. (*Id.*) The

8   Barry Defendants bought *Falling Into Place*, *Winter's Velvet*, and *Great Expectations*.

9   (*Id.* at ¶¶ 10-11 & Exhs. D-E.) They placed their order for the prints by a telephone

10  call or fax to ArtBrokers in Marin County. (*Id.*) The art was shipped from Marin

11  County, invoiced from there, and paid for there. (*Id.* at ¶ 10.)

12      When Barry bought the three Brackett prints, he also bought limited-edition

13  giclées of two other Northern District artists: Victoria Ryan and Woodward Payne.

14  (*Id.* at ¶ 11.) Hilton's website later featured unauthorized copies of these artists'

15  prints. (Ryan Decl. ¶ 6.)

16      Around the time Mr. Barry purchased these prints, and then a second time

17  some months later, Mr. Barry called ArtBrokers to inquire about buying bulk copies

18  of prints. (Coyle Decl. ¶ 13.) Mr. Barry specifically requested the prints of Brennie

19  Brackett, Woodward Payne, and Victoria Ryan. (*Id.*) He offered $5 per print, a price

20  ArtBrokers considered grossly inadequate. (*Id.*) ArtBrokers unequivocally rejected

21  the offer. (*Id.*)

22      In an end-run around ArtBrokers, Barry then directly contacted Victoria Ryan.

23  (Ryan Decl. ¶¶ 4-5; Coyle Decl. ¶ 14.) Barry asked Ms. Ryan whether she would be

24  willing to sell her work in bulk to Kevin Barry Fine Art Associates, for resale to

25  Hilton Hotels. (*Id.*) Mr. Barry said that Hilton wanted the copies for its Homewood

26  Suites hotel chain. (Ryan Decl. ¶ 5.) Ms. Ryan said she would not sell her prints to

27

1   Mr. Barry, and told him that he needed to talk to ArtBrokers, not directly to her.  (*Id.*

2   at ¶¶ 4-5.)  Ms. Ryan later looked at the Homewood Suites Web pages and found

3   images of the artwork of Brennie Brackett, Woodward Payne, and herself.  (*Id.* at ¶ 6.)

4   When Mr. Barry called back to press Ms. Ryan about selling him her prints, she

5   confronted him about the artists' work she had seen on the Web.  (*Id.* at ¶ 7.)  Barry

6   told Ms. Ryan, "I did it to Brennie and I did it to Woody, but I didn't do it to you."

7   (*Id.*)  He admitted altering and copying the Brackett and Payne prints.  (*Id.*)  He said

8   he knew what he did was wrong, but that this was just "business."  He said he "had

9   no choice" because Hilton wanted those particular prints.  (*Id.*)

10

11          B.      THE HILTON DEFENDANTS:

12                  NORTHERN DISTRICT HOSPITALITY GIANTS, AND
                    ADVERTISERS HERE OF INFRINGING IMAGES

13

14          Hilton Hotels Corporation is "the leading global hospitality company, with

15   more than 2,800 hotels and 480,000 rooms in 76 countries and territories."  (Bernstein

16   Decl. Exh. B.)  This includes an enormous presence in the Northern District.  (*Id.* at

17   C.)  The company owns, franchises, or runs over fifty hotels here.  (*Id.*)  Its Northern

18   District operations encompass not only the day-in, day-out rental of thousands of

19   hotel rooms, but also the rental of conference rooms, meeting rooms, and offices, and

20   the provision of photocopying, mail, business center, and even secretarial services.

21   (Bernstein Decl. ¶ 6 & Exh. D.)  Hilton also operates restaurants in its hotels.  (*Id.*)

22          In equipping and supplying its hotels, Hilton acts as the agent for one of its

23   wholly-owned subsidiaries, defendant Hilton Supply Management.  (Compl. ¶ 21.)

24   Hilton Supply Management makes the actual purchases, reselling the supplies or

25   furnishings to hotel owners.  (Bernstein Decl. ¶ 7 & Exh. E; Coyle Decl. ¶ 19.)  In

26   particular, artwork purchased for use in Hilton hotels is purchased by Hilton Supply

27   Management.  (*Id.*)

1    After the Barry defendants procured Brennie Brackett's artwork from this

2    district, Hilton used infringing images of the art in Web advertisements directed to

3    potential franchisees and travelers, including those in this district.  (Coyle Decl.

4    ¶¶ 16-18 & Exh. F.)  ArtBrokers' president found two kinds of infringing

5    reproductions on the Web pages of Hilton's Homewood Suites division.  (*Id.*)  First,

6    he found model Homewood Suites hotel rooms incorporating the images available

7    for purchase by Homewood Suites franchisees.  (*Id.*)  Second, he saw slightly

8    modified images of the artwork on pages showing travelers the look of individual

9    hotel rooms.  (*Id.*)

10

11    II.    ARGUMENT

12        A.    VENUE IS PROPER IN THIS DISTRICT

13            1.    Venue Is Proper Under Section 1400(a) In Any
                    District In Which A Defendant Is Subject to
14                  Personal Jurisdiction.

15    "Venue under 28 U.S.C. section 1400(a) is proper in any judicial district in

16    which the defendant would be amenable to personal jurisdiction if the district were a

17    separate state."  *Columbia Pictures Television v. Krypton Broadcasting, Inc.*, 106 F.3d 284,

18    288-89 (9th Cir. 1997), *rev'd on other grounds sub nom. Feltner v. Columbia Pictures*

19    *Television*, 523 U.S. 340, 118 S. Ct. 1279 (1998).  *Accord, e.g., Milwaukee Concrete Studios,*

20    *Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 445 (7th Cir. 1993) (citing cases); *id.* at 454-55 (Shadur,

21    J., concurring) (citing "legion" of cases); *Jonathan Browning, Inc. v. Venetian Casino*

22    *Resort, LLC*, No. C 07-3983 JSW, 2007 WL 4532214, at *5 (N.D. Cal. Dec. 19, 2007);

23    *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1143 (N.D. Cal. 2007); *Brayton Purcell LLP v.*

24    *Recordon & Recordon*, 361 F. Supp. 2d 1135, 1138 (N.D. Cal. 2005); *AdVideo, Inc. v.*

25    *Kimel Broad. Group, Inc.*, 727 F. Supp. 1337, 1341 (N.D. Cal. 1989).

26

27

1    The reason is simple.  Section 1400(a) permits venue in any district where the

2    defendant either resides or "may be found."  A defendant "may be found" in any

3    district in which it is amenable to personal jurisdiction.  *E.g.*, *AdVideo, Inc.*, 727

4    F. Supp. at 1341.

5        Ignoring this settled point of law, the defendants fashion their own,

6    competing standard.  They contrast the copyright venue provision (§ 1400(a)) with

7    the venue provisions for patent and non-IP cases (§§ 1400(b) and 1391).  (MPA 2:4-

8    26.)  Then, invoking Supreme Court cases from such far-flung areas as criminal

9    conspiracy law (*Erlenbaugh*) and the Voting Rights Act (*City of Rome*), they urge that

10   copyright venue is *narrower* than patent or general venue.  (*Id.*)  Defendants' home-

11   spun standard is exactly the opposite of the law.  Section 1400(a) embraces a "*less

12   restrictive* venue standard than does either § 1391 or subsection (b) of § 1400."

13   *Mihalek Corp. v. Michigan*, 595 F. Supp. 903, 906-07 (E.D. Mich.1984) (emphasis

14   added); *Time, Inc. v. Manning*, 366 F.2d 690, 697-98 (5th Cir. 1966) ("§ 1400(a) provides

15   *less* rather than *more* restrictive venue standards than does either section 1391(c) or

16   section 1400(b)") (emphasis added); *Droke House Publishers, Inc. v. Aladdin Distrib.

17   Corp.*, 352 F. Supp. 1062, 1064 (N.D. Ga. 1972) ("§ 1400 does not impose a restrictive

18   standard").

19       Where, as here, venue is challenged by written motion, "the plaintiff need

20   only make a prima facie showing of jurisdictional facts."  *Schwarzenegger v. Fred

21   Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation and internal quotation

22   marks omitted) (personal jurisdiction challenge).  *Accord Brayton Purcell LLP v.

23   Recordon & Recordon*, 361 F. Supp. 2d 1135, 1138-39 (N.D. Cal. 2005) (copyright venue

24   challenge) (noting procedure is the same for personal jurisdiction or venue).

25       Under this prima facie standard, "uncontroverted allegations in the complaint

26   must be taken as true," and "[c]onflicts between the parties over statements

27

1   contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374

2   F.3d at 800.

3       Finally, there is no special pleading standard or magic language needed to

4   establish venue. *Dudash v. Varnell Struck & Assoc., Inc.*, No. C 04-2748 MHP, 2004 WL

5   2623903, at * 4 (N.D. Cal. Nov. 16, 2004); 2 William W Schwarzer et al., *Federal Civil*

6   *Procedure Before Trial* § 8:102 (Rev. #1 2008).  Indeed, a complaint need contain no

7   venue allegations at all.  *Id.*

8       This disposes of defendants' recurring cavil that although Ms. Brackett cites

9   venue section 1391 (which is applicable to her state law claims) she omits to cite

10  venue section 1400(a) (which is applicable to her copyright claims).  (*Compare*

11  MPA 1:3-6; 2:1-3; 2:27 to 3:2; and 5:6-9 (complaining about no citation of § 1400) *with*

12  *Dudash*, 2004 WL at *4 (noting that venue allegations are optional) *and* 2 William W

13  Schwarzer, *Federal Civil Procedure Before Trial* at § 8:102 (same).)

14      If, as we now show, venue is proper in this district, then the form of

15  Ms. Brackett's venue allegations—and indeed even their presence—is irrelevant.

16

17          2.    This Court Has Personal Jurisdiction (And
                  Thus Venue) Over All Defendants, And For At
18                Least Three Independent Reasons.

19      Personal jurisdiction may be of either of two types: specific or general.  Each is

20  present here.  Additionally, each of the four defendants is a California resident, an

21  independent basis for jurisdiction in any district in the state.

22

23              a.    The Court Has Specific Jurisdiction.

24  Specific jurisdiction has three elements:

25          1)    the defendant must purposefully avail himself
                  of the privilege of conducting activities in the
26                forum, thereby invoking the benefits and
                  protections of its laws;

27

---

8

2)    the claim must arise out of or result from the defendant's forum-related activities; and

3)    the exercise of jurisdiction must be reasonable.

*Columbia Pictures Television*, 106 F.3d at 289.

i.    Purposeful Availment

The first requirement, "purposeful availment," is easily met here.  The complaint alleges the defendants appropriated Ms. Brackett's copyrighted artworks *from this district* and then intentionally copied them.  (*See, e.g.*, Compl. ¶ 3, ¶¶ 15-17.)  This alone satisfies the purposeful availment element.  *Columbia Pictures Television*, 106 F.3d at 289 (purposeful availment satisfied by willfully infringing copyright known to be owned in the forum district).  *See also Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1140 (N.D. Cal. 2005) (same).

Yet there was more purposeful availment here.  Kevin Barry selected Ms. Brackett's prints from the inventory of her Marin County art dealer, a company with whom Barry and his company had a longstanding business relationship.  (Coyle Decl. ¶¶ 4-5, 8, 10.)  The prints were purchased from Marin County.  (*Id.* ¶¶ 10-11 & Exh. E.)  They were invoiced from Marin County, and paid for there.  (*Id.* at ¶ 10.)  Marin County was also where Kevin Barry called the art dealer to make his (unsuccessful) bid to purchase bulk quantities of Ms. Brackett's three prints.  (*Id.* at ¶ 13.)  These were the same prints the defendants then copied *en masse* and put on display on Hilton websites and in Hilton hotel rooms across the United States.  (*Id.* at ¶¶ 16-17.)

These circumstances far exceed the minimum required showing of "purposeful availment."  *See, e.g., Columbia Pictures Television*, 106 F.3d at 289 (willful infringement of copyrights known to be owned in the forum district); *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1144-46 (N.D. Cal. 2007) (release of movie that would be seen in forum district; *Brayton Purcell LLP*, 361 F. Supp. 2d at 1140-42 (willful

9

1   infringement and posting on the Internet of infringing material); *Autodesk, Inc. v. RK*

2   *Mace Eng'g*, No. C 03-5128 VRW, 2004 WL 603382, at *5-*7 (N.D. Cal. Mar. 11, 2004)

3   (willful infringement of copyrights whose owner defendant "should have known"

4   was headquartered in forum district).

5       Because the Barry defendants were the agents of the Hilton defendants, their

6   purposeful availment was also Hiltons'.  28 U.S.C. § 1400(a) (venue lies where

7   defendant "or his agent" may be found); *Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287

8   F.3d 1182, 1189 (9th Cir. 2002) (jurisdiction over agent establishes jurisdiction over

9   principal).  (*See* Compl. ¶ 21 (alleging agency).)

10      But Hilton also separately availed itself of the Northern District.  The Web

11  pages of its Homewood Suites division publicly displayed model hotel rooms

12  featuring infringing images of Ms. Brackett's works.  (Coyle Decl. ¶ 16-17.)  These

13  images were viewable, and viewed, in the Northern District, as Hilton surely

14  intended.  Hilton wanted Northern California franchisees, no less than franchisees

15  elsewhere, to buy the model hotel rooms it advertised.  Hilton also put Ms. Brackett's

16  artwork on Web pages showing actual Homewood Suites hotel rooms.  (*Id.*)  These

17  infringing displays were clearly meant to attract travelers—including those from the

18  Northern District—to Homewood Suites hotels.

19      All of this clearly demonstrates Hilton's purposeful availment of the benefits

20  of this district.  *Brayton Purcell LLP*, 361 F. Supp. 2d at 1142 (where willful

21  infringement alleged, presence of infringing content on Internet established

22  purposeful availment because it was "not inconceivable" a consumer in the district

23  might see the material and purchase services).

24      Since Hilton is an agent of the other defendants, this is also an additional basis

25  for jurisdiction over them.  *Ochoa*, 287 F.3d at 1189 (jurisdiction over agent establishes

26  jurisdiction over principal).  (Compl. ¶ 21 (alleging agency).)

27

1

2                                ii.   Nexus With Forum-Related Activities

3          Specific jurisdiction next requires that the plaintiff's claims "arise out of or

4   result from the defendant's forum-related activities."  *E.g.*, *Columbia Pictures*

5   *Television*, 106 F.3d at 289.  This is measured by "but-for causation"; that is, that the

6   plaintiff would not have been injured but for defendants' conduct directed toward

7   the subject forum.  *Goldberg*, 482 F. Supp. 2d at 1146.

8          This requirement is also met here.  Defendants' selection and acquisition of

9   Ms. Brackett's copyrighted artwork from the Northern District were the means by

10  which their copyright infringement was effected.

11                                iii.   Reasonableness

12         Finally, the court's exercise of jurisdiction must be reasonable, *i.e.*, it must

13  "comport with fair play and substantial justice."  *E.g.*, *Goldberg*, 482 F. Supp. 2d at

14  1146.  Once purposeful availment and causation have been shown, "there is a

15  *presumption of reasonableness*."  *Columbia Pictures Television*, 106 F.3d at 289 (citation

16  and internal quotation marks omitted) (emphasis in original).  It becomes the

17  defendant's burden to rebut the presumption by presenting "a compelling case" that

18  jurisdiction "would, in fact, be unreasonable."  *AdVideo v. Kimel Broad. Group, Inc.*, 727

19  F. Supp. 1337, 1341 (N.D. Cal. 1989) (citations and internal quotation marks omitted).

20         Courts weigh reasonableness under a seven-part test:

21              "(1) the extent of the defendants' purposeful interjection into the
                forum state's affairs; (2) the burden on the defendant of
22              defending in the forum; (3) the extent of conflict with the
                sovereignty of the defendants' state; (4) the forum state's interest
23              in adjudicating the dispute; (5) the most efficient judicial
                resolution of the controversy; (6) the importance of the forum to
24              the plaintiff's interest in convenient and effective relief; and (7)
                the existence of an alternative forum.

25

26

27

                                             11

1    *E.g.*, *Goldberg*, 482 F. Supp. 2d at 1146.  *But cf. Columbia Pictures Television*, 106 F.3d at

2    289-90 (finding reasonableness without using test).

3        Defendants cannot make a "compelling case" that jurisdiction is unreasonable

4    under these factors.  Defendants have purposefully interjected themselves in this

5    district by browsing and selecting from the art collection of Ms. Brackett's Marin

6    County art dealer, including through in-person visits; by placing orders in Marin

7    County for Ms. Brackett's artwork; and by purchasing and paying for the artwork

8    there.  (*See* Coyle Decl. ¶¶ 8, 10-11.)  The burden of litigating here rather than in L.A.

9    would be minimal.  *Jonathan Browning, Inc.*, 2007 WL 4532214, at *5 (finding no

10   significant burden on Las Vegas-based hotel defendants from litigating copyright

11   infringement claims in San Francisco) (quoting *Menken v. EMM*, 503 F.3d 1050, 1060

12   (9th Cir. 2007)).  *See also Brayton Purcell LLP*, 361 F. Supp. 2d 1135, 1143-44 (N.D. Cal.

13   2005) (finding "minimal" burden for San Diego defendant to litigate copyright claim

14   in the Northern, rather than the Southern, District of California) ("the distance

15   between San Diego and San Francisco is not great, and travel between the cities is not

16   especially inconvenient"); *Goldberg*, 482 F. Supp. 2d at 1146 (finding "little burden on

17   defendants if they were to litigate the case in [the Northern] rather than the Central

18   District of California"; "Travel between Los Angeles and San Jose is not especially

19   inconvenient").

20       Nor can defendants meet their burden under the remaining factors.  There is

21   no "conflict of sovereignty" between the Northern and Central Districts; this district

22   clearly has an interest in adjudicating the willful infringement of copyrights owned

23   by one of its residents; there will be few if any inefficiencies in adjudicating the case

24   here, since relevant documents and witnesses will be found in both districts (with

25   this district containing Ms. Brackett, her art dealer, other artists and witnesses who

26   were contacted by Mr. Barry, and all of their documents); and litigating in this forum

27

Plaintiff's Opposition to Defendants' Motion to Dismiss                Case No. CV 08-02100 WHA

1    rather than one several hundred miles south is important to Ms. Brackett given her

2    residence in the northern county of Sonoma.

3        Thus the requirements of purposeful availment, causation, and reasonableness

4    are all met here.  Ninth Circuit and Northern District cases have each rejected section

5    1400(a) venue challenges by defendants with fewer forum contacts than those here.

6        A recent, strikingly similar case is *Jonathan Browning, Inc. v. Venetian Casino

7    Resort, LLC*, No. C 07-3983 JSW, 2007 WL 4532214 (N.D. Cal. Dec. 19, 2007).  There,

8    another large hotel—in that case the Venetian of Las Vegas—was accused of

9    intentionally infringing the copyrighted designs of a San Francisco-based maker of

10   decorative lighting fixtures.  *Id.* at *1.  The Venetian bought some sample fixtures

11   from the designer and solicited a high-volume bid from it, but in the end simply

12   made its own copies of the fixtures and installed thousands of them in its hotel.  *Id.*

13   The designer filed suit in the Northern District of California.  *Id.*

14       The Venetian moved to dismiss under section 1400(a).  *Id.* at *2.  It argued that

15   the alleged copyright infringement occurred in Las Vegas, not California, so all of the

16   important witnesses and documents would be there.  *Id.* at *4-*5.  The Court rejected

17   these arguments and denied the dismissal motion.  *Id.*  It concluded it had specific

18   jurisdiction over the Venetian because the hotel had contacted the designer in San

19   Francisco, and knew that its actions "would be felt" there.  *Id.*

20       Other copyright cases have likewise found specific jurisdiction on records

21   similar to or sparser than the present one.  *E.g.*, *Brayton Purcell LLP v. Recordon &

22   Recordon*, 361 F. Supp. 2d 1135, 1137-44 (N.D. Cal. 2005) (defendant posted infringing

23   Web display that could "conceivably" have been seen in the district); *Columbia

24   Pictures Television*, 106 F.3d at 289 (copyright owner was known to have its principal

25   place of business in the district); *Goldberg v. Cameron*, 482 F. Supp. 2d at 1143-46

26   (movie released elsewhere would have "effect" in forum district).

27

1    The *Blue Compass* decision cited by defendants does not help their venue

2    argument.  (*See* MPA 3-4.)  That case involved a California defendant who had never

3    set foot in Vermont, in marked contrast to the present defendants' continuing,

4    repeated, business dealings and contacts in the Northern District, including their

5    physical presence here and including the purchase of the copyrighted works here.

6    *Cf. Blue Compass Corp. v. Polish Masters of America*, 777 F. Supp. 4, 4-6 (D. Vt. 1991).

7    Additionally, in reaching its result, the Vermont district court relied on a distinction

8    between individual and corporate copyright defendants that is contrary to the law of

9    this and other circuits.  777 F. Supp. at 4-6.  The court thought only corporate

10   copyright defendants, not individuals, were subject to venue wherever jurisdiction

11   lay.  *Id*.  Subsequent decisions in the District of Vermont and elsewhere have limited

12   or rejected this *sue generis* distinction.  *Quality Improvements Consultants, Inc. v.*

13   *Williams*, No. Civ. 02-3994 (JEL/JGL), 2003 WL 543393, at *7 - *8 (D. Minn. Feb. 24,

14   2003); *Real Good Toys, Inc. v. XL Machine Ltd.*, 163 F. Supp. 2d 421, 425-26 & n.3 (D. Vt.

15   2001); *Anichini, Inc. v. Campbell*, No. 1:05 CV-55, 2005 WL 2464191, at *5 -*6 (D. Vt.

16   Oct. 4, 2005).

17   More importantly, *Blue Compass's* unique venue exception directly

18   contravenes controlling Ninth Circuit authority.  *Columbia Pictures Television*

19   specifically applied the "jurisdiction equals venue" rule in a case involving venue

20   over an individual defendant.  106 F.3d at 288, 289.

21   This Court thus has specific jurisdiction over all defendants, making venue

22   proper here.  But as an independent basis for venue, the Court also has general

23   jurisdiction.

24                       b.   The Court Has General Jurisdiction.

25   A court has general jurisdiction when the defendant has "'continuous and

26   systematic general business contacts'" with a forum that "approximate physical

27

14

1  presence" there.  *Schwarzenegger*, 374 F.3d at 801 (quoting *Helicopteros Nacionales de*

2  *Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 1873 (1952)).  Factors

3  demonstrating general jurisdiction are "whether the defendant makes sales, solicits

4  or engages in business in the state, serves the state's markets, designates an agent for

5  service of process, holds a license, or is incorporated

6  there." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir.

7  2000), *overruled on other grounds*, *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

8  *L'Antisemitisme*, 433 F.3d 1199, 1206-07 (9th Cir.), *cert. denied*, 126 S. Ct. 2332 (2006).

9       Each one of these factors is present here.  Kevin Barry and his company have

10  made and solicited sales in the Northern District, made purchases here, and served

11  the art market here.  (Coyle Decl. ¶¶ 4-11 & Exhs. A-C, E.)  Kevin Barry Fine Arts

12  Associates is also incorporated to do business in California, which includes the

13  Northern District.  (Bernstein Decl. Exh. A.)  Kevin Barry and his company for years

14  have had a continuous, active consignment and purchasing relationship with

15  ArtBrokers, Inc. the Marin County in the Northern District.  (Coyle Decl. ¶¶ 4-11 &

16  Exhs. A-C, E.)

17       And the Hilton defendants have an overwhelming and continuous presence in

18  this district.  They own, franchise, or manage over fifty hotels here.  (Bernstein Decl.

19  ¶ 5 & Exh. C.)  All of these hotels engage in extensive daily business in this district,

20  with the offering and selling of hotel rooms only part of the story.  Many also offer a

21  welter of additional services on a day-in, day-out basis, including audio/video

22  equipment rental, conference room rental, spas, dining facilities, meeting facilities,

23  secretarial service, and more.  (Bernstein Decl. ¶ 6 & Exh. D.)  And while these and

24  the other hospitality services are provided by Hilton Hotels, Hilton Supply

25  Management plays a key and continuous behind-the-scenes role.  Hilton Supply

26  Management acts as the purchasing arm of Hilton Hotels, buying the supplies

27

1    (including artwork) that are then used to furnish Hilton's hotels.  (Bernstein Decl. ¶ 7

2    & Exh. E; Coyle Decl. ¶ 19.)

3        Additionally, both Hilton Hotels and Hilton Supply Management are licensed

4    to do business throughout California, which includes the Northern District.

5    (Bernstein Decl. Exh. A.)

6        And finally, because the Barry defendants and Hilton Supply Management are

7    each agents of Hilton Hotels, Compl. ¶ 21, the Court's general jurisdiction over

8    Hilton Hotels is an additional ground for general jurisdiction (and venue) for the

9    other three defendants.  *See* 28 U.S.C. § 1400(a) (venue lies where "agent" may be

10   found); *Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1189 (9th Cir. 2002)

11   (jurisdiction over agent establishes jurisdiction over principal).

12       The Court's general jurisdiction is a second and independent basis for

13   personal jurisdiction, and hence venue.

14

15                      c.   All Defendants Are Local Residents
                            Amenable To Jurisdiction Anywhere In The
16                          State.

17       A third and independent basis for personal jurisdiction (and hence venue) is

18   the Northern District is that all of the defendants are California residents who are

19   amenable to personal jurisdiction anywhere in the state.

20       Kevin Barry does not dispute that he is a California resident.  Kevin Barry Fine

21   Art Associates is both incorporated and headquartered in California.  (Bernstein

22   Decl. Exh. A.)  And the Hilton defendants, though incorporated in Delaware, are

23   each registered to do business in California and have their world headquarters here.

24   (Bernstein Decl. Exh. A; Compl. ¶¶ 6-7.)

25       The legislative history of the venue statutes makes clear that Congress meant

26   to permit statewide venue—including in any federal district in the state—for *resident*

27

Plaintiff's Opposition to Defendants' Motion to Dismiss          Case No. CV 08-02100 WHA

1   corporations.  The need to show contacts specific to the plaintiff's chosen district was

2   intended for *nonresident* companies, those neither *incorporated* in the state nor

3   *registered to do business* there:

> In multidistrict states *in which a corporation is not
> incorporated, or licensed to do business*, the venue
> determination should be made with reference to the
> particular district in which a corporation is sued.

7   H.R. Rep. No. 100-889, at 70 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6031

8   (legislative analysis of amendment to 28 U.S.C. § 1391(c)); *VE Holding Corp. v. Johnson*

9   *Gas Appliance Co.*, 917 F.2d 1574, 1575-84 & n.18 (Fed. Cir. 1990) (§ 1391(c) applicable

10  to venue determinations under § 1400) (patent case); *Autodesk, Inc. v. RK Mace Eng'g*,

11  No. C 03-5128 VRW, 2004 WL 603382, at *9 (N.D. Cal. Mar. 11, 2004) (same)

12  (copyright case).

13      Accordingly, because Kevin Barry is a California resident, and the three

14  corporate defendants are all either incorporated in California or licensed to business

15  and headquartered here, all are subject to personal jurisdiction in this California

16  district.

17          B.    DEFENDANTS' VENUE-TRANSFER ARGUMENTS
                  DO NOT OVERCOME THE STRONG
18                PRESUMPTION IN FAVOR OF THE PLAINTIFF'S
                  CHOSEN FORUM

19

20      This Court should deny defendants' request to transfer venue, because they

21  have not overcome the strong presumption favoring the plaintiff's chosen forum.  *See*

22  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Jonathan*

23  *Browning, Inc.*, 2007 WL at *6 (a court should give plaintiff's choice of forum "great

24  deference" unless defendants can show other factors "clearly outweigh" the

25  plaintiff's choice).

26

27

1     Courts weighing a venue transfer request consider both private and public

2 convenience factors. *Decker Coal*, 805 F.2d at 843. Private factors include "ease of

3 access to sources of proof, plaintiff's choice of forum, relative convenience to parties,

4 and relative convenience to witnesses." *David v. Alphin*, No. C 06-04763 WHA, 2007

5 WL 39400, at *3 (N.D. Cal. 2007 Jan. 4, 2007) (citing *Decker Coal*, 805 F.2d at 843).

6 Public factors include "relative degrees of court congestion, local interest in deciding

7 local controversies, potential conflicts of laws, and burdening citizens of an unrelated

8 forum with jury duty." *Id.*, 2007 WL at *5 (citing *Decker Coal*, 805 F.2d at 843).

9     The moving party may not rely on "vague generalizations of inconvenience,"

10 but instead must "demonstrate, through affidavits or declarations containing

11 admissible evidence, who the key witnesses will be and what their testimony will

12 generally include." *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1119 (C.D. Cal.

13 1998) (citations and internal quotation marks omitted).

14

15              1.    The Private Interest Factors Favor This District.

16     The most important of the private interest factors is Ms. Brackett's choice of

17 forum. As noted, her choice is presumptively favored, and may be rebutted only if

18 the defendants can show other factors "clearly outweigh" her choice. *Jonathan*

19 *Browning, Inc.*, 2007 WL at *6.

20     The defendants do not meet this burden. First, significant evidence is located

21 in this district. We have already noted Kevin Barry traveled here, selected and

22 purchased art here, and caused harm here when he and the other defendants

23 infringed Ms. Brackett's copyrights. *See* Section I.A., *supra*. But additionally, Barry

24 bought, unlawfully copied, and sold the copyrighted work of Woodward Payne, a

25 Mill Valley artist also represented by ArtBrokers, Inc. (Coyle Decl. ¶ 10; Ryan Decl.

26 ¶ 7.) Barry also told yet a third Northern District artist whose work he was after,

27

Plaintiff's Opposition to Defendants' Motion to Dismiss          Case No. CV 08-02100 WHA

1    Victoria Ryan, that "I did it to Brennie and I did it to Woody, but I didn't do it to

2    you." (Ryan Decl. ¶ 7.)  He acknowledged to Ms. Ryan that "I know it was wrong."

3    (*Id.*)  And Ms. Ryan has found unauthorized displays of her own work on the Hilton

4    Hotel website.  (*Id.* at ¶ 6.)  Mr. Payne and Ms. Ryan will thus be key witnesses

5    concerning willfulness, as will David Coyle, ArtBrokers' principal.  None of these

6    witnesses could be compelled to attend a trial in Los Angeles.

7    By contrast, defendants have not explicitly identified *any* Central District non-

8    party witnesses whose testimony will be needed.  (MPA 5-9.)  The omission is fatal:

9    in a venue transfer motion, "the moving party must clearly specify the key witnesses

10    to be called and must make a general statement of what their testimony will cover."

11    *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y.

12    2004) (citation and internal quotation marks omitted) (cited by defendants at MPA

13    6:3-4, 7:4-5).  *Accord Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108 (N.D. Cal. 2001).

14    (Defendants have also failed specifically to identify any Central District *party*

15    witnesses, but that would be "given little weight" anyway since an employer is able

16    to compel its witnesses' attendance at trial.  *Jonathan Browning, Inc.*, 2007 WL at *6

17    (citing *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988)).)

18    And while there are surely relevant documents in the Central District, that fact

19    will not add any appreciable inconvenience to litigation here.  Nothing is more

20    common in federal litigation than the production of documents from other districts.

21    As this Court has noted, "[w]ith technological advances in document storage and

22    retrieval, transporting documents does not generally create a burden."  *David v.*

23    *Alphin*, 2007 WL at *3.

24    Finally, all defendants regularly do business in Northern California.  *See*

25    Sections I.A. and B., *supra*.  The Hilton defendants in particular have vast resources

26    available to them here, including presumably unlimited availability of hotel rooms,

27

Plaintiff's Opposition to Defendants' Motion to Dismiss                    Case No. CV 08-02100 WHA

1    their choice of conference or litigation "war" rooms, and the availability of business

2    centers, photocopy services, and even on-site secretarial services.  (Bernstein Decl. ¶ 6

3    & Exh. D.)

4         By contrast, the plaintiff would be enormously inconvenienced by a transfer to

5    the Central District.  She lives and works in Sonoma County.  (Brackett Decl. ¶ 3.)

6    She has no business in L.A., traveling there only very infrequently—once every

7    several years at the most.  (*Id.* at 5.)  To travel to Los Angeles, she has to drive from

8    Sonoma to San Francisco International Airport and fly from there.  (*Id.*)  Given that

9    the defendants came to this district to find and misappropriate Ms. Brackett's

10   artwork, it would be a cruel irony if their return to their home district to commit

11   *further* wrongs left Ms. Brackett, in the name of "convenience," with the

12   inconvenience and expense of litigating her case in Los Angeles.

13

14              2.    The Public Interest Factors Favor This District.

15        The public factors also strongly weigh in favor of venue here.  Foremost

16   among them is that this is a case in which the defendants came to the Northern

17   District and intentionally infringed the copyrights of at least three Northern District

18   residents.  This district has a strong interest in redressing wrongs intentionally

19   committed against its residents.  And trying the case here will not burden jurors with

20   an extraneous matter.  Harm intentionally directed at three Northern California

21   artists is of local concern.

22

23              3.    Courts Have Declined Transfer In Similar Cases

24        This Court recently declined to transfer venue under virtually identical

25   circumstances in the Venetian Hotel case discussed above.  *Jonathan Browning, Inc.*,

26   2007 WL at *6.  Noting that "a court should give a plaintiff's choice of forum great

27

Plaintiff's Opposition to Defendants' Motion to Dismiss              Case No. CV 08-02100 WHA

1    deference," the court found the presence of infringement evidence and witnesses in

2    Nevada outweighed by "[t]he local interest in having localized controversies decided

3    at home."  *Id.  See also AdVideo, Inc. v. Kimel Broad. Group, Inc.*, 727 F. Supp. 1337,

4    1341-42 (N.D. Cal. 1989); *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1146-47 (N.D. Cal.

5    2007); *Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1144 (N.D.

6    Cal. 2005).  *But cf. Multistate Legal Studies, Inc. v. Marino*, No. CV 96-5118 ABC

7    (RNBx), 1996 WL 786124, at *10-*12 (C.D. Cal. Nov. 4, 1996) (granting transfer where

8    copyright plaintiff had offices in defendants' district, non-party witnesses in

9    defendants' district outnumbered those in plaintiff's district four or five to one, and

10   "substantial questions" lingered about personal jurisdiction and venue); *David v.*

11   *Alphin*, No. C 06-04763 WHA, 2007 WL 39400 (N.D. Cal. Jan. 4, 2007) (granting

12   transfer of nationwide class action, where eighteen out of thirty-four witnesses lived

13   in transferee district and only one witness resided in state of transferor district).

14        Defendants are also wrong that "[p]laintiff's choice of forum is entitled to only

15   minimal consideration."  (MPA 7:19-28, citing *Botkin v. Safeco Ins. Co. of America*,

16   No. C 03-0246 WHA, 2003 WL 1888873, at *2 (N.D. Cal. Apr. 14, 2003).)  *Botkin* stated

17   that plaintiff's forum choice was due minimal consideration "if the operative facts

18   have not occurred within the forum of original selection and that forum has no

19   particular interest in the parties or the subject matter."  *Id.*  Neither of these

20   conditions is met here.  The defendants routinely conduct business here and this

21   district has a compelling interest in redressing harm visited upon its residents.

22

23

24

25

26

27

21

1

2           C.     THE STATE TORT CLAIMS ARE NOT PREEMPTED

3              1.     State Claims With At Least One "Extra
Element" Not Found In Copyright Law Are

4                     Not Preempted.

5       Preemption of state law claims requires two showings: that the asserted state

6 rights are "equivalent to those protected by the Copyright Act," and that the work at

7 issue "fall[s] within the subject matter of the Copyright Act." *Silicon Image, Inc. v.*

8 *Analogix Semiconductor, Inc.*, No. C 07-0635 JCS, 2007 WL 1455903, at *7 (N.D. Cal.

9 May 16, 2007) (internal quotation marks omitted) (quoting *Kodadek v. MTV Networks,*

10 *Inc.*, 152 F.3d 1209, 1212 (9th Cir.1998)).

11       Whether asserted state law rights are "equivalent" to those protected by the

12 Copyright Act depends on whether the state law claim includes an "'extra element'

13 that makes the right asserted qualitatively different from those protected under the

14 Copyright Act." *Id.* (citation and internal quotation marks omitted).

15

16              2.     Intentional Interference Claims Have Two
"Extra Elements," As This And Other Courts

17                     Have Found

18       Ms. Brackett's state interference claims give rise to two "extra elements" not

19 found in copyright law.

20       First, copyright law does not address defendants' intentional disruption of

21 Ms. Brackett's actual and prospective contracts with her limited-edition print

22 customers, *see* Compl. ¶¶ 14, 32-36, 38-41.  Those contracts are founded on a strict

23 limit on the number of prints in existence, for example 150.  (Brackett Decl. ¶ 4.)  By

24 making hundreds or even thousands of copies of Ms. Brackett's limited-edition

25 prints, and then distributing them to hotel rooms across the United States, all the

26 while knowing that Ms. Brackett had a limited-edition print business, the defendants

27

1    did more than simply commit copyright infringement.  They also knowingly

2    undermined Ms. Brackett's contractual relationships.  (Compl. ¶¶ 34, 35, & 39.)

3         This harm is not the object of copyright law.  Whether or not Ms. Brackett had

4    a side business in limited-edition giclées, her copyright claims would be the same.

5    They would address the defendants' copying, distribution, and displaying of

6    Ms. Brackett's works, and the profits they made from doing so.  *See* 17 U.S.C.

7    § 106(1), (2), (3), & (5); § 504 (copyright proscriptions and remedies).  By contrast,

8    Ms. Brackett's state claims allege that defendants knowingly intended a further

9    harm—destroying the foundation of Ms. Brackett's contractual relationships.

10        Decisions in the Ninth Circuit and elsewhere have held tortious interference

11   claims not preempted when third-party customer contracts were sabotaged in this

12   way.  *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089-90 (9th Cir. 2005) ("extra

13   element" was defendants' precipitation of breaches of plaintiff's contracts with  its

14   customers); *Silicon Image, Inc.*, 2007 WL at *7-*9 (same); *Jonathan Browning, Inc.* 2007

15   WL at *9-*10 ("extra element" was interference with plaintiff's supplier contract);

16   *Brush Creek Media, Inc. v. Boujaklian*, No. C 02-3491 EDL, 2002 WL 1906620, at *5-*6

17   (N.D. Cal. Aug. 19, 2002) ("extra element" was the "interference"); *Cavallo, Ruffalo &*

18   *Fargnoli v. Torres*, No. C 88-04637 SVW (EX), 1988 WL 161313, at *3 (C.D. Cal. Dec. 12,

19   1988) (same) (dictum).

20        A second "extra element" in Ms. Brackett's state interference claims is their

21   requirement of defendants' "knowledge and intent," something not required for

22   copyright infringement liability.  *Jonathan Browning, Inc.*, 2007 WL at *10 (citing

23   *Summit Machine Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1442-43 (9th Cir.

24   1993)).

25        Defendants' cited authorities do not support a different conclusion.  The

26   intentional interference held preempted in *Aagard v. Palomar Builders, Inc.*, 344

27

---

23

1    F. Supp. 2d 1211 (E.D. Cal. 2004), did not allege disruption of a separate, third-party

2    contract, as Ms. Brackett's claims do.  Rather, the copyright owner there sued a

3    former employee who had taken its architectural plans and was using them to make

4    competing sales.  344 F. Supp. 2d at 1213-14.  The harm alleged was the standard

5    copyright harm: sales lost to an infringer.  *Id.* at 1218-19.  Here, by contrast,

6    Ms. Brackett's interference claims do not assert she would have made the print sales

7    to Hilton.  Instead, the claims assert a second kind of harm: sabotage of her

8    contractual relationships with her customers.

9         In addition, *Aagard's* statement, cited by defendants at MPA 9, that the Ninth

10   Circuit had not yet addressed preemption of intentional interference claims, was

11   made before the Ninth Circuit did just that in *Altera*.  *Altera*, 424 F.3d at 1089-90.  As

12   noted, *Altera* rejected a preemption challenge to state tortious interference claims.  *Id.*

13        *Harper & Row,* cited by defendants at MPA 9, 10-11, is an out-of-circuit

14   decision issued twenty years before *Altera*.  *Harper & Row Publishers, Inc. v. Nation*

15   *Enterprises,* 501 F. Supp. 848 (S.D.N.Y. 1980), *aff'd*, 723 F.2d 195 (2d Cir. 1983), *rev'd on*

16   *other grounds*, 471 U.S. 539, 105 S. Ct. 2218 (1985).  To the extent *Harper & Row*

17   announced a blanket rule preempting tortious interference claims, it is not the law of

18   this circuit.  *See Altera*, 424 F.3d at 1089-90; *Silicon Image, Inc.*, 2007 WL at *7-*9;

19   *Jonathan Browning, Inc.* 2007 WL at *9-*10; *Brush Creek Media, Inc.*, 2002 WL at *5-*6;

20   *Cavallo, Ruffalo & Fargnoli*, 1988 WL at *3.

21        Similarly, the opinion of a treatise author that the rights protected by tortious

22   interference claims "do not appear to differ" from those protected by copyright law,

23   MPA 12:5-9, does not supersede the Ninth Circuit and California district court

24   decisions that have come to a contrary conclusion.

25        Finally, defendants' argument that Ms. Brackett's interference claims are

26   preempted because "absent the alleged copying, these claims could not exist,"

27

1  MPA 11:19 – 12:9, proves too much.  If the test for preemption were whether the state

2  claims would exist "but for" copyright infringement, most if not all permitted state

3  claims would disappear.  The "extra element" test *presumes* copyright infringement,

4  and asks whether the state claim adds anything "extra."  Under defendants' theory,

5  even if the answer is yes, the claim would still be preempted, since, "but for" the

6  copyright infringement, these "infringement-plus-extra-element" claims would lack

7  an element.  This Court should decline defendants' invitation to uphold preemption

8  even of claims that pass the "extra element" test.

9

10       III.    CONCLUSION

11       For the above reasons, Brennie Brackett respectfully requests the Court to

12  deny defendants' motion to dismiss or transfer.

13

14  RESPECTFULLY SUBMITTED,

15

16  DATED:  May 29, 2008                    THE BERNSTEIN LAW GROUP, P.C.

17

18                                          By:  _____ /s/ _____

19                                                   Marc N. Bernstein

20                                          Attorneys for Plaintiff
                                            BERENICE BRACKETT
21

22

23

24

25

26

27