1   MARC N. BERNSTEIN (SBN 145837)
    Email: mbernstein@blgrp.com
2   SUSAN S. BORANIAN (SBN 173788)
    Email: sboranian@blgrp.com
3   THE BERNSTEIN LAW GROUP, P.C.
    555 Montgomery Street, Suite 1650
4   San Francisco, CA  94111
    Telephone: (415) 765-6633
5   Facsimile: (415) 283-4804

6   Attorneys for Plaintiff,
    BERENICE BRACKETT

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  BERENICE BRACKETT,                  ) Case No. CV 08-02100 WHA
                                        )
13        Plaintiff,                    )
                                        )
14  vs.                                 )
                                        )
15  HILTON HOTELS CORPORATION, a        )
    Delaware Corporation, HILTON        ) **COMPENDIUM OF**
16  SUPPLY MANAGEMENT, INC., a          ) **ELECTRONICALLY REPORTED**
    Delaware Corporation, KEVIN A.      ) **DECISIONS**
17  BARRY, an individual, KEVIN BARRY   )
    FINE ART ASSOCIATES, a California   )
18  Corporation, JOHN or JANE DOES 1-   ) Hearing:      June 19, 2008
    100, individuals of presently unknown ) Time:        8:00 a.m.
19  identity, and ABC CORPORATIONS 1-   ) Courtroom:    9
    300, corporations of presently unknown ) Judge:      Hon. William H. Alsup
20  identity,                           )
                                        )
21        Defendants.                   )
                                        )
22                                      )
                                        )

23

24

25

26

27

1

Decisions Included

2

3      *Anichini, Inc. v. Campbell*, 2005 WL 2464191 (D. Vt. October 4, 2005)

4      *Autodesk, Inc. v. RK Mace Eng'g*, 2004 WL 603382 (N.D. Cal. March 11, 2004)

5
       *Botkin v. Safeco Ins. Co. of America*, No. C 03-0246 WHA, 2003 WL 1888873 (N.D.
6      Cal. 2003)

7
       *Brush Creek Media, Inc. v. Boujaklian*, No. C 02-3491 EDL, 2002 WL 1906620 (N.D.
8      Cal. Aug. 19, 2002)

9
       *Cavallo, Ruffalo & Fargnoli v. Torres*, No. C 88-04637 SVW (EX), 1988 WL 161313
10     (C.D. Cal. Dec. 12, 1988)

11
       *David v. Alphin*, No. C 06-04763 WHA, 2007 WL 39400 (N.D. Cal. 2007 Jan. 4,
12     2007)

13
       *Dudash v. Varnell Struck & Assoc., Inc.*, No C 04-2748 MHP, 2004 WL 2623903
14     (N.C. Cal. Nov. 16, 2004)

15
       *Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*, No. C 07-3893 JSW, 2007
16     WL 4532214 (N.D. Cal. Dec. 19, 2007)

17
       *Multistate Legal Studies, Inc. v. Marino*, No. CV 96-5118 ABC (RNBx), 1996 WL
18     786124 (C.D. Cal. Nov. 4, 1996)

19
       *Quality Improvements Consultants v. Williams*, 2003 WL 543393 (D. Minn. February
20     24, 2003.)

21
       *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. C 07-0635 JCS, 2007 WL
22     1455903 (N.D. Cal. May 16, 2007)

23

24

25

26

27

Westlaw.

Not Reported in F.Supp.2d                                                                  Page 1
Not Reported in F.Supp.2d, 2005 WL 2464191 (D.Vt.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2464191 (D.Vt.))**

**C**

Anichini, Inc. v. Campbell
D.Vt.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. Vermont.
ANICHINI, INC., Plaintiff
v.
Richard CAMPBELL, Defendant.
**No. 1:05-CV-55.**

Oct. 4, 2005.

Andrew D. Manitsky, Gravel and Shea, Burlington, VT, for Plaintiff.
Karen McAndrew, Dinse, Knapp & McAndrew, P.C., Burlington, VT, for Defendant.
MURTHA, Magistrate J.
*1 Upon review and over objection, the Recommendation and Ruling of the Magistrate Judge is Affirmed, Approved and Adopted. The case is returned to the Magistrate Judge for further proceedings.

So Ordered.

### MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

### (Paper 7)

Plaintiff Anichini, Inc. ("Anichini") filed this action against its former employee, Richard Campbell ("Campbell"), alleging copyright infringement, breach of contract and unfair competition. The case is currently before this Court on Campbell's motion to dismiss for lack of personal jurisdiction under F.R. Civ. P. 12(b)(2), and for improper venue under F.R. Civ. P. 12(b)(3). In the alternative, Campbell moves to transfer venue.

For the following reasons, I recommend that Campbell's motion be DENIED.

### I. BACKGROUND

For the purposes of this motion, the following facts are taken as true. Anichini is a Vermont corporation with its principal place of business in Tunbridge, Vermont. (Paper 1, ¶ 2). Anichini designs and sells luxury linens through retail stores and directly to hotels, spas and resorts. (Id.). Anichini owns a copyright for its original fabric design, entitled "Venezia," which it uses for its luxury throws. (Id. at ¶¶ 6-7). Anichini sold Venezia throws to the Broadmoor Hotel, among others. (Id. at ¶ 8).

In August 2002, Anichini hired Campbell as a salesperson. (Id. at ¶¶ 9-10). In July 2003, Anichini terminated his employment. (Id. at ¶ 11). Pursuant to his employment contract, Campbell agreed to return all of Anichini's product samples upon termination and to keep Anichini's product design information strictly confidential for one year. (Id. at ¶ 10). Campbell did not return the Venezia design samples after he was fired.[FN1](Affidavit of Susan Dollenmaier, ¶ 10). Since leaving Anichini, Campbell has manufactured, or caused to be manufactured, unauthorized copies of the Venezia pattern throw.(Id. at ¶ 13). Campbell has also offered for sale and sold these unauthorized copies to the Broadmoor Hotel. (Id. at ¶¶ 14-15).

> FN1. At the hearing on his motion, Campbell argued that Anichini has failed to make a *prima facie* showing that he breached his employment contract. In support of this contention, he pointed to his affidavit in which he states that, "The throws, which I subsequently provided to the Broadmoor Hotel, were manufactured outside of the State of Vermont and never passed through its borders."(Doc. 7, Ex. 1). However, this statement does not directly refute Anichini's claim that he "retained copies of Anichini's VENEZIA pattern after his termination" in violation of his employment contract. (Affidavit of Susan

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Dollenmaier, ¶ 13).

## II. *DISCUSSION*

### A. *Rule 12(b)(2)-Lack of Personal Jurisdiction*

The plaintiff bears the burden of showing that the court has personal jurisdiction over the defendant. *Chaiken v. VV Publ'g Corp.,* 119 F.3d 1018, 1025 (2d Cir.1997); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996); *Tom and Sally's Handmade Chocolates, Inc. v. Gasworks, Inc.,* 977 F.Supp. 297, 299 (D.Vt.1997). The plaintiff must also show that there is jurisdiction "with respect to each claim asserted."*Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 24 (2d Cir.2004). At this early stage of the litigation, the plaintiff satisfies this burden with "legally sufficient allegations" that present *prima facie* evidence of proper jurisdiction.*Chaiken,* 119 F.3d at 1025;*Tom and Sally's,* 977 F.Supp. at 299. To determine if the plaintiff has satisfied this burden, the court evaluates the plaintiff's pleadings and affidavits, construes them in the light most favorable to the plaintiff, and resolves any doubts in the plaintiff's favor.*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985); *Sollinger v. Nasco International, Inc.,* 655 F.Supp. 1385, 1386 (D.Vt.1987).

**\*2** To determine whether there is personal jurisdiction over the defendant, the court makes a two-part inquiry. *Metro. Life,* 84 F.3d at 567;*Sollinger,* 655 F.Supp. at 1387. First, the court reviews the forum state's long-arm statute. *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997). If state law supports jurisdiction, then the court reviews whether such jurisdiction violates due process. *Id.* In Vermont, however, the long-arm statute allows jurisdiction over defendants "to the full extent permitted by the Due Process Clause."*Metro. Life,* 84 F.3d at 567 (quoting *Bechard v. Constanzo,* 810 F.Supp. 579, 582-83 (D.Vt.1992)). Therefore, the inquiry is reduced to one part: whether jurisdiction over the defendant comports with the standards of due pro-

cess. *Id.*

The Due Process analysis for personal jurisdiction also has two parts. First, the court evaluates whether the defendant has sufficient "minimum contacts" with the forum state. *Id.* Second, if such contacts exist, the court reviews whether jurisdiction based on such contacts is "reasonable under the circumstances of the particular case."*Id.*

### 1. *Minimum Contacts*

The guiding principle in evaluating a defendant's contacts with the forum state is that jurisdiction must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state thus invoking the benefits and protections of its laws."*Sollinger,* 655 F.Supp. at 1387 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Jurisdiction based on such action is justified because the defendant "should reasonably anticipate being haled into court there."*Artec Distrib., Inc. v. Video Playback, Inc.,* 799 F.Supp. 1558, 1560 (D.Vt.1992) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)). Accordingly, jurisdiction usually is not proper unless the defendant "actively initiate[s] contacts in a state,"*id.,* or "creates 'continuing obligations' between itself and a Vermont resident."*Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Corp.,* 921 F.Supp. 1206, 1209 (D.Vt.1996) (quoting *Burger King,* 471 U.S. at 476).

For example, in *Artec,* this Court held that it did not have jurisdiction over the defendant because, although the defendant purchased the plaintiff's products, communicated with the plaintiff regarding those purchases, and made payments to the plaintiff in Vermont, the defendant did not initiate the business relationship. 799 F.Supp. at 1561. Rather, the plaintiff "purposefully sought out ... business" with the defendants by phone, mail and in person. *Id.* at 1559.Therefore, despite the defend-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2464191 (D.Vt.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2464191 (D.Vt.))**

ant's participation in business transactions with a Vermont corporation, this Court found that the defendant did not have sufficient contacts with Vermont to support personal jurisdiction. *Id.* at 1561.

**\*3** In this case, the "nature and quality" of Campbell's contacts with Vermont support finding that the Court has jurisdiction. *Burger King,* 471 U.S. at 476. First, Campbell actively initiated his relationship with Anichini. In June 2000, he solicited Anichini for employment and was rejected. (Paper 10, ¶ 4). In 2002, his efforts succeeded and he signed an employment contract with Anichini. (*Id.* at ¶ 6).

Second, Campbell's employment contract imposed continuing obligations on him, including making sales to a particular region, submitting sales reports, travel, abiding by the Anichini employee handbook, enhancing the company's good name and protecting its confidential designs. (*Id.* at Ex. D ¶¶ 1, 3, 4, 6, 7, and 9). The contract also has a choice-of-law provision designating Vermont law to resolve contract disputes. (*Id.* at ¶ 14). Combined with the "interdependent relationship" between Campbell and Anichini created by the employment contract, this choice-of-law provision reinforces the conclusion that Campbell "purposefully invoked the benefits and protections of [the] State's laws."*Burger King,* 471 U.S. at 482. Therefore, Campbell should have reasonably anticipated being haled into court in Vermont.

Additionally, pursuant to his employment, Campbell traveled to Vermont and maintained routine e-mail and telephone communications with Anichini. (Paper 10, ¶ 10). Hence, at this stage of the proceedings, it cannot be said that Campbell's contacts with Vermont are "random, fortuitous or attenuated." *Id.* at 475;*see also* *Tom and Sally's,* 977 F.Supp. at 301 (finding that distributor had sufficient contacts with Vermont, despite its absence from the state, to subject it to the court's jurisdiction for a trademark infringement action); *Ben & Jerry's,* 921 F.Supp. at 1210 (finding personal jurisdiction over the defendant despite its absence from

Vermont based, in part, on communications "indicat[ing] the existence of a business relationship ... such that the Defendant ha[d] created 'continuing obligations' between itself and a Vermont resident"); *Northern Aircraft, Inc. v. Reed,* 154 Vt. 36, 43-44, 572 A.2d 1382 (1990) (finding jurisdiction proper over defendant residing in Kansas who contacted Vermont corporation by telephone and entered into an exclusive listing agreement without ever coming to Vermont).

A plaintiff relying on the court's "specific jurisdiction" must also show, in addition to minimum contacts, that the plaintiff's claim "arises out of or relates to" the defendant's contacts with the forum. *Chaiken,* 119 F.3d at 1027-28;*Sollinger,* 655 F.Supp. at 1388. For example, in *Sollinger,* the defendant argued that jurisdiction would be improper because the claim of copyright infringement did not arise directly from the defendants "actual activities in Vermont." *Id.* This Court rejected the plaintiff's effort to narrow the claim and the standard. Rather, it found that it was enough that the copyright claim was *related to* defendant's conduct in Vermont and might potentially arise directly from it.

**\*4** In this case, Anichini argues that Campbell failed to return the samples of Anichini's products and from these samples created copies of the "Venezia" throw blanket. (Paper 1, ¶ 12). Assuming this is true, as the Court must when deciding a pretrial motion to dismiss, *Bechard v. Constanzo,* 810 F.Supp. 579, 581 (D.Vt.1992), Anichini's copyright claim is certainly related to Campbell's employment and any proprietary information he obtained as a result. Campbell argues that the infringement claim is based on sales that took place after the termination of his relationship with Anichini, that he returned Anichini's samples, and that he obtained the pattern from his buyer. However, the Court must construe any factual disputes in favor of the plaintiff. Hence, Anichini has made a sufficient *prima facie* showing that its copyright claim is related to Campbell's contacts with Vermont.

Specific personal jurisdiction is also proper based

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 2464191 (D.Vt.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2464191 (D.Vt.))**

on the effect of Campbell's actions. Under the "effects test," jurisdiction over a defendant is proper when Vermont is the "focal point of the [alleged tort] and of the harm suffered."*Real Good Toys, Inc. v. XL Mach. Ltd.,* 163 F.Supp.2d 421, 424 (D.Vt.2001) (quoting *Chaiken,* 119 F.3d at 1029);*see also Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Real Good Toys,* this Court found, based on the plaintiff's allegations, that the defendant's conduct satisfied the effects test. *Id.* The defendant "knowingly and willfully infringed upon the copyright and trade dress of a Vermont corporation, knowing that the 'brunt of the injury' would be sustained in Vermont."*Id.* at 425;*see also Stuart v. Fed. Energy Sys., Inc.,* 596 F.Supp. 458, 462 (D.Vt.1984) ("[A]n individual injured in Vermont need not go to California to seek redress from persons who, though remaining in California, knowingly cause the injury in Vermont."). In this case, Anichini alleges that Campbell knowingly copied and sold Anichini's proprietary blanket design. (Paper 1, ¶¶ 13, 15 and 18). Accordingly, the Court has jurisdiction over Campbell because the "brunt of the injury" resulting from the alleged copyright infringement was sustained by Anichini in Vermont.

Using the same reasoning, Anichini has made a sufficient showing of jurisdiction for the breach of contract and unfair competition claims. Campbell actively initiated a continuing business relationship with a Vermont corporation. This contact with Vermont should have caused him to reasonably anticipate being sued in Vermont if he breached the underlying contract and/or unfairly competed with his former employer. Moreover, the "brunt of the injury" resulting from such conduct is felt in Vermont.

*2. Reasonableness*

Since Anichini has satisfied the first part of the inquiry by establishing that Campbell has sufficient minimum contacts with Vermont, the Court must now consider whether asserting personal jurisdiction based on Campbell's contacts is reasonable. *Metro. Life,* 84 F.3d at 567. Jurisdiction over a defendant is reasonable when it aligns with "traditional notions of fair play and substantial justice."*Id.* at 568.This reasonableness determination is guided by the following factors: (1) the burden jurisdiction places on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution, and (5) the shared interest of the states in substantive social policy. *Burger King,* 471 U.S. at 477.

**\*5** "[J]urisdiction is favored where the plaintiff has made a threshold showing of minimum contacts."*Metro. Life,* 84 F.3d at 568. However, the court may find it lacks jurisdiction if the defendant presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."*Id.*

In this case, Campbell asserts that litigating in Vermont is burdensome and expensive, but focuses his arguments on refuting minimum contacts. Given that modern technology and travel have alleviated much of the difficulty for out-of-state defendants, this factor alone is not particularly compelling. *See id.* at 574.Moreover, Anichini would bear the same burden if the case were litigated outside of Vermont.

Campbell did not address the remaining factors. However, it is not disputed that Vermont has an "important interest in protecting its citizens' intellectual property rights and business interests."*Real Good Toys,* 163 F.Supp.2d at 425. Additionally, Anichini's interest in convenient and effective relief is served by allowing the action in Vermont. *See Metro. Life,* 84 F.3d at 574. Because the witnesses and evidence will be located both inside and outside Vermont, and there are no substantive social policies at issue, these factors do not favor either party. *Id.* The weight of the "reasonableness" factors therefore favor jurisdiction over Campbell in Vermont.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2464191 (D.Vt.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2464191 (D.Vt.))**

Page 5

B. *Rule 12(b)(3)-Improper Venue*

Campbell also moves to dismiss because of improper venue under Rule 12(b)(3). The plaintiff bears the burden of showing that its chosen venue is proper. *Country Home Products, Inc. v. Schiller-Pfeiffer, Inc.,* 350 F.Supp.2d 561, 568 (D.Vt.2004). The proper venue for actions based on copyright infringement is "in the district in which the defendant or his agent resides or may be found."28 U.S.C. § 1400(a). Campbell argues that venue is improper because the court does not have personal jurisdiction over him. However, since a finding of personal jurisdiction generally defeats an argument of improper venue, *seeReal Good Toys,* 163 F.Supp.2d at 425 ("It is generally held that assessment of venue merges into the personal jurisdiction analysis, and thus venue is proper anywhere there is personal jurisdiction."), this argument fails.

Alternatively, Campbell argues that *Blue Compass Corp. v. Polish Masters of Am.,* 777 F.Supp. 4 (D.Vt.1991), limits the merger of personal jurisdiction and venue. Campbell's reliance on this case is misplaced. In *Blue Compass,* this Court found that it had personal jurisdiction over the defendant accused of copyright infringement, but found venue improper. *Id.* at 5. The Court reasoned that because the defendant's California business was not incorporated it could not be "deemed to reside" in Vermont as directed by 28 U.S.C. § 1391(c).[FN2]*Id.* In *Real Good Toys,* however, this Court limited the holding in *Blue Compass* to the "resides" language, noting that "[t]he ruling ... did not discuss whether the defendant could be 'found' in the forum."*Real Good Toys,* 163 F.Supp.2d at 425 n. 3 (finding that venue was proper because it had personal jurisdiction).

> FN2.28 U.S.C. § 1391(c) provides in part: "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

*6 This limitation is supported by the language of the venue statute for copyright actions, quoted above, which plainly distinguishes between "resides" and "may be found." 28 U.S.C. § 1400(a). It is generally accepted that the "may be found" language in the copyright venue statute means amenability to personal jurisdiction. *Palmer v. Braun,* 376 F.3d 1254, 1259 (11th Cir.2004) ("A defendant 'may be found' in a district in which he could be served with process; that is, in a district which may assert personal jurisdiction over the defendant."); *Milwaukee Concrete Studios v. Fjeld Mfg. Co.,* 8 F.3d 441, 445-46 (7th Cir.1993). This rule holds true even when the defendant is an individual. *Quality Improvement Consultants, Inc. v. Williams,* No. Civ. 02-3994 (JEL/JGL), 2003 WL 543393, at *7-8 (D.Minn. Feb.24, 2003) ("The Court is not persuaded that noncorporate defendants should be treated differently than corporate defendants for purposes of determining whether they 'may be found." '); *Linzer v. EMI Blackwood Music, Inc.,* 904 F.Supp. 207, 215 (S.D.N.Y.1995).

Therefore, although *Blue Compass* held that the general venue rule for corporations under § 1391(c) did not apply in that case, this Court did not evaluate whether venue might otherwise be proper under the "may be found" language of § 1400(a). Hence, the authority supporting the rule that venue is proper when there is personal jurisdiction, regardless of whether the defendant is an individual or a corporation, outweighs the alternative.

Anichini's chosen venue is proper under 28 U.S.C. § 1400(a). The Court has personal jurisdiction over Campbell and, therefore, he "may be found" here.

C. *Motion to Transfer*

Campbell moves in the alternative for a transfer of venue based on both 28 U.S.C. § 1404(a) and § 1406(a). The moving party bears the burden of showing clear and convincing evidence to support a motion to transfer venue. *Tom and Sally's,* 977 F.Supp. at 302;*see alsoFactors Etc., Inc. v. Pro*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6
Not Reported in F.Supp.2d, 2005 WL 2464191 (D.Vt.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2464191 (D.Vt.))**

*Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *abrogated on other grounds by*Pirone v. MacMillan, Inc., 894 F.2d 579 (2d Cir.1990).

**1. § 1406(a)**

Transfer of venue under § 1406(a) is appropriate when the court finds that the case was brought in an improper venue. 28 U.S.C. § 1406(a) cmt. on 1996 Amendment; *Sollinger,* 655 F.Supp. at 1389. Since this action was properly brought in this Court, § 1406(a) does not apply.

**2. § 1404(a)**

When a case is brought in a proper venue, a court may still transfer venue under § 1404(a). It is within the court's discretion to grant a transfer that serves the interests of justice and the convenience of the parties and witnesses. *Tom & Sally's,* 977 F.Supp. at 301-302. The court's discretion is guided by the following factors: (1) the convenience of the parties; (2) the convenience of the witness; (3) the relative ease of access to sources of proof; and (4) the interests of justice. *Id.* Typically, "discretionary transfers are not favored." *Id.* at 302.

*7 In this case, Campbell argues only that a transfer of venue based on § 1404(a) is not prohibited by Anichini's supplemental state law claims. Campbell does not present any affirmative basis for granting a discretionary transfer of venue based on the convenience of the parties and witnesses, or the interests of justice. Campbell has only asserted that a transfer is appropriate because venue was not proper in the first place. This argument has already been addressed. Therefore, because Campbell has not met his burden, a discretionary transfer of venue under § 1404(a) is not warranted.

### CONCLUSION

For the foregoing reasons, I recommend that this Court DENY Campbell's motion to dismiss and mo-tion to transfer venue (Paper 7).

D.Vt.,2005.
Anichini, Inc. v. Campbell
Not Reported in F.Supp.2d, 2005 WL 2464191 (D.Vt.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.))**

**C**
Autodesk, Inc. v. RK Mace Engineering, Inc.
N.D.Cal.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
AUTODESK, INC, Plaintiff,
v.
RK MACE ENGINEERING, INC, Defendant.
**No. C-03-5128 VRW.**

March 11, 2004.

Julie E. Hofer, Eric W. Doney, Lawrence K. Rock-
well, Donahue Gallagher Woods LLP, Oakland,
CA, for Plaintiff.
Gabrielle B. Handler, Shook, Hardy, & Bacon LLP,
San Francisco, CA, for Defendant.

ORDER

WALKER, J.
**\*1** Defendant RK Mace Engineering, Inc moves the
court for dismissal of plaintiff Autodesk, Inc's
copyright infringement action on two grounds: (1)
lack of subject matter jurisdiction under FRCP
12(b)(2); and (2) improper venue under FRCP
12(b)(3). Because the court finds these matters suit-
able for determination without oral argument, the
hearing scheduled for March 11, 2004, is VA-
CATED. See Civ LR 7-1(b). For the following
reasons, defendant's motion to dismiss (Doc # 6) is
DENIED in its entirety.

I

Plaintiff Autodesk, Inc is a Delaware corporation
whose worldwide and American headquarters is in
San Rafael, California. Compl (Doc # 1) at 2 ¶ 1;
Decl Gabrielle B Handler (G Handler Decl; Doc #
15) at 1-2 ¶ 2, Exh A. Plaintiff develops and mar-
kets computer software programs, which requires a
"substantial investment of time, effort and expense
in the design, testing, manufacturing and marketing
* * * " of that software. Compl at 3 ¶ 7. Plaintiff al-

leges that it has complied with the Copyright Act,
17 USC § 101, et seq, to secure exclusive rights and
privileges in several of its products, including
AutoCAD Land Development Desktop, Release 2
software and Autodesk Civil Design, Release 2
software. Decl Evan Handler (E Handler Decl; Doc
# 12) at 1 ¶ 3; Compl, Exhs C, E. Those Autodesk
products contain installation media, user instruction
manuals and a document entitled "Read This First."
E Handler Decl at 1 ¶ 7, Exhs D, E, F. The "Read
This First" document states that plaintiff is the
manufacturer of the products and is located in San
Rafael, California. See id.In the online help docu-
mentation installed automatically with the product,
a section entitled "Contact Us" lists plaintiff's
headquarters in San Rafael, California. Id at 2 ¶ 9,
Exh J. In the "Terms of Use" section of that same
documentation, plaintiff identifies its "principal
place of business" as San Rafael, California. Id at 2
¶ 10, Exh K.

Plaintiff is concerned that its products are the sub-
ject of widespread unauthorized copying and thus
maintains a piracy prevention program as part of its
operations in San Rafael, California. Decl Evelyn
LaHaie (LaHaie Decl; Doc # 13) at 1-2 ¶¶ 7, 9.
Plaintiff's piracy prevention program investigates
thousands of instances of possible illegal copying
of plaintiff's products.Id at 2 ¶ 8. Evelyn LaHaie,
one of plaintiff's piracy investigators, believes that
the large number of reported instances of illegal
copying demonstrates that such unauthorized du-
plication takes place on a large scale throughout the
United States. Id at 2 ¶ 10.The aggregate suggested
retail price for one stand-alone license for the
Autodesk products at issue is $8,985. Id at 1 ¶ 5. It
is reasonable to infer from this fact that plaintiff
likely loses a significant amount of money as a res-
ult of such illegal copying.

Plaintiff alleges that defendant RK Mace Engineer-
ing, Inc violated plaintiff's copyrights in some of its
software products. See Compl at 4-5 ¶¶ 14-18. De-
fendant is a Missouri corporation with its sole and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.))

Page 2

principal place of business in Lee's Summit, Missouri. Decl R Kent Mace (Mace Decl; Doc # 7) at 2 ¶ 2. Defendant is registered with the Missouri Board of Architects, Engineers and Land Surveyors and is authorized and licensed to do business only in Missouri. Id at 2 ¶¶ 2, 3. Defendant's sole shareholder and president, Mr R Kent Mace, is a Missouri resident who is a licensed professional engineer and licensed professional surveyor in the state of Missouri. Id at 2 ¶¶ 1, 6, 7. Defendant has never performed work outside the state of Missouri and specifically has never performed work in California. Id at 2 ¶¶ 8, 9. All of defendant's customers are located in Missouri, and defendant has no financial interests outside Missouri. Id at 2 ¶¶ 10, 11.

*2 Prior to filing suit against defendant, plaintiff contacted defendant regarding defendant's alleged illegal copying. On July 15, 2003, defendant sent plaintiff a letter, which states that "[w]e would never intentionally violate the software agreement. But, it appears that we may have violated the agreement."E Handler Decl at 1 ¶ 4, Exh B. On July 31, 2003, defendant sent plaintiff a second letter in which it reported that it had installed the software on ten computers, a number that evidently exceeds the number of licenses defendant obtained for the software. Id at 1 ¶ 5, Exh C.

Plaintiff filed the complaint in this matter on November 19, 2003. Doc # 1. On December 29, 2003, defendant filed its motion to dismiss for lack of jurisdiction and improper venue. Doc # 6. The motion was originally noticed for February 26, 2004, but the clerk continued the motion hearing to March 11, 2004. Doc # 10. On February 19, 2004, plaintiff filed its opposition to the motion to dismiss. Doc # 11. Defendant filed a reply memorandum on February 26, 2004. Doc # 17.

The motion thus presents two issues: (1) whether dismissal under Rule 12(b)(2) is appropriate based on lack of personal jurisdiction; and (2) whether dismissal is appropriate under Rule 12(b)(3) for improper venue. The court addresses each in turn.

II

A

FRCP 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. Plaintiff has the burden of establishing that the court has personal jurisdiction over defendant. *Gator.com Corp. v. LL Bean, Inc.,* 341 F.3d 1072, 1075 (9th Cir.2002); *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir.2001) (citing *Cubbage v. Merchent,* 744 F.2d 665, 667 (9th Cir.1984), cert. denied, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985)). In assessing plaintiff's showing, the court may consider evidence presented in affidavits and other evidence procured through the discovery process. But when the court acts on the motion without holding an evidentiary hearing, plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Unocal,* 248 F.3d at 922;*AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir.1996). When not directly controverted, plaintiff's version of the facts must be taken as true, and conflicts between the facts contained in the parties' affidavits should be resolved in favor of plaintiff. *Unocal,* 248 F.3d at 922;*AT & T,* 94 F.3d at 588.

To exercise personal jurisdiction over a nonresident defendant in a federal question case, the court must first determine that " 'a rule or statute potentially confers jurisdiction over the defendant and then conclude that asserting jurisdiction does not offend the principles of Fifth Amendment due process." ' *Unocal,* 921-22 (9th Cir2001), quoting *Go-Video, Inc. v. Akai Electric Co., Ltd.,* 885 F.2d 1406, 1413 (9th Cir.1989). This means that the court may exercise personal jurisdiction over a party when such jurisdiction comports with the law of the state in which the court sits and when such jurisdiction comports with the requirements of due process. *Lee v. City of Los Angeles,* 250 F.3d 668, 692 (9th Cir.2001); *Alexander,* 939 F.2d at 850; see *Unocal,* 248 F.3d at 922. California law permits the court to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.))

Page 3

exercise personal jurisdiction over a party on any basis not inconsistent with the constitutions of California or the United States. Cal Code Civ Proc § 410.10. Thus, California law permits the court to exercise jurisdiction "to the full extent permitted by due process." *Gator.com,* 341 F.3d at 1076 (internal quotations and citation omitted). Due process requires that defendant have certain minimum contacts with the forum state so that maintenance of the suit will not offend "traditional conceptions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Defendant's "conduct and connection with the forum state" must be such that defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

**\*3** Personal jurisdiction may be either general or specific. General jurisdiction exists if "there are substantial or continuous and systematic contacts with the forum state, even if the cause of action is unrelated to those contacts."*Gator.com,* 341 F.3d at 1076 (internal quotations and citation omitted). The standard for establishing such general jurisdiction is " 'fairly high.' " Id, quoting *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1086 (9th Cir.2000). Even if such substantial and continuous contacts exist, the court must also determine that the exercise of jurisdiction is reasonable. *Gator.com,* 341 F.3d at 1077; see *Glencore Grain Rotterdam BV v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1125 (9th Cir.2002).

In the absence of general jurisdiction, plaintiff may assert personal jurisdiction over defendant by proving specific jurisdiction. Under this test, plaintiff need not establish substantial and continuous contacts with the forum state-rather, plaintiff need only establish that defendant had *some* contact with the forum state. See *Unocal,* 248 F.3d at 923. The critical question for specific personal jurisdiction is " 'whether the cause of action arises out of or has a substantial connection with that [contact].' " *Un-*

*ocal,* 248 F.3d at 923, quoting *Hanson v. Denckla,* 357 U.S. 235, 250-53, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). As with general jurisdiction, the court must also determine that the exercise of jurisdiction is reasonable. *Glencore,* 284 F.3d at 1125;*Alexander,* 939 F.2d at 850.

### B

In its motion to dismiss, defendant contends that it is not amenable to either general or specific jurisdiction due to its lack of physical presence in California and lack of significant forum-related activities. Mot Dism (Doc # 6) at 3:11-5:7. Given that the extent of defendant's contacts with California appears to be its use and alleged copying of a California-based company's software, it is reasonable to assume that defendant lacks the kind of substantial and continuous contacts necessary to sustain a finding of general jurisdiction. See *Gator.com,* 341 F.3d at 1076.

Rather than contest the general jurisdictional issue, plaintiff instead contends that specific jurisdiction is proper over defendant in this case. See Opp Mot Dism (Doc # 11) at 4:15-7:25. The Ninth Circuit has developed a three-factor test in evaluating specific jurisdiction: (1) whether defendant has purposefully availed himself of the privileges of conducting activity in the forum; (2) whether the claim arises out of or results from defendant's forum-related activities; and (3) whether the exercise of jurisdiction is reasonable. *Glencore,* 284 F.3d at 1123;*Unocal,* 248 F.3d at 923;*Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, (9th Cir.1986).

### 1

With respect to the first requirement, the court must engage in a " 'qualitative evaluation of the defendant's conduct with the forum state.' " *Core-Vent Corp. v. Nobel Industries, AB,* 11 F.3d 1482, 1485 (9th Cir.1993), quoting *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987). This purposeful avail-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 4
Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.))

ment inquiry "ensures that a nonresident defendant will not be haled into court based upon 'random, fortuitous or attenuated' contacts with the forum state." *Panavision Int'l LP v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir.1998)(*Panavision II* ), quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

**\*4** Although defendant does not appear to be physically present in California, plaintiff nevertheless contends that the purposeful availment requirement is met based on the "effects" doctrine. " '[W]ithin the rubric of "purposeful availment" the [Supreme] Court has allowed the exercise of jurisdiction over a defendant whose only conduct with the forum state is the "purposeful direction" of a *foreign* act having *effect* in the forum state."*Core-Vent,* 11 F.3d at 1485 (emphasis in original), quoting *Haisten,* 784 F.2d at 1397. The Supreme Court established the effects doctrine in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), a libel action involving the publication of an article in a magazine that had its largest circulation in the plaintiff's home state. The Ninth Circuit has interpreted *Calder* as establishing a three-part test: (1) defendant must commit an intentional act; (2) defendant must expressly aim the act at a forum state; and (3) defendant must know the brunt of the harm is likely to be suffered in the forum state. *Core-Vent,* 11 F.3d at 1486.

In following *Calder,* the Ninth Circuit has been cautious in extending this doctrine to situations in which the defendant's contacts with the forum state are more remote than those in *Calder* and has rejected, for example, the notion that the effects doctrine applies in contract disputes. *Core-Vent,* 11 F.3d at 1486;*McGlincy v. Shell Chemical Co.,* 845 F.2d 802, 817 (9th Cir.1988). The appellate court has, however, extended the effects doctrine to certain tort actions. See *Panavision II,* 141 F.3d at 1321;*Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995). Numerous cases both within and outside this circuit have applied the doctrine to actions for willful copyright infringement or other

torts involving intellectual property. See, e g, *Panavision II,* 141 F.3d at 1322 (finding the effects doctrine applicable in the context of defendant's scheme to register plaintiff's trademarks as domain names on the Internet); *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.,* 106 F.3d 284, 289 (9th Cir.1997) (holding that willful copyright infringement alone was enough to establish purposeful availment), overruled on other grounds by*Feltner v. Columbia Pictures Television,* 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998); *Dakota Industries, Inc. v. Dakota Sportswear,* 946 F.2d 1384, 1390-91 (8th Cir.1991) (utilizing effects test in context of trademark infringement); *MGM Studios, Inc. v. Grokster Ltd.,* 243 F Supp 2d 1073, 1089-90 (C.D.Cal.2003) (Wilson) (applying effects test to intentional copyright infringement claim); *Real Good Toys, Inc. v. XL Machine Ltd.,* 163 F Supp 2d 421, 424-25 (D Ver 2001) (Sessions) (applying effects test to claims for intentional copyright and trade dress infringement); *The 3DO Co v. Poptop Software, Inc,* 1998 U.S. Dist LEXIS 21281, \*9-\*10 (ND Cal) (Conti) (finding test applicable to claim for misappropriation of trade secrets).

**\*5** Plaintiff alleges that defendant willfully infringed its copyrights. Plaintiff also presents evidence that defendant has admitted infringement of the copyrights and that defendant was in possession of sufficient information that it knew or should have known that the copyrights belonged to a corporation with its primary place of business in California. Opp Mot Dism at 6:14-7:25. Defendant counters that there are not enough facts before the court to establish that it willfully infringed the copyrights or to establish that it knew the effects of any infringement would be felt in California. Reply Mot Dism (Doc # 17) at 3:14-6:11. Although defendant's only entry into California is through this alleged willful infringement, the court agrees with plaintiff that purposeful availment is satisfied for several reasons.

As a preliminary matter, a number of courts have

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.))

Page 5

found that willful infringement of intellectual property is sufficient to meet the requirements of the effects test. It is true that, in some of those cases, the defendant has been found actually to have committed the tort of willful infringement. See *Columbia Pictures,* 106 F.3d at 289. Additionally, some district courts have noted that proof of intentional infringement is not enough without some finding that the intentional conduct was directed toward a plaintiff whom the defendant knew to reside in the forum state. *MGM,* 243 F Supp 2d at 1089. But several district courts, including one from this district, have found plaintiff's allegations of willful infringement alone to be sufficient. *Real Good Toys,* 163 F Supp 2d at 424-25;*3DO,* 1998 U.S. Dist LEXIS 21281 at *10; *Panavision Int'l v. Toeppen,* 938 F.Supp. 616, 621-22 (C.D.Cal.1996) (Pregerson) (*Panavision I* ),aff'd by *Panavision II,* 141 F.3d at 1316. Such a finding would necessarily rest on an assumption that plaintiff's allegations regarding defendant's actions must be assumed to be true. See *Real Good Toys,* 163 F Supp 2d at 424. This assumption seems somewhat at odds with the requirement that plaintiff make a prima facie showing that personal jurisdiction is proper, but it is nevertheless significant to note that several courts have concluded that such allegations are enough.

But the court need not resolve the question whether simple allegations of willful infringement are enough for purposeful availment. To the extent that something more than bare allegations of an intentional tort is required, plaintiff has also presented enough evidence to make a prima facie showing that the effects test is satisfied. First, plaintiff presents adequate evidence that defendant's actions with respect to the software were intentional. Plaintiff presents two letters in which defendant admits that it believes it may have infringed the copyrights and that it made more copies of the software than it was authorized to do. Plaintiff also presents proof that the software was accompanied by a license agreement that defendant should have read. Although defendant points out that one of the letters states that defendant was "under the impression

[the software] were all part of a package for [its] company's use," the court must resolve conflicts in the evidence in favor of plaintiff.*Unocal,* 248 F.3d at 922. For purposes of the showing required to prove personal jurisdiction, plaintiff's evidence of an intentional act is sufficient.

*6 Second, plaintiff has presented adequate evidence that defendant's infringing act was expressly aimed at California. Although plaintiff bought its software in Missouri, the software was accompanied by several documents that show that plaintiff's primary place of business is located in San Rafael, California. Based on these notices, defendant should have known that plaintiff is headquartered in northern California. Furthermore, a large portion of the software industry is centered in northern California, a fact of which defendant reasonably should have been aware. Taken together, these two facts demonstrate that defendant's allegedly infringing activities are directed at California in "more than a random, fortuitous, or attenuated way."*ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 625 (4th Cir.1997). Thus, those facts are enough to conclude, at least for jurisdictional purposes, that defendant expressly aimed its copying activity toward California. See *Panavision II,* 141 F.3d at 1322 (noting that defendant likely knew his infringing conduct would harm plaintiff, a motion picture company, since the motion picture industry is primarily located in California); *MGM,* 243 F Supp 2d at 1089-90 (finding that defendant should have known that most of the music and video copyrights it infringed were owned by California-based companies).

Third, plaintiff has presented adequate evidence that the brunt of the harm caused by defendant's alleged infringement was suffered in California. As plaintiff points out, courts often presume irreparable injury upon a prima facie showing of copyright infringement. See, e g, *Country Kids 'n City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1288 (10th Cir.1996); *Universal City Studios, Inc. v. Film Ventures Int'l, Inc.,* 543 F.Supp. 1134, 1139 (C.D.Cal.1982). De-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.))**

fendant's admission that it copied plaintiff's software without permission is thus sufficient for jurisdictional purposes to show that plaintiff has likely suffered substantial harm. Because defendant should have known that plaintiff's business is located in California, defendant should have known that any harm caused by such copying would likely be felt in California. Defendant argues that "a corporation does not suffer harm in a particular geographic location in the same sense that an individual does."Reply Mot Dism at 5:24-25 (citing *Core-Vent,* 11 F.3d at 1486). But as *Core-Vent* itself notes, there is a significant difference between the minimal harm felt at a corporation's place of incorporation and the more pronounced harm felt at a corporation's principal place of business. See 11 F.3d at 1487. Further, several courts in this circuit have been willing to assume that, when a corporation's copyright is infringed, the corporation suffers harm in its primary place of business. See, e g, *Panavision II,* 141 F.3d at 1321;*MGM,* 243 F Supp 2d at 1089-90. Defendant also argues that plaintiff has numerous offices throughout the world and that it is therefore not evident that the harm from copyright infringement would be suffered in California. Reply Mot Dism at 5:15-23. But even defendant's evidence of this fact-a printout of plaintiff's website, listing plaintiff's various offices-describes San Rafael, California as the location of plaintiff's worldwide headquarters and supports the view that the harm from infringement would be suffered primarily in California.

**\*7** Accordingly, the court concludes that plaintiff has met its burden under the effects test and that the purposeful availment requirement has been met.

2

Next, plaintiff must prove that the claim it asserts in this litigation arises out of defendant's forum-related activities. *Glencore,* 284 F.3d at 1123;*Panavision II,* 141 F.3d at 1322. This inquiry requires that plaintiff establish that its injury would not have occurred "but for" defendant's conduct directed to-

ward plaintiff in California. *Glencore,* 284 F.3d at 1123;*Panavision II,* 141 F.3d at 1322. In the case at bar, this requirement is easily satisfied. Defendant's allegedly unauthorized copying of plaintiff's software caused plaintiff injury in California, and this particular injury would not have occurred "but for" defendant's allegedly infringing conduct.

3

The final step in the specific jurisdictional inquiry is whether the exercise of jurisdiction is reasonable. *Gator.com,* 341 F.3d at 1077; see *Glencore,* 284 F.3d at 1125. When defendant has been shown purposefully to have directed its activities toward the forum state, " 'there is a *presumption of reasonableness* \* \* \* [that] the defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would be unreasonable." ' *Columbia Pictures,* 106 F.3d at 289, quoting *Haisten,* 784 F.2d at 1397. While there is no precise or mechanical method to determine whether the exercise of jurisdiction is reasonable, the Ninth Circuit has instructed that the district court assess the following factors:

1. The extent of defendant's purposeful interjection into the forum state's affairs;

2. The burden on defendant of litigating in the forum;

3. The extent of conflict with the sovereignty of defendant's home state;

4. The forum state's interest in adjudicating the dispute;

5. The most efficient judicial resolution of the controversy;

6. The importance of the forum to plaintiff's interest in convenient and fair relief; and

7. The existence of an alternate forum.

*Glencore,* 284 F.3d at 1125; see also *Olsen v. Gov't*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.))

*of Mexico,* 729 F3d 641, 649-51 (9th Cir1984).

In considering the first factor, which is the extent of defendant's purposeful interjection into California, the court must examine the significance and degree of defendant's purposeful availment of the privileges of California law. *Ziegler,* 64 F.3d at 475. The court's determination that defendant has purposefully directed its activities toward California is sufficient to resolve this factor in favor of jurisdiction. *Haisten,* 784 F.2d at 1400-01;*MGM,* 243 F Supp 2d at 1092.

In connection with the second factor, the burden on defendant in litigating in California, defendant argues that it is a small company with no contacts in California. While it is true that these facts cut against jurisdiction, it is also true that " 'modern advances in communications and transportation'' " have significantly reduced the burden of litigating outside one's home state.*MGM,* 243 F Supp 2d at 1093, quoting *Sinatra v. Nat'l Enquirer, Inc.,* 854 F.2d 1191, 1198-99 (9th Cir.1991); see also *Panavision II,* 141 F.3d at 1323. This is especially true given that defendant is a resident of the United States, as opposed to a resident of a foreign country. This factor thus presents a weak basis for declining jurisdiction.

**\*8** The third factor is the potential for conflicts with the sovereignty of another state. Unlike a situation in which the defendant is from a foreign nation, the sovereignty barrier is not particularly high when the defendant is merely from another state. Cf *Amoco Egypt Oil Co. v. Leonis Navigation Co.,* 1 F.3d 848, 851 (9th Cir.1993). Forcing a Missouri resident such as defendant to litigate in California, especially on a federal claim, poses little threat to Missouri's sovereignty. See *Panavision II,* 141 F.3d at 1323 (noting that "the federal analysis would be the same in either Illinois or California").

With respect to the fourth factor, "California maintains a strong interest in providing an effective means of redress for its residents who are tortuously injured."*Core-Vent,* 11 F.3d at 1489. Because

plaintiff's primary place of business is in California, California has a strong interest in providing redress for the injuries plaintiff has suffered as a result of defendant's alleged willful copyright infringement.

The fifth factor, which is judicial efficiency, requires the court to evaluate where the witnesses and evidence are likely to be located. See *Core-Vent,* 11 F.3d at 1489. The court may also compare the relative efficiency of alternative forums. It is likely that witnesses and evidence will be located both in California and Missouri, given that witnesses and evidence regarding plaintiff's software and defendant's copying activities are likely relevant to resolving this case. This factor is therefore neutral and favors neither side.

The sixth factor is convenient and effective relief for plaintiff. California is a convenient forum for plaintiff, since plaintiff's principal place of business is located here. And given the frequency with which California courts are faced with intellectual property claims involving software, California is certainly well-suited to providing plaintiff with appropriate relief for its injuries, should such relief be warranted. Moreover, plaintiff has presented evidence that, because it is faced with widespread infringement of its software products, litigating outside California and in all the states in which the alleged infringers live would be highly inconvenient. This factor thus strongly favors jurisdiction.

The final factor regarding the existence of an alternative forum also fails to cut in plaintiffs' favor. Plaintiff bears the burden of proving the unavailability of an alternative forum. *Core-Vent,* 1 F3d at 853; see *Panavision II,* 141 F.3d at 1324. Plaintiff has not demonstrated the unavailability of an alternative forum, such as defendant's home state of Missouri. Indeed, it is unlikely that plaintiff could demonstrate Missouri's unavailability, since the same federal copyright statute applies in Missouri as applies in California. Plaintiff's failure to meet this factor, however, would be significant only if other factors weighed against jurisdiction. *MGM,* 243 F Supp 2d at 1094 (citing, for example, *Cor-*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.))

*porate Inv. Business Brokers v. Melcher,* 824 F.2d 786, 791 (9th Cir.1987). Given that none of the other factors tilt significantly in defendant's favor, the availability of Missouri is not of much consequence in this case.

**\*9** In sum, the court finds that defendant has failed to make a compelling showing that jurisdiction would not be reasonable in this case. Accordingly, the court concludes that personal jurisdiction over defendant is appropriate and reasonable and thus DENIES defendant's motion to dismiss pursuant to Rule 12(b)(2) (Doc # 6).

### III

Defendant also argues that venue is improper in this district and that the case should therefore be dismissed pursuant to Rule 12(b)(3). The copyright venue provision specifies that an action may only be brought in a district in which "the defendant or his agent resides or may be found."28 USC § 1400(a). Defendant bases its improper venue argument on two grounds: (1) defendant can only be considered a resident of Missouri, the state of its incorporation; and (2) defendant cannot be "found" in the Northern District of California because it is not amenable to personal jurisdiction here. Mot Dism at 5:9-20; Reply Mot Dism at 7:19-24.

The copyright venue provision should be read in light of the general venue statute, which provides that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."28 USC § 1391(c). The Federal Circuit has determined that the patent venue provision (which is a subsection of the same statute as the copyright venue provision) should be read in light of the general venue statute because the general venue statute applies to the title and chapter encompassing the patent venue provision. *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1580 (Fed.Cir.1990). As the copyright venue provision is also a part of that same title and

chapter, § 1391(c) applies to the copyright provision as well. This means that venue is proper in any district in which there is personal jurisdiction over the defendant. *VE Holding,* 917 F.2d at 1583; see *MGM,* 243 F Supp 2d at 1095 (applying § 1391(c) in a copyright infringement case).

Under §§ 1391(c) and 1400(a), therefore, venue is proper in this case. The court has determined above that personal jurisdiction over defendant is proper in California. Further, the basis for personal jurisdiction is the effects of defendant's actions on plaintiff in San Rafael, California-a city located within this district. The court thus has determined that defendant's allegedly infringing actions were purposefully directed toward a resident of this district and that the effects of such actions were primarily felt in this district. Accordingly, venue in this district is proper, and the court must DENY defendant's Rule 12(b)(3) motion to dismiss as well.

### IV

For the foregoing reasons, the court DENIES defendant's motion to dismiss for lack of personal jurisdiction and improper venue (Doc # 6). The court also VACATES the March 11, 2004, hearing on these motions.

IT IS SO ORDERED.

N.D.Cal.,2004.
Autodesk, Inc. v. RK Mace Engineering, Inc.
Not Reported in F.Supp.2d, 2004 WL 603382 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                        Page 1
Not Reported in F.Supp.2d, 2003 WL 1888873 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 1888873 (N.D.Cal.))**

**C**

Botkin v. Safeco Ins. Co. of America, Inc.
N.D.Cal.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Daniel B. BOTKIN, Sarah Burnet, in her capacity
as Executor on behalf of the Estate of Jane O'Brien,
Decedent, Plaintiffs,
v.
SAFECO INSURANCE COMPANY OF AMER-
ICA, INC., and Does 1-100, inclusive, Defendants.
**No. C 03-0246 WHA.**

April 14, 2003.

ORDER TRANSFERRING ACTION TO THE
DISTRICT COURT FOR THE CENTRAL DIS-
TRICT OF CALIFORNIA

ALSUP, J.

INTRODUCTION

**\*1** In this insurance-coverage dispute, defendant
Safeco Insurance Company of America, Inc. argues
that the case should be transferred to the district
court for the Central District of California. Because
this order finds that all of the material witnesses ex-
cept plaintiff Botkin are located in the Central Dis-
trict of California or out-of-state entirely, it finds
that convenience to witnesses requires transfer in
the interest of justice. Accordingly, the Clerk shall
TRANSFER this case to the DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFOR-
NIA.

STATEMENT

This action arises from a dispute between plaintiff
Daniel B. Botkin and Safeco over coverage under
his automobile-insurance policy. Since 1983 and
until four months before the filing of this suit, Mr.
Botkin was a resident of Santa Barbara, California,

which is in the Central District. Mr. Botkin pur-
chased a Safeco automobile-insurance policy for
the period January 19 through July 19, 2002. He
bought it through Manchester Insurance Agency,
Inc., which is also located in Santa Barbara, Cali-
fornia. Mr. Botkin's life partner, Jane M. O'Brien,
was listed as a driving member of his household on
the policy. Glenn Estabrook, the Manchester em-
ployee who sold Mr. Botkin the policy, allegedly
told him that both he and Ms. O'Brien were equally
and fully covered by the policy.

In February 2002, Ms. O'Brien was tragically killed
by an uninsured drunk motorist. Mr. Botkin sought
coverage from Safeco for Ms. O'Brien's death under
the policy. Ms. O'Brien was not a named insured on
the policy. Furthermore, Ms. O'Brien and Mr.
Botkin were not legally married, nor had they filed
a notice of domestic partnership. On these grounds,
Safeco denied coverage. Mr. Botkin's uninsured-mo-
torist claim was handled by various Safeco employ-
ees working in Safeco's offices in Fountain Valley,
Orange County and in Glendale, Los Angeles
County, California - both counties within the Cent-
ral District.

Plaintiff Sarah Burnett is the executrix of the estate
of Ms. O'Brien. She is a resident of the state of
Florida. On December 17, 2002, Ms. Burnett and
Mr. Botkin filed suit against defendant Safeco in
San Francisco Superior Court. Safeco was served
on December 19, 2002. On January 17, 2003, Sa-
feco removed the instant action here and on January
22, filed an answer.

In response to Safeco's removal, on January 29,
plaintiffs filed a second action in San Francisco Su-
perior Court. This second action was the same as
the first action, but in an apparent effort to defeat
removal, it added non-diverse defendants
Manchester Insurance Agency, Inc. and Glenn Es-
tabrook.[FN1]

> FN1. On February 24, Safeco filed a mo-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 2
Not Reported in F.Supp.2d, 2003 WL 1888873 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1888873 (N.D.Cal.))

tion to dismiss this second complaint on the grounds that there is an identical action pending in federal court. On March 28, 2003, the state court denied the motion without prejudice.

On February 14, Safeco filed the instant motion to transfer this case to the United State District Court for the Central District of California, noticing a hearing for March 27. On March 3, plaintiffs filed a notice of voluntary dismissal under Rule 41(a), which notice was improper since an answer had already been filed. Plaintiffs did not file the opposition to defendants' motion to transfer due on March 13, and Safeco did not file the reply due March 20. On March 21, this Court struck plaintiff's notice of dismissal and continued the hearing on the motion to transfer. Oral argument was heard on April 10.

*2 For the benefit of the transferee court, this order highlights two other motions which currently are pending in this Court in this case. On March 27, plaintiffs filed a motion to dismiss this action on the grounds that it is identical to the second state-court action. Additionally, on March 28, Safeco filed a motion for leave to file a third-party complaint against Manchester Insurance Agency, Inc. and Glenn Estabrook.

## ANALYSIS

General Standards for Transfer.

28 U.S.C 1404(a) provides for transfer by a district court. It states, in pertinent part:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

First, the party seeking the transfer has the burden to establish that the transferee court would have had subject-matter jurisdiction, defendants would have been subject to personal jurisdiction, and venue

would have been proper.*Hoffman v. Blaski,* 363 U.S. 335, 343-44 (1960).

Here, the subject-matter jurisdiction requirement is met based on diversity of citizenship. 28 U.S.C. 1332. Safeco is a resident of the state of Washington, with its principal place of business in Seattle. The personal-jurisdiction requirement is met since Safeco consents to jurisdiction. Proper venue is dictated by 28 U.S.C. 1391(a), which provides that: "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ..." Here, Safeco transacts business in Los Angeles and Orange counties within the Central District of California, and the employees who handled Mr. Botkin's claim work in those counties. The insurance agency and agent from whom Mr. Bokin purchased the policy are located in Santa Barbara county within the Central District of California. Furthermore, at the time the parties entered into the insurance contract at issue in this case, Mr. Botkin resided in Santa Barbara county. Accordingly, venue would be proper in the Central District of California.

Having found these initial requirements are met, this order must explore whether defendant Safeco has provided a rationale sufficient to defeat the presumption in favor of plaintiffs' chosen forum. In judging the weight to be given to a plaintiffs' choice of forum, "consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to [plaintiff's] cause of action."*Pac. Car and Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir.1968)."If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is only entitled to minimal consideration."*Ibid.* In determining which district is more convenient for witnesses, the identity of the witnesses, the location of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2003 WL 1888873 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1888873 (N.D.Cal.))

the witnesses' residences and the substance of their testimony are factors to be considered. *A.J. Indus., Inc. v. United States Dist. Ct.,* 503 F.2d 384, 389 (9th Cir.1974).

Convenience of the Witnesses.

**\*3** As noted above, a court can transfer an action based upon the convenience of the parties and the witnesses in the case. Here, all of the actions at issue in this case occurred within Santa Barbara County, Orange County or Los Angeles County. All of these counties are within the Central District. The subject policy was sold in Santa Barbara, the premiums were paid in Santa Barbara, and plaintiff Botkin resided in Santa Barbara until shortly before initiating this action. The claim was handled by Safeco employees located in counties in the central district and both defendant insurance agents still reside in Santa Barbara.

Safeco noted, and plaintiffs did not dispute, that the following witnesses, all of whom reside within the Central District of California, are anticipated to testify at trial: (1) Dawn Jeworski, regional claims analyst for Safeco, works in Fountain Valley office; (2) Karen Perrin, underwriter for Safeco, works in Fountain Valley office; (3) Brent French, supervisor in Safeco's Glendale office which sent Mr. Botkin's denial letter; (4) Glen Estabrook, and his assistant (5) Karen Gulje, who are employed with Manchester Insurance Agency in Santa Barbara.

The only significant persons who do not reside in the Central District are Mr. Botkin, Ms. Burnett and Mick Pagach. Mr. Pagach worked in Safeco's Glendale office and sent Mr. Botkin denial letter. He currently lives in Idaho and no longer works for Safeco. Ms. Burnett, the executrix of Ms. O'Brien's estate, resides in Florida. Accordingly, the convenience for these two individuals is not affected by whether or not transfer is granted.

Mr. Botkin resided in the Central District until a few months before filing suit, including when he obtained the policy at issue and when he initiated the claim against Safeco. It is true that Mr. Botkin has relocated to San Francisco. All of the activities alleged in the complaint, however, occurred in the Central District. This order acknowledges that plaintiff Botkin's deposition was taken by Safeco in San Francisco before he filed this suit, but finds this is not dispositive. That Safeco choose not to inconvenience Botkin (and his attorneys) on that single occasion holds little weight against the clear concern regarding convenience of all the other witnesses in the case. While the Court is sympathetic to Mr. Botkin's situation, it finds that the maintenance of this action in the Northern District of California would not be in the interest of justice.

Plaintiffs' opposition centers almost entirely on the appropriateness of California as a forum for their dispute. Defendants, however, do not request transfer to a forum outside California. Plaintiffs appear to be arguing that the California state court in the County of San Francisco should handle this action. This argument, while perhaps appropriate for a proper motion to dismiss, does not go to the considerations at issue in this motion for transfer.

Additionally, plaintiffs' contention that this motion to transfer is moot based on lack of diversity is completely with merit. Plaintiffs have yet to join in any defendants whose residence would destroy diversity in this case. The fact that such defendants have been named in plaintiffs' state-court action is inapposite.

**\*4** Accordingly, this order finds that the Central District is the more appropriate forum to handle this action.

### CONCLUSION

For the foregoing reasons, a transfer to the district court for the Central District of California is required in the interest of justice and efficiency. Accordingly, the Clerk shall TRANSFER this action.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 1888873 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 1888873 (N.D.Cal.))**

IT IS SO ORDERED.

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 14, 2003, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Mary H. Kim

LaTorraca and Goettsch

211 East Ocean Boulevard

Suite 400

Long Beach, CA 90801-4978

N.D.Cal.,2003.
Botkin v. Safeco Ins. Co. of America, Inc.
Not Reported in F.Supp.2d, 2003 WL 1888873 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2002 WL 1906620 (N.D.Cal.), 2002 Copr.L.Dec. P 28,499
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1906620 (N.D.Cal.))**

▷
Brush Creek Media, Inc. v. Boujaklian
N.D.Cal.,2002.

United States District Court, N.D. California.
BRUSH CREEK MEDIA, INC., Plaintiff,
v.
Jack BOUJAKLIAN, et al., Defendants.
**No. C-02-3491 EDL.**

Aug. 19, 2002.

Proprietor brought state action against competitor alleging interference with prospective economic advantage, conversion, injunctive relief, accounting, and false designation of origin, unfair competition, and misappropriation. Competitor removed action to federal court. On copyright holder's motion to remand, the District Court, Laporte, United States Magistrate Judge, held that: (1) plain language of statute governing registration and infringement actions precluded institution of copyright infringement action while copyright application was merely pending, and (2) district court did not have jurisdiction over lawsuit.

Motion granted.

West Headnotes

**[1] Copyrights and Intellectual Property 99 ⬅︎ 75.5**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k75.5 k. Conditions Precedent;
Registration. Most Cited Cases
Plain language of statute governing registration and infringement actions precluded institution of copyright infringement action while copyright application was merely pending, even though that result was inefficient, since application for copyright re-

gistration did not constitute registration. 17 U.S.C.A. § 411(a).

**[2] Antitrust and Trade Regulation 29T ⬅︎ 14**

29T Antitrust and Trade Regulation
    29TII Unfair Competition
        29TII(A) In General
            29Tk14 k. Preemption. Most Cited Cases
    (Formerly 382k421, 382k864 Trade Regulation, 379k10(3))

**Removal of Cases 334 ⬅︎ 25(1)**

334 Removal of Cases
    334II Origin, Nature, and Subject of Controversy
        334k25 Allegations in Pleadings
            334k25(1) k. In General. Most Cited Cases

**States 360 ⬅︎ 18.15**

360 States
    360I Political Status and Relations
        360I(B) Federal Supremacy; Preemption
            360k18.15 k. Particular Cases, Preemption or Supersession. Most Cited Cases

**States 360 ⬅︎ 18.84**

360 States
    360I Political Status and Relations
        360I(B) Federal Supremacy; Preemption
            360k18.83 Trade Regulation; Monopolies
                360k18.84 k. In General. Most Cited
Cases

**Torts 379 ⬅︎ 203**

379 Torts
    379III Tortious Interference
        379III(A) In General
            379k203 k. Preemption. Most Cited Cases
    (Formerly 379k10(3))

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 1906620 (N.D.Cal.), 2002 Copr.L.Dec. P 28,499
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1906620 (N.D.Cal.))

**Trover and Conversion 389 ☞13**

389 Trover and Conversion
    389II Actions
        389II(A) Right of Action and Defenses
            389k13 k. Nature and Scope of Remedy in
General. Most Cited Cases
District court did not have jurisdiction over re-
moved lawsuit claiming interference with prospect-
ive economic advantage, conversion, injunctive re-
lief, accounting, and false designation of origin, un-
fair competition, and misappropriation under Cali-
fornia law, even though competitor anticipated us-
ing copyright defenses; proprietor's claims were not
preempted since each claim required extra element
in place of, or in addition to, claims under Copy-
right Act which focused on reproduction of work.
17 U.S.C.A. § 411(a).

ORDER REMANDING CASE

LAPORTE, Magistrate J.

INTRODUCTION

*1 Plaintiff Brush Creek Media commenced this ac-
tion in San Francisco Superior Court on June 28,
2002, alleging five state law claims: (1) interfer-
ence with prospective economic advantage; (2) con-
version; (3) injunctive relief; (4) accounting and (5)
false designation of origin, unfair competition and
misappropriation. Plaintiff's fifth state law claim,
including an allegation of interference with intellec-
tual property rights by copying, appeared to sound
in copyright, which would have conferred jurisdic-
tion on this Court. On July 22, 2002, Defendants re-
moved the action. On July 26, 2002, Plaintiff
moved to enforce a preliminary injunction issued
by the state court and Defendants moved to vacate
or modify the injunction.

On August 1, 2002, the Court held a hearing on the
parties' motions. In addition to argument by coun-
sel, the Court heard testimony from three witnesses.
The main focus of the hearing was this Court's jur-
isdiction. Plaintiff informed the Court that he inten-

ded to file a First Amended Complaint eliminating
the state law claim sounding in copyright. He did so
on August 2, 2002. On August 5, 2002, without
leave of court or stipulation of the parties, Plaintiff
submitted a Second Amended Complaint. The
parties submitted further briefing as ordered by the
Court on August 7 and August 9, 2002. The Court
held a second hearing on August 13, 2002, which
also focused on the Court's jurisdiction. Upon con-
sideration of the parties' oral arguments and their
submissions, good cause appearing, and for the
reasons set forth below, the Court remands this case
for lack of subject matter jurisdiction.

BACKGROUND FACTS

Plaintiff is a California corporation in the business
of selling adult gay pornographic movies and
magazines. Plaintiff's president and sole owner is
Bear Dog Hoffman. Defendant Jack Boujaklian is
Hoffman's former domestic partner and former
business partner, who now operates Defendant Pan-
ther Entertainment. Defendant Pacific Sun Enter-
tainment is also a California corporation that manu-
factures and distributes adult gay pornographic films.

On April 22, 2002, Hoffman and Boujaklian
entered into an agreement under which Boujaklian
would be the Chief Operating Officer and Hoffman
would be the Chief Executive Officer of Brush
Creek Media. Subsequently, Boujaklian allegedly
stole over 300 master video tapes from Plaintiff's
office. Plaintiff owned the master tapes and videos
made from those tapes. Declaration of Bear Dog
Hoffman in Support of Motion to Enforce Prelimin-
ary Injunction ¶¶ 4-5.

Boujaklian entered into licensing agreements for
the videos with Defendant Pacific Sun on May 2-3,
2002. Declaration of Motti Green in Support of
Motion to Vacate or Modify Preliminary Injunction
¶¶ 3, 6, 9; Exs. A, B, C. In each of the agreements,
it appears that Boujaklian purported to act on behalf
of several entities, including Plaintiff. Pacific Sun

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1906620 (N.D.Cal.), 2002 Copr.L.Dec. P 28,499
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1906620 (N.D.Cal.))

had conducted business with Hoffman, Boujaklian and Brush Creek for approximately seven years and believed, at the time it executed the licensing agreements, that Boujaklian had authority to enter into contracts for Brush Creek. *Id.* ¶ 2. Payments under these licensing agreements were made primarily to Boujaklian individually, however, rather than to Brush Creek Media. At the hearing on August 1, 2002, Boujaklian admitted that he used at least some of the money to make payments on a house. On May 8, 2002, Hoffman terminated Boujaklian's employment.

**\*2** Brush Creek obtained a Temporary Restraining Order in state court on June 28, 2002 that prohibited Defendants from "producing, manufacturing, selling marketing or transferring the master tapes or the rights to those tapes to any party."Declaration of Robert Crowe in Support of Defendant Pacific Sun's Motion to Vacate or Modify Preliminary Injunction Ex. A. Later, on July 19, 2002, Plaintiff secured a preliminary injunction during a state court hearing. The preliminary injunction restrained Defendants Boujaklian and Pacific Sun from "manufacturing, selling or marketing the master tapes or from marketing or selling DVDs that are copies of the master tapes."Transcript of July 19, 2002 Hearing at 8:15-18. Defendants were also required to return the master tapes to Plaintiff. *Id.* at 8:19.

On August 2, 2002, Plaintiff sent copyright registration materials for certain master tapes to the Copyright Office. According to Plaintiff, the Copyright Office received those materials on August 5, 2002. Based on the filing of copyright registration materials, Plaintiff included a claim for copyright infringement in his First Amended Complaint.

## DISCUSSION

Pursuant to 17 U.S.C. § 411(a), "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title."The ques-

tion of whether a plaintiff can bring a copyright infringement claim under 17 U.S.C. § 411(a) after the Copyright Office receives an application for copyright registration, but before it issues a certificate of registration, is unsettled.

Several courts, as well as the authors of the leading treatise on copyright, have concluded that a pending registration application is sufficient to confer federal jurisdiction over a copyright infringement claim. *SeeApple Barrel Prods., Inc. v. R.D. Beard,* 730 F.2d 384 (5th Cir.1984) (finding that to bring a copyright infringement suit, a plaintiff need not prove possession of a certificate, but need only prove payment of the fee, deposit of the work in question and receipt by the Copyright Office of the application); *see alsoGeoscan, Inc. of Texas v. Geotrace Techs., Inc.,* 226 F.3d 387, 393 (5th Cir.2000); *Sefton v. Jew,* 201 F.Supp.2d 730, 747, n. 13 (W.D.Tex.2001); *Sefton v. Webbworld, Inc.,* 2001 WL 896933, \*2, n. 2 (N.D.Tex.); *Gable-Leigh, Inc. v. North Am. Miss,* 2001 WL 521695, \*4 (C.D.Cal.2001); *Lennon v. Seaman,* 84 F.Supp.2d 522, 523 (S.D.N.Y.2000); *Dielsi v. Falk,* 916 F.Supp. 985, 994, n. 6 (C.D.Cal.1996); *Tang v. Hwang,* 799 F.Supp. 499, 502-03 (E.D.Pa.1992); *Secure Servs. Tech., Inc. v. Time & Space Processing, Inc.,* 722 F.Supp. 1354, 1364 (E.D.Va.1989); 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright,* § 7.16[B][1][a] at 7-155 (citing *Apple Barrel Prods., Inc. v. R.D. Beard,* 730 F.2d 384 (5th Cir.1984); *International Kitchen Exhaust Cleaning Ass'n v. Power Washers of North Am.,* 81 F.Supp.2d 70, 72 & n. 17 (D.D.C.2000); *Sebastian Int'l, Inc. v. Consumer Contact Ltd.,* 664 F.Supp. 909, 912 (D.N.J.1987); *Wilson v. Mr. Tee's,* 855 F.Supp. 679, 682-83 (D.N.J.1994)). Other courts have concluded instead that a certificate of copyright registration from the Copyright Office is a prerequisite to bringing a copyright infringement claim. *SeeOyster Software, Inc. v. Forms Processing, Inc.,* 2001 WL 1736382, \*10-11 (N.D.Cal.); *Goebel v. Manis,* 39 F.Supp.2d 1318, 1319 (D.Kan.1999) (preferring the *Apple Barrel* approach, but holding that a certificate is re-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1906620 (N.D.Cal.), 2002 Copr.L.Dec. P 28,499
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1906620 (N.D.Cal.))

Page 4

quired based on the plain language of the statute); *Ryan v. Carl Corp.,* 1998 WL 320817, *2-3 (N.D.Cal.).

**\*3** In *Ryan v. Carl Corp.,* 1998 WL 320817, *2 (N.D.Cal.), Judge Fern Smith, recognizing the absence of controlling or consistent case law on this issue, examined the language of the Copyright Act. *Ryan* held that the plain language of the Act compelled the conclusion that a plaintiff cannot maintain an infringement action until the Copyright Office issues a certificate of registration. *See alsoOyster Software, Inc. v. Forms Processing, Inc.,* 2001 WL 1736382, *10-11 (N.D.Cal.) (following *Ryan* and finding a lack of subject matter jurisdiction where the plaintiff did not allege in its complaint that it possessed a certificate of copyright registration). Judge Smith specifically found that *Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106 (9th Cir.1970) did not control the issue, because *Roth* construed the 1909 Copyright Act and did not govern interpretation of the current Copyright Act. *SeeRoth,* 429 F.2d at 1108-09 (interpreting the language of the 1909 Copyright Act, which differed from the current Act by providing that no infringement action "shall be maintained" until the applicant has "complied with" the requirements to deposit copies of the work and registration materials, to find that the plaintiff could maintain a copyright action where the plaintiff had deposited the requisite forms and fees in the mail on the same day as it filed the complaint, and where the registration date related back to earlier materials sent to the Copyright Office prior to filing the complaint.)

Section 410(a) of the Copyright Act states that the Register of Copyrights shall register a claim and issue a certificate "when, *after examination,* [the Register of Copyrights] determines that ... the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met."17 U.S.C. § 410(a) (emphasis added). Judge Smith found that this section cut against automatic registration because it in-

dicated that the Copyright Office, not the copyright applicant, must register the copyright after examination. *Ryan,* 1998 WL 320817, *2. Further, although the Copyright Act states that the "effective date of a copyright registration is the day on which an application, deposit, and fee, which are determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received" (17 U.S.C. § 410(d)), Judge Smith interpreted this provision to mean not that an application is considered registered while it is being examined by the Copyright Office, but instead that once an application has been considered and accepted by the Copyright Office, the registration is backdated to the time the application is received. *Ryan,* 1998 WL 320817, * 2. Finally, Judge Smith determined that 17 U.S.C. § 408(a), which states that an applicant can obtain registration by delivering the application materials to the Copyright Office, did not supersede the requirement from 17 U.S.C. § 410(a) that examination is a prerequisite to registration. *Id.*

**\*4** In concluding that the plain language of the Copyright Act precluded an infringement action while a copyright application is pending, Judge Smith recognized that "construing the statute this way leads to an inefficient and peculiar result."*Ryan,* 1998 WL 320817 at *2. Even so, where Congress' intent is clear, as in the case of the Copyright Act, the court did not feel free "to redraft statutes to make them more sensible or just."*Id.*

[1] Here, the Court reluctantly agrees with *Ryan* that the plain language of the statute precludes institution of an infringement action while a copyright application is merely pending, even though the Court shares *Ryan'* s view that this result is inefficient. Under the plain language of the Act, application for copyright registration does not constitute registration. Indeed, examination of the Copyright Act reveals further support for the view that the Copyright Office's examination of the material sought to be copyrighted and determination whether to issue a certificate of registration is a prerequisite

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2002 WL 1906620 (N.D.Cal.), 2002 Copr.L.Dec. P 28,499
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1906620 (N.D.Cal.))

to bringing an infringement action. In 1976, Congress amended the Act to provide that:

[i]n any case, however, where the deposit, application and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

17 U.S.C. § 411(a). If "registration" is complete upon receipt of the application materials by the Copyright Office, then an application that would later be rejected by the Copyright Office could support an infringement action prior to receiving a certificate or denial thereof and without satisfying the condition that Congress included for bringing actions upon rejection, that is, to give notice to the Copyright Office. Interpreting the Act to require a certificate prior to bringing an infringement action gives effect to the requirements for bringing a claim upon rejection of the copyright application contained in 17 U.S.C. § 411(a).

Although the *Apple Barrel* line of cases is more appealing from an efficiency standpoint, the plain language of the statute forecloses copyright suits while a copyright application is pending and before a certificate of registration issues (or is denied). Therefore, Plaintiff here cannot maintain his copyright infringement claim at this time because Plaintiff does not yet have a certificate of registration of copyright. As granting leave to file Plaintiff's proposed Second Amended Complaint would be futile until the Copyright Office acts on the application and issue or denies registration, the Court cannot allow filing of the Second Amended Complaint.

[2] The question remains whether the Court has jurisdiction over Plaintiff's state law claims based on preemption under the Copyright Act. An action arises under the Copyright Act "if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for statutory royalties for record reproduction ... or asserts a claim requiring construction of the Act, ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim."*Topolos v. Caldewey,* 698 F.2d 991, 993 (9th Cir.1983) (quoting *T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 828 (2d Cir.1964)*cert. denied*381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965)). Specifically,

**\*5** If that claim involves copyright infringement or other matter directly related to the interpretation and enforcement of the Copyright Act, jurisdiction has been upheld. On the other hand, where it has been determined that the claim is essentially for some common law or state-created right, most generally for a naked declaration of ownership or contractual rights, jurisdiction has been declined, even though the claim might incidentally involve a copyright or the Copyright Act.

*Topolos,* 698 F.2d at 993 (quoting *Royalty Control Corp. v. Sanco, Inc.,* 175 U.S.P.Q. 641, 642 (N.D.Cal.1972)); *see also*Vestron, Inc. v. Home Box Office Inc.,* 839 F.2d 1380 (9th Cir.1988); *Firoozye v. Earthlink Network,* 153 F.Supp.2d 1115, 1125 (N.D.Cal.2001). The plaintiff's complaint is dispositive of the issue; anticipated defenses such as the plaintiff's lack of copyright ownership do not defeat jurisdiction. *Vestron,* 839 F.2d at 1381.

In *Firoozye,* a case of first impression in this Circuit, Judge Charles Breyer followed *Rosciszewski v. Arete Assocs., Inc.,* 1 F.3d 225 (4th Cir.1993) to hold that state law claims that are equivalent to federal copyright claims are completely preempted by the Copyright Act. He stated,

Accordingly, if any of the plaintiff's claims are preempted under the Copyright Act, those preempted claims must be viewed as involving federal questions for the purpose of the well-pleaded complaint rule. This Court would then possess subject matter jurisdiction over the entire complaint, thereby requiring the Court to deny the plaintiff's motion to remand. On the other hand, if none of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 6
Not Reported in F.Supp.2d, 2002 WL 1906620 (N.D.Cal.), 2002 Copr.L.Dec. P 28,499
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1906620 (N.D.Cal.))

plaintiff's claims is preempted, the face of the plaintiff's well-pleaded complaint would not arise under federal law and this Court would not have jurisdiction, compelling remand to state court.

*Firoozye,* 153 F.Supp.2d at 1123. A plaintiff's state law cause of action is preempted under the Copyright Act if. "(1) the work involved falls within the general subject matter of the Copyright Act ...; and (2) the rights that the plaintiff asserts under state law are equivalent to those protected by the Act...."*Firoozye,* 153 F.Supp.2d at 1123-24. To determine whether the rights asserted are equivalent to those protected by the Act, Judge Breyer enunciated the following extra-element test:
... a court must analyze the elements of the state-law cause of action to see if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights in the Act. Conversely, if there is an 'extra element' that is required in place of or in addition to the acts of reproduction, performance, distribution, or display in order to constitute a state-law cause of action, and the 'extra element' required by state law changes the nature of the action so that it is qualitatively different from a copyright infringement claim, the state-law claim is not preempted.

**\*6** *Firooyze,* 153 F.Supp.2d at 1125.

Here, Plaintiff alleges state law claims for Receipt of Embezzled Property, Interference with Prospective Economic Advantage and Conversion. None of these are preempted under *Vestron* or even under the complete preemption approach of *Firooyze.*Each claim requires an extra element in place of or in addition to claims under the Copyright Act, which focuses on reproduction of a work. Specifically, the first claim requires the extra element of receipt of embezzled property. The second claim requires the extra element of interference, in this case by allegedly improperly licensing the rights to the videos. The third claim, conversion, involves the extra element of alleged theft of a work as to Boujaklian and of falsifying documents as to Pacific Sun. Indeed, in *Firooyze,* Judge Breyer

noted that a conversion claim that involves tangible property is probably immune from preemption. Because these claims are not preempted, the Court does not have jurisdiction over them.

Plaintiff's remaining "claims" for injunctive relief and an accounting are not really claims, but types of remedies. These remedies are not per se preempted by the Copyright Act and appear to be potential remedies for the remaining state law claims. For example, the conversion claim could well support an injunction requiring returnofstolen property and accounting of profits from its illicit use while stolen. Defendants raise the legitimate question whether one particular aspect of the state court preliminary injunction-the provision enjoining copying-is a remedy preempted by the Copyright Act. That question, however, is more properly addressed to the state court on remand, since this Court has determined that it lacks jurisdiction over the state claims. This Court declines Defendant's request that it edit the state court injunction.

## CONCLUSION

Because Plaintiff cannot maintain a copyright infringement claim at this time and the remaining state law claims are not preempted, the Court lacks jurisdiction. Therefore, this case must be remanded.

The Court is mindful of Pacific Sun's concern about the propriety of the portion of the injunction issued by the state court prohibiting reproduction of the tapes. The issue of the scope of the injunction in light of the amended complaint, however, is more properly directed to the state court.

IT IS SO ORDERED.

N.D.Cal.,2002.
Brush Creek Media, Inc. v. Boujaklian
Not Reported in F.Supp.2d, 2002 WL 1906620 (N.D.Cal.), 2002 Copr.L.Dec. P 28,499

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                    Page 1
Not Reported in F.Supp., 1988 WL 161313 (C.D.Cal.), 1989 Copr.L.Dec. P 26,410
(Cite as: Not Reported in F.Supp., 1988 WL 161313 (C.D.Cal.))

**C**

Cavallo, Ruffalo & Fargnoli v. Torres
C.D.Cal.,1988.

United States District Court, C.D. California.
CAVALLO, RUFFALO & FARGNOLI
v.
Edwin TORRES, Elliot Kastner, and Cinema Seven
Productions Limited.
**Civ. No. 88-04637SVW(EX).**

Dec. 12, 1988.

Order Re: Motion to Transfer and Motion to Dismiss the First, Fourth, and Seventh Causes of Action Contained in the Complaint

WILSON, District Judge:

**\*1** Defendant Edwin Torres ("Torres") moved the Court, pursuant to 28 U.S.C. section 1404(a), to transfer this action to the Southern District of New York. Defendants Elliot Kastner ("Kastner") and Cinema Seven Productions Limited ("Cinema Seven") joined in this motion. Defendants Kastner and Cinema Seven moved the Court to dismiss the First, Fourth, and Seventh Causes of Action contained in Plaintiff Cavallo, Ruffalo & Fargnoli's ("CR & F") Complaint. Defendant Torres joined in the motion to dismiss the First and Fourth Causes of Action.

These motions came before the Court at a hearing on December 5, 1988. After reading and considering the parties' papers and submissions and hearing oral argument, the Court DENIED Defendant's Motion to Transfer. The Court GRANTED Defendant's Motion to Dismiss the First Cause of Action, DENIED Defendant's Motion to Dismiss the Seventh Cause of Action, and took under advisement Defendant's Motion to Dismiss the Fourth Cause of Action. Having further analyzed the parties' arguments, the Court GRANTS Defendant's Motion to Dismiss the Fourth Cause of Action.

Discussion

II. *First Cause of Action*

The Court dismisses Plaintiff's First Cause of Action for copyright infringement because we find that Plaintiff, the holder of an unexercised option in the copyrighted works at issue, *Carlito's Way* and *After Hours* (collectively referred to as the "Properties"), does not have standing under Section 501(b) of the Copyright Act of 1976. Section 501(b) provides that only the "legal or beneficial owner of an exclusive right under a copyright" has standing to sue. 17 U.S.C. section 501(b). Since both parties agree that Plaintiff is not the legal owner of the copyright, the issue is whether Plaintiff can be considered the beneficial owner of the copyright in the Properties.

After reviewing the legislative history of Section 501(b) and analogous case law,[FN2] we conclude that Plaintiff lacks standing to make a copyright infringement claim as the beneficial owner of the copyright. The legislative history surrounding Section 501(b) deals specifically with the situation where a copyright owner assigns the title to his work in exchange for the right to receive royalties from the copyright's exploitation. *See, e.g.,* H.R.Rep. No. 94-1476, 94th Cong., 2d Sess. 159, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5659, 5775 (1976). The assignor in that case becomes a beneficial owner of the copyright "with standing to sue infringers should the assignee fail to do so." *Moran v. London Records, Ltd.,* 642 F.Supp. 1023, 1025 (N.D.Ill.1986).

To demonstrate that option holders should be considered beneficial owners, Plaintiff compares the standing that option holders have in real property condemnation cases to the standing option holders should have in literary property cases, such as in the instant case. Plaintiff principally relies on language in *County of San Diego v. Miller,* 13 Cal.3d

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                        Page 2
Not Reported in F.Supp., 1988 WL 161313 (C.D.Cal.), 1989 Copr.L.Dec. P 26,410
(Cite as: Not Reported in F.Supp., 1988 WL 161313 (C.D.Cal.))

684, 689, 119 Cal.Rptr. 491, 494, 532 P.2d 139 (1975), for the proposition that an option holder of a real property interest has standing to sue for damages when her exclusive option to acquire real property is interfered with by a third party.

*2 This case can be distinguished from the instant case, however, since the government in a condemnation case completely extinguishes an option holder's rights through its eminent domain power. As Defendants observe, if some portion of the compensation for this taking were not awarded to the option holder, then the option holder would be left with no remedy. He could not sue the government because of the government's right to exercise its eminent domain powers, nor could he sue the property owner for breach of contract.

In the present case, Plaintiff CR & F does have alternate remedies other than a copyright infringement suit. Plaintiff has both contractual and tort remedies available to it for Defendants' alleged violations of Plaintiff's contract with Torres. Moreover, policy considerations militate against finding that Plaintiff has Section 501(b) standing. If holders of an unexercised option in a copyrighted work were granted standing, then the Copyright Act and its array of draconian remedies would be available to any person with a right-no matter how remote-to potentially obtain a copyright in the future. As Defendant points out, copyright standing would then have to be conferred on persons who have rights to match a third party's offer before the copyrighted work could be sold to that third party ("right of first refusal") or to be the first to negotiate for the copyrighted work ("right of first negotiation").

Had Congress intended these types of owners of unexercised options and other remote interests to attain standing under Section 501(b), then the House Report or other legislative history would logically be presumed to have indicated such an intent. The fact that Congress has not stated such a desire, but instead limited its description of beneficial owners to those with royalty interests in the copyright, is a

strong indication that Congress did not contemplate including unexercised option holders within the meaning of the term "beneficial owners" in Section 501(b). See, e.g., Hearn v. Meyer, 664 F.Supp. 832, 840-44 (S.D.N.Y.1987). Therefore, we find that Plaintiff, as the holder of an unexercised option in the Properties, does not have standing under Section 501(b) to claim copyright infringement.

[III.] Fourth Cause of Action

The Court finds that Plaintiff's Fourth Cause of Action for unfair competition is preempted under Section 301(a) of the Copyright Act. Section 301(a) provides that a state law is preempted by the Copyright Act if the state law creates rights which are "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" of the Copyright Act and such rights involve subject matter which is copyrightable. 17 U.S.C. section 301(a). The Properties represent subject matter which is copyrightable under Section 102 of the Copyright Act. 17 U.S.C. section 102. The question turns then on whether Plaintiff's unfair competition claim is "equivalent" to its copyright infringement claim.

*3 In its Complaint, Plaintiff's unfair competition claim is predicated on the preparation by Kastner and Cinema Seven of a motion picture (a derivative work) based on Torres's copyrighted novels. These facts are the same facts on which Plaintiff's copyright claim is based. Further, the "extra element test" does not apply to Plaintiff's claim. Under that test, a state law claim that appears equivalent to an exclusive right specified in 17 U.S.C. section 106 will survive preemption if it has an extra element that changes the nature of the action and protects rights qualitatively different from copyright rights. See Del Madera Properties v. Rhodes and Garner, Inc., 820 F.2d 973, 977 (9th Cir.1987).

Here, Plaintiff CR & F alleges no extra element; rather, it asserts that Defendants are misappropriating its right to prepare derivative works of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 3
Not Reported in F.Supp., 1988 WL 161313 (C.D.Cal.), 1989 Copr.L.Dec. P 26,410
**(Cite as: Not Reported in F.Supp., 1988 WL 161313 (C.D.Cal.))**

copyright by producing a motion picture based on *Carlito's Way.* Unfair competition claims based on misappropriation of rights within the scope of copyright involve no extra element and hence are preempted. *Id.* Thus, as pleaded, Plaintiff's unfair competition is preempted.

In its opposition papers and at the hearing, Plaintiff advanced two other theories to support its unfair competition claim. Plaintiff first contends that its unfair competition claim is supported by the Complaint's allegations that Kastner interfered with the contract between Plaintiff and Torres, and that claims based on interference with contract are not preempted. While we agree with Plaintiff that such claims would not be preempted by the Copyright Act, we find that a claim for unfair competition based on interference with contract would be indistinguishable from the Sixth Cause of Action for Intentional Interference with Contractual Relations. Under Rule 12(f) of the Federal Rules of Civil Procedure, the Fourth Cause of Action would have to be stricken as redundant.

Second, Plaintiff alleges that Defendants are "passing off" themselves as having the exclusive right to develop the Properties. Under a "passing off" theory, Plaintiff's unfair competition claim would not be preempted. The facts, however, do not support a "passing off" claim. In fact, Plaintiff's alleged "passing off" theory is but a restatement of its preempted misappropriation theory.

To have a viable "passing off" claim, one must pass off one's goods as those of another. The mere use of substantially similar title, "if not used in such manner as to induce the public to believe that the work to which it is applied is the identical thing which it originally designated, does not constitute unfair competition." *Allied Artists Pictures Corp. v. Friedman,* 68 Cal.App.3d 127, 133 (1977).

Unlike "passing off" misappropriation contemplates a defendant taking another's right and claiming it as his own. Usually this is accomplished by copying all or part of the item and marketing something similar to it. *See Sears, Roebuck & Co. v. Striffel Co.,* 376 U.S. 225 (1964); *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 234 (1964).

**\*4** Although pleaded as a "passing off" claim, Plaintiff's Fourth Cause of Action is more appropriately a misappropriation claim. In essence, Plaintiff is claiming that Defendants Kastner and Cinema Seven have willfully misappropriated all of its rights to Plaintiff's detriment. Plaintiff is not alleging that Kastner and Cinema Seven are passing themselves off to the public as such. Therefore, under the reasoning of the *Sears, Compco* and *Del Madera* courts, Plaintiff's claim is preempted. It fails to assert a right that is not equivalent to any of the exclusive rights within the scope of the federal copyright law.

IV. *Seventh Cause of Action*

The Court rules that Plaintiff's Seventh Cause of Action for negligent interference with contractual relations states a claim upon which relief can be granted. Plaintiff's claim alleges that Kastner and Cinema Seven knew about Plaintiff's agreement with Torres. To the extent that Plaintiff's claim is premised on the duty that Kastner and Cinema Seven had to search the United States Copyright Office for conflicting rights prior to obtaining any rights in the Properties from Torres, that part is stricken.

We find that the law does not recognize such a duty for Kastner and Cinema Seven to search the Copyright Office's records. In *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 804, 157 Cal.Rptr. 407, 598 P.2d 60 (1979), the California Supreme Court used a balancing formula to determine whether a duty of care is owed by a person not in privity with the plaintiff. These factors included: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendants' conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the policy of preventing future harm." *Id.*

Applying the *J'Aire* factors to the facts of this case, we first believe that unless Kastner and Cinema Seven knew about Plaintiff CR & F's option agreement with Torres, then the transaction between Kastner, Cinema Seven and Torres was not intended to affect Plaintiff. Second, only if Kastner and Cinema Seven knew about CR & F's agreement with Torres would CR & F's injuries be foreseeable from Kastner's and Cinema Seven's actions. Third, Plaintiff alleges that its injuries are reasonably certain because it has expended substantial time and money in connection with the development and exploitation of the Properties. Fourth, while the connection between Kastner's and Cinema Seven's failure to search the Copyright Office and Plaintiff's injuries is tenuous, the connection between Kastner and Cinema Seven knowingly advising Torres to breach its agreement with Plaintiff and Plaintiff's injuries is more direct. Fifth, moral blame would attach to Kastner's and Cinema Seven's conduct if they knew about Plaintiff's agreement with Torres; no moral blame exists for a failure to search the Copyright Office since the Copyright Act does not require it. Sixth, public policy recognizes the sanctity of contracts while it does not acknowledge the creation of a duty to search the Copyright Office where Congress has not imposed such duty. Hence, if Kastner and Cinema Seven knew about Plaintiff's agreement with Torres, then imposing liability on them would promote public policy. If their duty is based on a Copyright Office search, then liability is not warranted.

*5 Balancing all six factors, we hold that Kastner and Cinema Seven had no duty to conduct a Copyright Office search. They did have a duty to Plaintiff, however, if they knew about Plaintiff's agreement with Torres.

### Conclusion

For all the foregoing reasons, the Court DENIES Defendant's Motion to Transfer, GRANTS Defend-

ant's Motion to Dismiss the First and Fourth Causes of Action in Plaintiff's Complaint, and DENIES Defendant's Motion to Dismiss the Seventh Cause of Action with the proviso that all language in the Seventh Cause of Action dealing with Kastner's and Cinema Seven's duty to search the Copyright Office's records be stricken.

IT IS SO ORDERED.

> FN2. Both the parties and the Court were unable to find any case law that expressly dealt with whether the holder of an unexercised option on a copyrighted literary work can be considered a beneficial owner of the copyright.

C.D.Cal.,1988.

Cavallo, Ruffalo & Fargnoli v. Torres
Not Reported in F.Supp., 1988 WL 161313 (C.D.Cal.), 1989 Copr.L.Dec. P 26,410

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 39400 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 39400 (N.D.Cal.))

Page 1

**C**
David v. Alphin
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Elena M. DAVID, Plaintiff,
v.
J. Steele ALPHIN, et al., Defendants.
**No. C 06-04763 WHA.**

Jan. 4, 2007.

J. Brian McTigue, McTigue & Porter LLP, Jennifer Hope Strouf, Cornish F. Hitchcock, Gregory Y. Porter, Washington, DC, William Gerard Bertain, Eureka, CA, for Plaintiff.
Matthew David Powers, O'Melveny & Myers LLP, San Francisco, CA, Gary S. Tell, Robert N. Eccles, O'Melveny & Myers LLP, Washington, DC, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE, AND VACATING HEARINGS ON MOTION TO DISMISS AND MOTION TO CERTIFY CLASS

WILLIAM ALSUP, United States District Judge.

#### INTRODUCTION

*1 In this purported class action under ERISA, defendants move to transfer venue under 28 U.S.C. 1404(a) to the Western District of North Carolina. Defendants have shown that the convenience of parties and witnesses, and the interest of justice would clearly and substantially be improved by such a transfer. Defendants' motion to transfer is **GRANTED.**

#### STATEMENT

Plaintiff Elena David retired after working for Bank of America Corporation for 44 years in California. David currently resides in Arcata, California. While working, plaintiff made regular contributions to both Bank of America's pension plan and 401(k) plan. Plaintiff currently collects a monthly benefit from the pension plan, and in mid-2005, elected to receive a lump-sum payment of her 401(k) plan assets.

Defendants are "Bank Of America Corporation, a bank holding company, the Bank Of America Corporation Corporate Benefits Committee and its individual members, and the Bank of America Corporation's Board of Directors and its individual members" (Opp. at 1). Bank of America is headquartered in Charlotte, North Carolina (Dorazil Decl. ¶ 5). According to its website, Bank of America maintains corporate offices in Charlotte, San Francisco, Chicago, and New York City.

Eighteen of 34 individual defendants reside in North Carolina. A single defendant resides in Los Angeles, California. All other defendants reside in other states. Six defendants are current members of the corporate benefits committee; all live in Charlotte, North Carolina (Dorazil Decl. ¶ 9).[FN*] Ten defendants are alleged former members of the corporate compensation committee. Seven of them live in North Carolina. None live in California (Porter Decl. Exh. 5). One defendant, Kenneth D. Lewis, is named in both his capacity as a former committee member and a current board member. The remaining defendants are board members. Six of them, including Lewis, live in North Carolina (Porter Decl. Exh. 6). One lives in California (ibid.). All others live in other states (ibid.).

> FN* Defendants also present the declaration of Allison Gilliam, Bank of America's assistant secretary. She declares that the corporate benefits committee currently has four members, three of whom live in North Carolina and one of whom has an address of record in Rhode Island (Gilliam Decl. ¶¶ 5,7). These people are not identified in her declaration.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 2
Not Reported in F.Supp.2d, 2007 WL 39400 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 39400 (N.D.Cal.))

At oral argument, parties mentioned that plaintiff was planning to dismiss all of the individual defendants who were members of the board of directors and three individual defendants who were improperly named as former members of the corporate benefits committee. If this happens, there will be thirteen individual defendants, ten of whom live in North Carolina, and none of whom live in California.

Prior to January 1, 2005, the full board of directors appointed members of the corporate benefits committee (Gilliam Decl. ¶ 8). Since then, the board of directors' compensation committee appoints corporate benefits committee members (*id.* at ¶ 5). The corporate benefits committee was listed as the administrator of both the pension plan and the 401(k) plan (Dorazil Decl. at ¶ 7). The corporate benefits committee controlled both plans and made decisions regarding the selection of investments, retention of service providers, trusteeship, and recordkeeping (*id.* at ¶ 8). The committee normally met quarterly in Charlotte, North Carolina, and only two committee meetings relevant to this lawsuit took place outside of Charlotte (*ibid.*).

*2 The committee retained Callan Associates, Inc. for advice on investment management issues (*id.* at ¶ 11). Callan's website reveals that it has its corporate office in San Francisco and an office in Denver. http:// www.callan.com/about/offices.asp. Paul Erlendson, who resides in Denver, Colorado, was the committee's primary contact at Callan, and also attended some of the meetings (*ibid.*). Documents and records related to the plans are located in Charlotte (*id.* at ¶ 12). Service providers for the plans, such as record keeping, preparation of forms, and trustee services, are located elsewhere outside the Northern District of California (*id.* at ¶ 13).

David filed her complaint in this district on August 7, 2006, alleging violations of ERISA. On October 16, 2006, plaintiff filed an amended complaint which alleged her complaint as a class action on behalf of all members of Bank of America's pension plan and 401(k) plan. In sum, plaintiff alleged that defendants breached their fiduciary obligations by causing the pension plan and the 401(k) plan to invest in mutual funds affiliated with Bank of America rather than unaffiliated investments that would have been better for the participants. These funds charged higher fees than unaffiliated funds. Plaintiff's motion to certify the class was filed on December 14, 2006, and it is currently pending. So too is defendants' motion to dismiss. These motions are scheduled to be heard on January 18, 2007.

## ANALYSIS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."28 U.S.C. 1404(a). This section's purpose is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."*Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (internal citation omitted). A district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."*Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citation omitted). The district court must consider both public factors which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986).

Venue for an action under ERISA is appropriate in any judicial district where: (1) the plan is administered; (2) the breach took place; or (3) a defendant resides or may be found. 29 U.S.C. 1132(e)(2). Neither party disputes that this action could have been brought in the Western District of North Carolina. The pension plan and the 401(k) plan were administered in Charlotte, North Carolina. Bank of America has its headquarters there as well, and many of the individual defendants reside there, thus

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2007 WL 39400 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 39400 (N.D.Cal.))

this action could have been brought in the Western District of North Carolina.

## 1. CONVENIENCE AND FAIRNESS FACTORS.

*3 The district court must consider private convenience and fairness factors, including ease of access to sources of proof, plaintiff's choice of forum, relative convenience to parties, and relative convenience to witnesses.*Decker Coal,* 805 F.2d at 843.

The first factor largely involves the location of relevant sources of proof. With technological advances in document storage and retrieval, transporting documents does not generally create a burden. *Vitria Tech. Inc. v. Cincinnati Ins. Co.,* 2005 WL 2431192, *3 (N.D.Cal.2005). Defendants argue that most of the evidence related to plaintiff's claims, specifically documents related to administration of the plans, is located in Charlotte, North Carolina. Defendants do not contend that transporting documents would cause them hardship, so this factor does not favor transfer.

A plaintiff's choice of forum is accorded great deference in ERISA cases.*Jacobson v. Hughes Aircraft Co.,* 105 F.3d 1288, 1302 (9th Cir.1997). Despite this, it has been said that "[p]laintiffs' choice of forum is entitled to less deference where, as here, the action is brought on behalf of a nationwide class."*Italian Colors Rest. v. Am. Express Co.,* 2003 U.S. Dist. LEXIS 20338, *10 (N.D.Cal.2003). No decision in the Ninth Circuit has squarely addressed the interplay between the degree of deference given to plaintiff's chosen forum in ERISA cases and the lesser degree of deference given in class actions. Venue transfers in ERISA cases, however, do occur. In *Jacobson,* the Ninth Circuit held that transferring venue from plaintiff's chosen forum was not an abuse of discretion because other factors favored transfer. *See Jacobson,* 105 F.3d at 1302. Here, defendants argue that David's choice of forum should not be given deference because as a class action, this lawsuit now includes thousands of plaintiffs spread across the country. This argument ignores the fact that the class has not yet been certified. If it is certified and David is appointed class representative, she would still bear a great deal of responsibility. Also, these thousands of other class members would not need to appear in this action unless they choose to intervene. Intervention would be a real possibility, but it has not occurred yet (and the residency of any intervenors is speculative at this stage). Accordingly, plaintiff's choice of forum remains entitled to deference and weighs against transfer.

As to convenience to the parties, defendants point out that Bank of America has its headquarters in Charlotte, North Carolina. Currently, 18 of 34 individual defendants reside in North Carolina. If the defendants on the board of directors are dismissed, ten of the 13 remaining defendants live in North Carolina. A single defendant resides in California. Plaintiff agrees that the Western District of North Carolina would be the most convenient forum for defendants, but argues that Bank of America is a large company and can easily afford to pay for its employees' travel expenses. David contends that she is a long-time resident of California, and that she would suffer hardship from increased travel time if the case were transferred. Defendants respond, arguing that because David does not have personal knowledge of the facts of the case, she need not travel. Plaintiff still, however, is still likely to testify at trial on her own behalf and has an interest in attending the full trial and important hearings. Defendants also argue that they will suffer considerable inconvenience because of lost time and disrupted work schedules from traveling to San Francisco for trial. On balance, this factor favors transfer because of the large number of defendants in the transferee district. Plaintiff chose to include the many North Carolina-based individuals named as defendants. Plaintiff has no one but herself to blame for having set up a major argument in favor of transfer.

*4 Finally, convenience to potential witnesses must

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 39400 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 39400 (N.D.Cal.))

be considered. Courts must consider the effect of transfer on the availability of witnesses to testify at trial, particularly for third-party witnesses. *DeFazio v. Hollister Employee Ownership Trust,* 406 F.Supp.2d 1085, 1090 (E.D.Cal.2005). Although discovery is still at a relatively early stage, parties agree that at least some current and former members of the corporate benefits committee will be called as witnesses. Defendants on the board of directors are likely to be dismissed, and so will probably not be called as witnesses. Of 13 committee-member defendants, ten reside in North Carolina. These defendants can be expected to testify in their own defense, but plaintiff has no right to make them testify at trial if they cannot be subpoenaed. Plaintiff may still present deposition testimony, but it will aid plaintiff herself to be able to call these people as live witnesses. It will aid the fact finder also to hear these witnesses' live testimony. By transferring this action to North Carolina, the Court has the additional option of having these individuals called to give live testimony.

Third-party witnesses will likely include former Bank of America employees. None of them is subject to this court's subpoena power as they are largely located in the Western District of North Carolina. Bank of America could likely arrange for at least some of them to appear, but could only be counted on to do so if their testimony were beneficial to defendants.

Defendants argue that the most important third-party witness will be Paul Erlendson, Bank of America's contact person at Callan Associates. Erlendson resides in Denver, Colorado, which is beyond the subpoena power of both this district and the proposed transferee district. If unwilling to testify, he cannot be compelled to appear in either forum. If willing to testify, he would suffer equal inconvenience traveling to either forum. Plaintiff identifies a single potential third-party witness living and having an office in the Northern District of California: Warren Brown, an advisor at Callan Associates. Defendants contend, however, that Brown's testi-

mony is likely to be less important than Erlendson's because Brown only provided analytical support to Erlendson, the main advisor. Defendants' argument still does not defeat the fact that Brown can be compelled to testify here but not in the transferee district. The location of these third-party witnesses slightly disfavors transfer.

On balance, the large number of witnesses and parties located in North Carolina favors transfer. As mentioned above, plaintiff does identify one third-party witness residing in San Francisco, but ten of 13 current and former members of the corporate benefits committee reside in North Carolina. In summary, despite the deference that should be given to plaintiff's chosen forum, the convenience factors favor transfer.

### 2. INTEREST OF JUSTICE.

**\*5** A district court hearing a motion to transfer must also consider public-interest factors such as relative degrees of court congestion, local interest in deciding local controversies, potential conflicts of laws, and burdening citizens of an unrelated forum with jury duty. *Decker Coal,* 805 F.2d at 843. The last two factors are inapposite here. This is an ERISA action which will be decided exclusively under federal law regardless of where it is heard. Parties have agreed that this case is to be a bench trial, so burdening citizens of an unrelated forum with jury duty is not a concern.

Defendants point out that dockets are more congested here on the Northern District of California than on the Western District of North Carolina. The average judge on the Northern District of California has 468 pending cases, while the average judge on the Western District of North Carolina has 350 pending cases. *See* http://www.uscourts.gov/cgi-bin/cmsd2005.pl.
Plaintiff responds, arguing that average time to trial in the two districts is similar, and that a trial date has already been set for April 7, 2008. The median time for trial in 2005 was 28 months for the North-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 5
Not Reported in F.Supp.2d, 2007 WL 39400 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2007 WL 39400 (N.D.Cal.))**

ern District of California and 27 months for the Western District of North Carolina (Porter Decl. Exh. 7). A difference of one month to trial does not significantly favor either side.

Plaintiff argues that local interests disfavor transfer. Plaintiff herself worked for Bank of America in this district and plaintiff brings up "deep, historic ties" Bank of America has to this area because the company was formerly headquartered in San Francisco (Opp. at 1). Plaintiff also argues that "thousands of participants in the Plans [sic] who live in this district have suffered as a result of defendants' alleged fiduciary breaches" (*id.* at 11). This is really a makeweight since it is unlikely that any of these unnamed plan participants would ever travel to the courthouse in either location. Since David seeks to bring a class action, moreover, it is possible that there are many thousands of participants in other districts with significant interests as well. In response, defendants argue that the alleged "breach" occurred in the Western District of North Carolina, so local interest is stronger there. This is too metaphysical to count. If the wrong occurred there, its effects were felt here, or so it is alleged. These factors are inconsequential.

At bottom, this order places considerable weight on the fact that so many trial witnesses are in North Carolina. In modern times, of course, the vast majority of cases settle and no trial ever occurs. Inconvenience to the trial witnesses never materializes. Perhaps that would be the case here. We can only speculate at this stage. As things now stand, however, a trial has been demanded and we must allow for its possibility and attendant inconvenience. Were it practical to temporize and to transfer shortly before trial (if no settlement occurred), then the Court would do so. But it is not practical to do so, for the district judge who tries the case should preside also over the important pretrial motions like class certification and summary judgment. On the present record, plaintiff has sued 18 individuals, all of whom live in North Carolina. The deference due her choice of forum is important but it cannot out-

weigh the convenience factor associated with so many individuals.

**\*6** In summary, all of the decisions that affected the pension plan and the 401(k) plan were made by Bank of America employees in Charlotte, North Carolina. The vast number of individual defendants and third-party witnesses in North Carolina militate strongly in favor of transfer. Defendants have met their burden of showing that this action should proceed in the Western District of North Carolina.

### CONCLUSION

For all the above-stated reasons, defendants' motion to transfer venue to the United States District Court for the Western District of North Carolina is **GRANTED.**The clerk shall transfer the entire action to that district court. The hearings on plaintiff's motion for class certification and defendants' motion to dismiss scheduled for January 18, 2007 at 8:00 a.m. are hereby **VACATED.**These motions will need to be refiled once the case arrives in the Western District of North Carolina.

**IT IS SO ORDERED.**

N.D.Cal.,2007.
David v. Alphin
Not Reported in F.Supp.2d, 2007 WL 39400 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 2623903 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2623903 (N.D.Cal.))

**C**

Dudash v. Varnell Struck & Associates, Inc.
N.D.Cal.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
David A. DUDASH Plaintiff,
v.
VARNELL STRUCK & ASSOCIATES, INC., Defendant.
**No. C 04-2748 MHP.**

Nov. 16, 2004.

Daniel H. Qualls, Robin G. Workman, Qualls & Workman, L.L.P., San Francisco, CA, for Plaintiff.
Felicia R. Reid, Curiale Dellaverson Hirschfeld, Et Al., San Francisco, CA, for Defendant.

*MEMORANDUM & ORDER*

PATEL, J.

*1 David A. Dudash, an employee of defendant Varnell Struck and Associates, has brought the present class action to challenge the terms and conditions of his employment. Plaintiff alleges that defendant's classification of Dudash and other similar employees as exempt from the Fair Labor Standards Act ("FLSA") violated his right to overtime wages and other workplace protections. In addition, he brings four pendent causes of action under the California Labor Code and Business and Professions Code alleging failure to pay overtime wages, failure to provide rest and meal breaks, and unlawful, unfair, and fraudulent business practices. Now before the court is defendant's motion to dismiss plaintiff's complaint based on improper venue, as well as a motion to strike plaintiff's prayer for punitive damages. After considering the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.

*BACKGROUND*[FN1]

FN1. All facts herein have been taken from

the plaintiff's Complaint, unless otherwise noted.

Plaintiff has worked as an "area service representative" for defendant Varnell Struck and Association ("Varnell") since February 15, 2002. Varnell supplies stock clerks to retail chain stores throughout the country, including Lowe's Home Improvement Stores ("Lowe's"). Scherr Dec. at 2. The company's principal place of business is in Duluth, Georgia, and it is incorporated in Delaware.*Id.* at 1. Plaintiff and other area service representatives are assigned to a regional sales route of Lowe's stores where their duties include stocking, pricing, labeling, and shelving merchandise pursuant to "planograms" and other instructions provided by managers at Lowe's and Varnell. Dudash Dec. ¶¶ 3-5. Such positions are salaried, with no entitlement to overtime pay, as defendant classifies them as "exempt" under the FLSA. Plaintiff's sales route has changed once, but throughout his employment it has run through Los Angeles and Orange Counties, California. Kilburn Dec. ¶¶ 5-11.

Plaintiff filed the present action on July 8, 2004, alleging that his employment with Varnell violates the FLSA, the California Labor Code, and the California Business and Professions Code. Now before the court is defendant's motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or in the alternative, transfer pursuant to 28 U.S.C. § 1406(a). In addition, defendant has moved to strike plaintiff's prayer for punitive damages. Defendant also moved to strike plaintiff's fifth cause of action on the basis of failure to exhaust statutory remedies; however, plaintiff subsequently completed such measures and defendant concedes that his motion to strike on that point is now moot.

*LEGAL STANDARD*

*A. Venue*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                 Page 2
Not Reported in F.Supp.2d, 2004 WL 2623903 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2623903 (N.D.Cal.))**

In an action not founded solely on diversity, venue is proper in the district in which (1) any defendant resides, if all of the defendants reside in the same state, (2) the district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

**\*2** When venue is improper, the district court must either dismiss the case or transfer it "in the interests of justice" to an appropriate jurisdiction. *See* Fed. R. Civ. Pro. 12(b)(3); 28 U.S.C. § 1406(a). Even where venue is proper, the court may transfer any civil action to another jurisdiction where it may have been brought "for the convenience of parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a). In a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), the court may consider facts outside the pleadings, and the pleadings need not be accepted as true. *See* Murphy v. Schnieder National, Inc., 362 F.3d 1133, 1137 (9th Cir.2004).

## DISCUSSION

Defendant has moved to dismiss, or in the alternative, to transfer plaintiff's action on the basis of improper venue and strike plaintiff's prayer for punitive damages.

### I. Motion to Dismiss Based on Improper Venue

Venue relates to the convenience of the litigants, rather than the power of the court. *See* Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168, 60 S.Ct. 153, 84 L.Ed. 167 (1939). Plaintiff has brought the present action on his own behalf, as well as on behalf of a putative class of Varnell area service representatives. Contrary to defendant's unsupported assertion, [FN2] the burden to prove venue is generally and properly placed on defendant, as the doctrine protects defendant's privilege to avoid

litigation in inconvenient forums. *See, e.g., Myers v. American Dental Ass'n,* 695 F.2d 716, 724 (3d Cir.1982). *See also* 17 Moore's Federal Practice-Civil § 110.01 (noting that "[o]nce the defendant timely objects to venue, courts of appeals generally, and correctly, treat the venue question as an affirmative defense. Therefore, the defendant has the burden of establishing that venue is improper.") While the rule is unclear in the Ninth Circuit, there is no doubt that even if the burden to show proper venue is construed to belong to plaintiff, he may use "declaration[s], affidavit[s], oral testimony, or 'other evidence,' " and he may argue facts beyond the pleadings. *See Ziegler Chemical and Mineral Corp. v. Standard Oil Company,* 32 F.R.D. 241, 243 (N.D.Cal.1962), *disapproved on other grounds* Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491 (9th Cir.1979).

> FN2. For the proposition that plaintiff bears the burden to show proper venue in reliance on admissible evidence, defendant cites to a case in which the Ninth Circuit held that admissible evidence is required on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(e). *See* Def.'s Reply at 3 (citing *Beyene v. Coleman Security Services, Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988)).

In his complaint, plaintiff alleges proper venue on the basis that "the events described herein occurred in this judicial district," apparently a claim for venue under 28 U.S.C. § 1391(b)(2). However, plaintiff's complaint describes a series of events in the Central District of California, the site of plaintiff's employment relationship, sales route, and job responsibilities with Varnell. The facts allege a failure to provide overtime pay, off-duty rest and meal breaks, and accurate wage statements. Plaintiff does not dispute that his sales route for Lowe's Stores was entirely within Los Angeles and Orange Counties, nor does he argue in his opposition to the present motion that substantial events relevant to his action occurred in the Northern Dis-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2004 WL 2623903 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2623903 (N.D.Cal.))

trict. Clearly, under a 28 U.S.C. § 1391(b)(2) ana-
lysis, they did not. Dudash's description of one or
more brief episodes of employment in this district
over a two year period, as well as conference calls
with Varnell employees in this district, do not con-
stitute a "substantial part of the events or omissions
giving rise to the claim."*See* Dudash Dec. ¶¶ 6-7.

**\*3** Plaintiff argues that his claim nevertheless es-
tablishes venue under 28 U.S.C. § 1391(b)(1), "a
district in which any defendant resides."For pur-
poses of a venue analysis when the defendant is a
corporation, residence is determined in terms of the
court's personal jurisdiction over the defendant at
the time the action commenced. 28 U.S.C. §
1391(c). The Ninth Circuit has consistently found
that California's jurisdiction statute is coextensive
with federal due process requirements; therefore,
jurisdictional inquiries under state law and federal
due process standards merge into one analysis.
*Seee.g.,Roth v. Garcia Marquez,* 942 F.2d 617, 621
(9th Cir.1991). Personal jurisdiction of non-resident
corporations is determined according to a
"minimum contacts" analysis which ensures that
the exercise of jurisdiction "does not offend tradi-
tional notions of fair play and substantial
justice."*International Shoe Co. v. Washington,* 326
U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95
(1945)."[I]t is essential in each case that there be
some act by which the defendant purposefully
avails itself of the privilege of conducting activities
within the forum State, thus invoking the benefits
and protections of its laws."*Hanson v. Denckla,* 357
U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283
(1958). The Ninth Circuit has identified two means
for satisfying this constitutional test: (1) a demon-
stration of "substantial" or "continuous and system-
atic" contacts with the forum state, even where the
cause of action is unrelated to the defendant's activ-
ities in the forum, or (2) "a strong relationship
between the quality of the defendant's forum activ-
ities and the cause of action."*Decker Coal Co. v.
Commonwealth Edison Company,* 805 F.2d 834,
839 (9th Cir.1986).

Plaintiff argues that assertion of personal jurisdic-
tion over defendant would be proper based on Var-
nell's "substantial, continuous, and systematic con-
tacts with the Northern District of California."Pl.'s
Opp'n at 8. He argues that Varnell supplies area ser-
vice representatives for four Lowe's stores within
the district. *Id.* Defendant concedes the existence of
these stores, as well as a fifth store opening soon,
and acknowledges the presence of four to nine Var-
nell area service representatives operating in this
district over the course of the relevant period. *See*
Nelson Dec.¶¶ 4-5; Kilburn Dec.¶¶ 5-6; Scherr
Dec.¶¶ 7-8; Lyons Dec. ¶ 9. The placement of fixed
employees and sales routes within this district con-
stitute continuous and systematic contacts, availing
Varnell of the privileges and protections of busi-
ness in this district and making a lawsuit relating to
Varnell's California employment base foreseeable.
*SeeBurger King v. Rudzewicz,* 471 U.S. 462,
472-76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In
addition, plaintiff's lawsuit, particularly as a putat-
ive class action, is directly related to the nature of
defendant's contacts, namely defendant's retention
of employees in this district. Plaintiff is therefore
correct that venue in this court is proper under 28
U.S.C. § 1391(b)(1).

**\*4** Defendant argues, without legal authority, that
plaintiff's failure to plead venue on the basis of 28
U.S.C. § 1391(b)(1) is grounds for dismissal. The
rules of pleading do not require a plaintiff to allege
venue, though it is good practice to do so. *See*Fed.
R. Civ. Pro 8(a); 2 Moore's Fed. Practice Civ. §
8.03[1] (2004) (stating that while the federal rules
require a claimant to plead a basis for subject mat-
ter jurisdiction, they do not require allegations of
venue, which can be conferred by waiver or con-
sent). Though plaintiff incorrectly asserted venue in
this district on the basis of events, he also alleges
that Varnell was a "corporation doing business in
the State of California and within this judicial dis-
trict"-an allegation supported by the facts pled and
argued in this case by both parties. It is well settled
that this court may consider facts outside of the
pleadings in conducting an analysis of improper

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2623903 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2623903 (N.D.Cal.))

Page 4

venue under Fed. R. Civ. Pro. 12(b)(3).*See Murphy v. Schnieder National, Inc.,* 362 F.3d 1133, 1137 (9th Cir.2004). Therefore, plaintiff's mistaken characterization of the basis for venue in this district is not grounds for dismissal or transfer based on improper venue.

*B.Transfer*

Apparently realizing the risk of a finding of proper venue here, defendant argued in its reply that this court should transfer the present action to the Central District of California pursuant to 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interests of justice."*See Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Despite defendant's failure to move for transfer pursuant to this provision, the court can order such a transfer sua sponte here. *See Muldoon v. Tropitone Furniture Co.,* 1 F.3d 964 (9th Cir.1993) (describing sua sponte transfer pursuant to section 1404(a)). In order to upset a plaintiff's choice of forum, a defendant must make a "strong showing of inconvenience." *See Decker Coal Co. v. Commonwealth Edison Co. .,* 805 F.2d 834, 843 (9th Cir.1986). Analysis of suitability for transfer involves private factors, such as the ease of access to proof, availability of compulsory process for unwilling witnesses, costs, and other practical considerations for an efficient and expeditious trial. *Id.* In addition, it considers public factors such as the local public and jury pool's interest in localized controversies. *Id.*

Defendant has made an unusually strong showing of inconvenience to the parties and witnesses involved in this case. Plaintiff does not allege or argue that he resides in this district, nor that his employment was located here, and defendants have offered evidence that his residence has been, and continues to be, in the Central District. *See* Coto Dec., Exhs. A-C. The vast majority of liability and damages witnesses to this dispute are not located in this district. Numerous key witnesses to plaintiff's work schedule, meal and rest breaks, job duties, and level of responsibility will be Lowe's employees along plaintiff's Southern California sales route. Barry Kilburn, a Varnell witness who will provide testimony regarding plaintiff's job description, income, and other employment conditions, is outside California entirely. *See* Def.'s Mot. at 3.

**\*5** In fact, this court is at a loss to identify parties, witnesses, or items of evidence pertinent to Dudash's claims which would be more conveniently accessed in this district. Dudash's description of one or more brief episodes of employment in this district over a two year period, as well as conference calls with Varnell employees located in Northern California, does not suggest a critical mass of witnesses or parties to this dispute that will be more conveniently accessed locally. *See* Dudash Dec. ¶¶ 6-7. The additional fact that members of plaintiff's putative class are in the Northern District is also insufficient to weigh against transfer, as here again, the majority of these class members within California are assigned to sales routes in Southern California. *See* Nelson Dec. ¶ 7 (stating that there are 33 Lowe's Stores in Central District, compared to five in the Northern District).*See also* Kilburn Dec.¶¶ 5-6; Scherr Dec.¶¶ 7-8; Lyons Dec. ¶ 9 (stating the comparative numbers of Varnell area service representatives staffed along Southern California compared to Northern California sales routes).

As for the public factors relevant to a section 1404(a) transfer, it is true that the local public and members of the jury pool in this district have an interest in guarding against labor violations against Varnell's local employees. However, their interest pales in comparison to that of the Central District, where the class representative and the majority of other class members allege labor violations. *Id.* A plaintiff is not obliged to file his action in the most convenient forum as long as the forum is proper, but he cannot maintain his action in the least convenient forum when faced with a motion to transfer. Thus, while this court must apply deference to plaintiff's choice of forum, the present action presents a classic case to invoke the anti-forum

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2623903 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2623903 (N.D.Cal.))

shopping objectives of section 1404(a).

The court thus orders this matter transferred "for the convenience of parties and witnesses, in the interests of justice" to the Central District of California. Subsequent to submission and briefings of the present motion, plaintiff stipulated to such a transfer.[FN3]

> FN3. The court reminds plaintiff that such stipulations are more conveniently entered prior to submission of an opposition and reply brief and prior to the day of oral arguments on such a motion.

II. *Defendant's Motion to Strike Plaintiff's Claims for Exemplary or Punitive Damages*

Given the above holding to transfer this case, the court declines to consider defendant's arguments for striking plaintiff's prayer for exemplary and punitive damages. The transferee district will be a more appropriate setting to consider that issue.

*CONCLUSION*

For the convenience of the parties and witnesses and in the interest of justice, the court hereby TRANSFERS this action to the Central District of California pursuant to 28 U.S.C. § 1404(a). The Clerk of the Court is directed to transfer this matter forthwith.

IT IS SO ORDERED.

N.D.Cal.,2004.
Dudash v. Varnell Struck & Associates, Inc.
Not Reported in F.Supp.2d, 2004 WL 2623903 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                          Page 1
Slip Copy, 2007 WL 4532214 (N.D.Cal.)
(Cite as: 2007 WL 4532214 (N.D.Cal.))

C

Jonathan Browning, Inc. v. Venetian Casino Resort, LLC
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
JONATHAN BROWNING, INC., Plaintiff,
v.
VENETIAN CASINO RESORT, LLC; Las Vegas Sands, LLC; Las Vegas Sands Corporation; and Does 1-100, Defendants.
No. C 07-3983 JSW.

Dec. 19, 2007.

Gregory Lawrence Doll, Hunter Randolph Eley, Doll & Amir LLP, Los Angeles, CA, Mazen Mohammed Basrawi, Thomas S. Hixson, Trenton Herbert Norris, Erica Brand Portnoy, Bingham McCutchen, LLP, San Francisco, CA, for Plaintiff.
Ray L. Wong, Hancock Rothert & Bunshoft LLP, San Francisco, CA, Michelle A. Hon, Duane Morris LLP, San Diego, CA, for Defendant.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

JEFFREY S. WHITE, District Judge.
*1 Now before the Court are motions to dismiss filed by Defendant Venetian Casino Resort, LLC (the "Venetian"), Las Vegas Sands LLC, and Las Vegas Sands Corporation. Having considered the parties' pleadings, relevant legal authority, and the record in this case, the Court DENIES IN PART and GRANTS IN PART the Defendants' motion to dismiss.

## BACKGROUND

Jonathan Browning, Inc. ("Browning") is a California corporation with its principal place of business in San Francisco. (Compl.¶ 5.) Browning designs, produces, and sells high-end decorative interior lighting fixtures, known as sconces, through exclusive showrooms throughout the United States. (Id.) The Venetian owns hospitality properties worldwide. The Venetian Casino Resort and the Las Vegas Sands are limited liability companies. The Las Vegas Sands Corporation is a Nevada corporation. All three defendants have their principal places of business in Nevada. (Id. ¶¶ 6-8.)

This action arises from the Venetian's alleged unauthorized reproduction and display of thousands of Browning's sconces in its Las Vegas Casino Resort. According to the complaint, around April 20, 2006, the Venetian's Los Angeles-based interior designer, KNA Interior Design, purchased ten of Browning's sconces from the Los Angeles showroom David Sutherland Inc. (Id. ¶ 18.)Ms. Pauco, a KNA Interior Design employee, contacted Browning at its San Francisco office and requested a bid for over 11,000 sconces for use in the Venetian resort renovation project. (Id.) On or about September 7, 2006, Browning submitted a bid to the Venetian offering to provide 11,368 sconces. (Id. ¶ 21.)Browning was able to offer a competitive price because it had discovered a Chinese manufacturing company, Diamond Life Lighting Manufacturing (H.K.) Ltd. ("Diamond Life"), which could meet Browning's standards for high quality and price goals. (Id. ¶ 20.)Shortly thereafter, the Venetian rejected Browning's bid as being "out of the ballpark" and discontinued negotiations with Browning. (Id. ¶ 22.)Browning asked the Venetian and KNA Interior Design what light fixtures were chosen over Browning's work. (Id. ¶ 23.)Those requests for information were denied. (Id.)

On or about May 21, 2007, Mr. Browning, co-owner of Jonathan Browning, Inc., received a telephone call from a designer at a San Francisco-based interior firm, who at the time was a guest at the Venetian Casino Resort in Las Vegas.(Id. ¶ 24.)The designer called to congratulate Mr. Browning on having his sconces installed at the Venetian property. (Id.) Approximately ten days later, Mr.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Browning visited the same Venetian Resort in Las Vegas. (*Id.* ¶ 25.)He was astonished to find nearly identical, unauthorized copies of his sconces on the walls of the Venetian's renovated rooms and corridors. (*Id.* ¶ 26.)Browning alleges that the Venetian used deceptive and unfair practices to identify and enter into a contract with Diamond Life to produce more than thirteen thousand nearly identical copies of the sconces without Browning's knowledge or permission. (*Id.* ¶ 32.)Because various Venetian properties are either undergoing construction or renovation, Browning believes that the Venetian plans to reproduce and display additional infringing copies of his works in those properties. (*Id.* ¶ 37.)Browning asserts that the Venetian's actions have violated the Copyright Act as well as various state laws. (*Id.* ¶ 17.)

*2 Now before the Court is the Venetian's motion to dismiss Browning's complaint in its entirety under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, Federal Rule of Civil Procedure 12(b)(3) for improper venue or alternatively to transfer venue under 28 U.S.C. § 1406(a) or § 1404(a). The Venetian also moves to strike the declarations of Marco Heithaus and Thomas S. Hixson. The Venetian also moves to dismiss count ten for implied contract, counts nine and eleven for implied in law and quasi-contract/unjust enrichment, and counts six and seven for unfair competition under California Business and Professions Code § 17200 arguing both that the state law claims independently fail to state a cause of action and because they are preempted by copyright law. Finally, the Venetian moves to dismiss all claims against the Las Vegas Sands LLC and the Las Vegas Sands Corporation for failure to state a claim against them.

### ANALYSIS

**A. The Northern District Has Subject Matter Jurisdiction Over Browning's Claims.**

The Venetian asserts that Browning has failed to satisfy the jurisdictional prerequisites necessary to initiate a copyright infringement action. When a defendant moves to dismiss a complaint for lack of subject matter jurisdiction, the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim. *Thornhill Publ'n Co. v. General Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir.1979). The Copyright Act states in relevant part that:

> [W]here the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form, and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights ... [T]he Register's failure to become a party shall not deprive the court of jurisdiction to determine the issue.

17 U.S.C. § 411(a)."Registration is not a prerequisite to a valid copyright, although it is a prerequisite to a suit."*S.O.S., Inc. v. Payday Inc.,* 886 F.2d 1081, 1085 (9th Cir.1989) (citing 17 U.S.C. §§ 408(a), 411). Because the Copyright Act is silent regarding the pleading requirements for registration compliance, allegations of copyright infringement "must satisfy only the minimal notice-pleading requirements of Federal Rule of Civil Procedure 8."*Arista Records LLC v. Greubel,* 453 F.Supp.2d 961, 964 (N.D.Tex.2006); *see also Stewart v. Wachowski,* 2004 WL 2980783, *5 n. 32 (C.D.Cal.2004) ("[A]llegations of copyright infringement are governed by Rule 8(a) rather than Rule 9(b)."). Browning alleges that it satisfied the statutory preconditions to sue under 17 U.S.C. § 411(a). Browning applied for and was refused a copyright for its designs. Marco Heithaus, co-owner of Jonathan Browning, Inc., provided a declaration indicating that Browning took action to register its designs and that a rejection letter was received. The Venetian submitted evidentiary objections to Mr. Heithius' declaration based on lack of personal knowledge, hearsay, relevancy, and the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4532214 (N.D.Cal.)
(Cite as: 2007 WL 4532214 (N.D.Cal.))

Page 3

best evidence rule. Mr. Heithius made a sworn declaration, based on his personal knowledge, that Browning complied with the registration requirement. The declaration is offered to prove that the application, deposit, and fee were delivered to the Copyright Office and is not offered to prove the contents of the items delivered. The Court finds that Mr. Heithaus has the requisite personal knowledge and familiarity with his organization's records to make such a declaration. The Court overrules the Venetian's evidentiary objections and DENIES the motion to strike. Accordingly, the Court finds that Browning has adequately alleged that it complied with the pre-registration requirements under 17 U.S.C. § 411(a). The Court has subject matter jurisdiction over Browning's copyright infringement claim.

## B. The Court Has Personal Jurisdiction Over the Venetian.

**\*3** The Venetian asserts that this Court does not have personal jurisdiction over it. "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process."*3D Systems, Inc. v. Aarotech Laboratories, Inc.,* 160 F.3d 1373, 1376-77 (1998); *cf., Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800-01 (9th Cir.2004). Because California's long-arm statute "is co-extensive with federal due process requirements, the jurisdictional analysis" under California law and federal due process is the same. *Schwarzenegger,* 374 F.3d at 801;*3D Systems,* 160 F.3d at 1377. Due process requires that a defendant have "minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice."*Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 839 (9th Cir.1986) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Minimum contacts encompasses two types of jurisdiction: general and specific.

## 1. This Court does not have general jurisdiction over the Venetian.

The Venetian asserts that this District does not have general jurisdiction over it. If the defendant has "substantial" or "continuous or systematic" contacts with the forum state, the defendant is subject to general jurisdiction. *Id.* (quoting *Data Disc, Inc. v. Systems Technology Associates,* 557 F.2d 1280, 1287 (9th Cir.1977)). The standard for general jurisdiction is high and requires that the contacts in the forum "approximate physical presence." *Tuazon v. R.J. Reynolds Tobacco Co.,* 42 F.3d 1163, 1169 (9th Cir.2006). Browning argues that the Venetian's advertising and marketing scheme in California, the Venetian's website, and the large percentage of Californian customers are sufficient contacts to establish general jurisdiction over the Venetian. (Compl.¶ 6.) These contacts do not approximate physical presence in this district and do not meet the high standard of general jurisdiction. *See Cubbage v. Merchant,* 744 F.2d 665, 667-68 (9th Cir.1984) (finding no general jurisdiction over out-of-state doctors where 26% of their patients were California residents, they were reimbursed through the State of California medical insurance program, and they advertised in the California yellow pages); *see also Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1242-43 (9th Cir.1984) (a foreign corporation's sales and marketing efforts, order solicitation through trade shows and the mail, and attending trade shows and meetings in the state were insufficient contacts to establish general jurisdiction). Meanwhile, there is no dispute that the Venetian's principal place of business is Nevada. (Br. at 5.) The Venetian maintains that it does not own any property, has no bank accounts, pays no taxes, has no offices, employees or agents and has no registered agent for service of process in California. (*See* Declaration of Franklin H. Levy, ¶¶ 4-9.) Thus, the Venetian's contacts are not sufficient for Browning to meet its *prima facie* burden of showing that general jurisdiction is proper over the Venetian in this district.[FN1]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN1. On August 2, 2007, the Venetian filed an evidentiary objection and a motion to strike Thomas S. Hixson's declaration on the basis of authentication, relevancy, and hearsay. Because the Court finds that the contacts at issue in the declaration do not constitute general jurisdiction over the Venetian, even if admissible as evidence, the Court finds that it does not need to rule on the Venetian's motion to strike.

**2. This Court has specific jurisdiction over the Venetian.**

*4 Browning asserts that specific jurisdiction exists over the Venetian as a result of conduct allegedly directed at Browning and within this forum. Specific jurisdiction exists where "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable."*Bancroft & Masters Inc. v. Augusta National Inc.,* 223 F.3d 1082, 1086 (9th Cir.2000). If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would be unreasonable.*Fred Martin Motor Co.,* 374 F.3d at 802 (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 476-78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

Browning's claims center on the Venetian's unauthorized reproduction of Browning's sconce designs. Because there are tort claims involved, the Court can analyze the first prong through the *Calder* effects test. *Id.; see also Doe v. Unocal Corp.,* 248 F.3d 915, 924 (9th Cir.2001). The effects test requires the defendant to have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) caused harm that the defendant knows is likely to be suffered in the forum state. *Bancroft & Masters Inc.,* 223 F.3d at 1087.

The Venetian acted intentionally when it contacted Browning in San Francisco, and solicited and then rejected a bid for over eleven thousand sconces. (Compl. ¶ 12.) The Venetian's actions were expressly aimed at California because the Venetian knew that Browning was a California company. *See Bancroft & Masters Inc.,* 223 F.3d at 1087 (The "express aiming" requirement is met when "the defendant knows the plaintiff to be a resident of the form state."). Finally, the Venetian knew its actions of reproducing the sconces would be felt in the California, as Browning creates its designs in California. (Compl.¶ 13.) Browning has demonstrated that the Venetian purposefully availed itself under the *Calder* effects test.

The second prong requires that the Venetian's contacts must "give rise to the current suit," which is measured by a "but for" causation test. *Bancroft & Masters Inc.,* 223 F.3d at 1088. Browning must show that "but for" the Venetian's forum related contacts, the alleged injury would not have occurred. This requirement is met here. But for the Venetian soliciting and rejecting Browning's bid, which resulted in the Venetian identifying and contracting with Browning's manufacturer to reproduce Browning's sconce designs, Browning would not have been harmed. The Venetian's contacts with Browning properly give rise to the current suit. Accordingly, the Court concludes Browning has set forth a *prima facie* showing of personal jurisdiction over the Venetian.

Under the third prong, the Venetian must demonstrate that exercising jurisdiction would be unreasonable. To that end, the Court considers the following factors: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant in defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Id.* (citing *Burger King Corp.,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4532214 (N.D.Cal.)
(Cite as: 2007 WL 4532214 (N.D.Cal.))

Page 5

471 U.S. at 476.

**\*5** First, because "purposeful interjection is analogous to the purposeful direction analysis," the Court finds this factor neutral. *Sinatra v. National Enquirer Inc.,* 854 F.2d 1191, 1199 (9th Cir.1988); citing *Corporate Inv. Business Brokers v. Melcher,* 824 F.2d 786, 790 (9th Cir.1987) ("Ninth Circuit cases give the 'purposeful interjection' no weight once it is shown that the defendant purposefully directed its activities to the forum state."). Second, the Venetian does not make a strong showing that the burden to defend in California would be substantial. Nevada is geographically located near California and "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past."*Menken v. EMM,* 2007 U.S.App. LEXIS 22327, 2007 WL 2713139 (9th Cir.2007) (citation omitted). Thus, this factor weighs in favor of Browning. Third, conflict with the sovereignty of a defendant's state bears no weight here because this case does not involve a foreign state, which presents a higher sovereignty barrier than that between two states such as California and Nevada. *See Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1272 (9th Cir.1981). Fourth, because neither party disputes that California maintains a strong interest in providing redress for its residents, who were harmed by an out-of-state defendant, this factor favors Browning. Fifth, because both California and Nevada have witnesses and evidence, it is unclear which forum has an efficiency advantage. This factor is neutral. Sixth, although maintenance of a suit outside California may be inconvenient and costly for Browning, this factor is not given as much weight and is also neutral. Seventh, Browning implicitly concedes that suit could have been brought in Nevada. This factor favors the Venetian. Balancing these factors, the Venetian has not made a "compelling case" that the exercise of jurisdiction would be unreasonable. *See Fred Martin Motor Co.,* 374 F.3d at 802. The Court finds that exercising jurisdiction over the Venetian is reasonable.

**C. The Northern District of California is a Proper Venue.**

The Venetian argues that the Northern District of California is an improper venue. Civil actions arising under federal copyright laws may be brought "in the district in which the defendant or his agent resides or may be found."28 U.S.C. § 1400(a). The "may be found" clause has been interpreted to mean that a defendant is amenable to personal jurisdiction in a particular forum based on realistic "contacts" with that forum. A corporation resides in any jurisdictional district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c). Here, the Venetian is a corporation that resides in this district because personal jurisdiction has been established based on the Venetian's multiple contacts with Browning in California. Thus, venue is proper under 28 U.S.C. § 1400(a).

**\*6** The general venue statute states that venue is proper in a district if a "substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated."28 U.S.C. § 1391(b)(2). The Venetian solicited a bid from Browning in this district, the sconces were designed in this district, the bid provided for the Venetian to take title to the sconces here, and the financial injury from the Venetian's conduct will be felt in this district where Browning resides. Thus, venue is also proper under 28 U.S.C. § 1391(b).

**D. The Interests of Justice Do Not Favor Transfer to the District of Nevada.**

In the alternative, the Venetian argues that this action should be transferred to the District of Nevada. A district court has discretion to "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"*Steward Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citation omitted). In order for a district court to transfer an action under 28 U.S.C. § 1404, the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4532214 (N.D.Cal.)
(Cite as: 2007 WL 4532214 (N.D.Cal.))

Court must find that: (1) the transferee court is one where the action "might have been brought," and (2) that the convenience of the parties and witnesses and the interest of justice favor transfer. *Hatch v. Reliance Ins. Co.,* 758 F.2d 409, 414 (9th Cir.1985). There is no dispute that Browning could have brought this action in the District of Nevada. Therefore, the Venetian has met its burden under the first part of the test.

To determine whether the Venetian satisfied the second portion of the test, the Court considers the following factors: (1) Plaintiff's choice of forum; (2) convenience of the parties and witnesses; (3) ease of access to sources of proof; (4) local interest in the controversy; (5) familiarity of each forum with applicable law; and (6) relative congestion in each forum. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

Typically a court should give a plaintiff's choice of forum great deference unless the defendant can show that other factors of convenience clearly outweigh the plaintiff's choice of forum. *See Ellis v. Costco Wholesale Corp.,* 372 F.Supp.2d 530, 537 (N.D.Cal.2005) ("Where venue is governed by a more permissive standard, a plaintiff's choice is entitled to greater deference as a matter of law.") Browning is located in San Francisco and conducts its design work from its San Francisco office. Therefore, Browning's choice of forum is favored.

The Court also considers the relative convenience to all the parties and their witnesses. *See Decker Coal Co.,* 805 F.2d at 483 (citing *Gulf Oil Corp.,* 330 U.S. at 508). The Venetian argues that the District of Nevada is a more convenient forum because several employee witnesses are located in Nevada. This inconvenience is given little weight as the Venetian will be able to compel their employees' testimony at trial. *See STX, Inc. v. Trik Stik, Inc.,* 708 F.Supp. 1551, 1556 (N.D.Cal.1998) (discounting the convenience to the defendant's employees because they could be compelled to testi-

fy.) This factor does not favor transfer. Access to evidence may also favor transfer. *Decker Coal Co.,* 805 F.2d at 843 (citing *Gulf Oil Co.,* 330 U.S. at 508). The Venetian argues that the alleged copies of the sconces are located in Las Vegas. Although this factor weighs in favor of transfer, the Court does not weigh it heavily. The local interest in having localized controversies decided at home is also considered. *Id.* California has a strong public interest in deciding controversies involving its citizens. *Lockman Foundation v. Evangelical Alliance Mission,* 930 F.2d 764, 771 (9th Cir.1991) (finding that California has an interest in having its citizens compensated for torts committed against them.) Because Browning resides in the Northern District of California, California's interest in protecting its citizens prevails. Thus, this factor favors Browning. Browning has brought California state law claims. The Northern District of California is more familiar with the relevant California state laws that govern the state claims. This factor does not favor transfer to the District of Nevada. Overall, the Venetian must make a strong showing of inconvenience to upset Browning's choice of forum. The Court finds that the Venetian has failed to carry its heavy burden of establishing the inconvenience of litigating in this forum and DENIES its motion to transfer.

**E. Browning Has Not Stated a Claim For Breach of an Implied Contract.**

*7 The Venetian moves to dismiss Browning's tenth claim for implied contract for failure to state a cognizable legal theory or state a claim under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.1978). A court may dismiss a complaint under Rule 12(b) (6), based on the "lack of a cognizable

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4532214 (N.D.Cal.)
(Cite as: 2007 WL 4532214 (N.D.Cal.))

Page 7

legal theory" or based upon the "absence of sufficient facts alleged under a cognizable legal theory."*Balestreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988).

The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir.1986). A court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir.1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."*Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994), *overruled on other grounds by Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1121 (9th Cir.2002).

An implied contract (*i.e.* implied-in-fact contract) is an agreement that is manifested by the parties' conduct "in light of the surrounding circumstances [and] their tacit understanding."*Moreno v. Los Angeles Child Care and Development Council, Inc.,* 963 F.Supp. 876, 879 (1997) (quoting *Baltimore & Ohio R.R. v. United States,* 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923)); *see also*Cal. Civ.Code § 1621. In *Grosso v. Miramax Film Corporation,* the plaintiff alleged a breach of an implied contract claim against a film company for producing a movie that "stole the ideas and themes of his work."383 F.3d 965, 967 (9th Cir.2004). The plaintiff sought compensation "not for the actual written script, but for the idea allegedly embodied in the script and shared with Miramax."*Id.* The court held that the plaintiff had alleged an implied contract based on providing the company with an idea. *Id.* The court relied on *Desny v. Wilder,* in which the California Supreme Court held that the plaintiff was entitled to a trial because the defendant allegedly entered into an implied contract that began when the plaintiff telephoned the defendant's office and pitched a movie idea to the defendant's secretary. 46 Cal.2d 736, 746 (1956). The plaintiff later submitted a movie synopsis from which the defendant allegedly produced a film and failed to compensate the plaintiff. *Id.* Similarly, Browning relies on *Desny* and seeks compensation for its design ideas which were embodied in the sconces that the Venetian replicated. Browning alleges that the Venetian agreed to pay Browning for the value of sconce copies if it used Browning's designs which were proposed in the bid. Thus, the Court finds that Browning's claims are based on a cognizable legal theory.

**\*8** The Venetian also asserts that Browning has not stated sufficient facts to support an implied contract claim. "The law will not imply a promise to pay for an idea from the mere fact that the idea has been conveyed, is valuable, and has been used for profit; this is true even though the conveyance has been made with the hope or expectation that some obligation will ensue."*Desny,* 46 Cal.2d at 738-39, 299 P.2d 257. "To establish a *Desny* claim for breach of implied-in-fact contract, the plaintiff must show that the plaintiff prepared the work, disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of work."*Grosso,* 383 F.3d at 965 (citing *Faris v. Enberg,* 97 Cal.App.3d 309, 318, 158 Cal.Rptr. 704 (1979)). Moreover, a contract is "effective only between the contracting parties; it does not withdraw the idea from general circulation."*Rokos v. Peck,* 182 Cal.App.3d 604, 614, 227 Cal.Rptr. 480 (1986). Although a disclosed idea may be "widely known, the idea may be protected by an express contract providing that it will be paid for regardless of its lack of novelty."*Id.*

Despite the existence of a cognizable legal theory, Browning does not allege facts sufficient to support a claim that an implied contract existed between the parties. Browning's design ideas had been conveyed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to the Venetian and to the general public prior to submitting its bid to the Venetian. Browning's work was profiled in numerous design magazines and newspapers and commissioned by famous institutions. (Compl.¶ 15.) Browning described in various publications his creative design processes for his signature lighting collection. (*Id.* ¶ 16, 227 Cal.Rptr. 480.) Browning's sconces were also displayed for sale in ten exclusive showrooms throughout the United States. (*Id.* ¶ 5, 227 Cal.Rptr. 480.) Based on these facts, the Court cannot conclude that the Venetian accepted to pay for Browning's widely disclosed sconce ideas. *See Grosso,* 383 F.3d at 965. Browning's bid to the Venetian cannot establish a *Desny* claim. The Venetian also did not expressly agree to pay for the design ideas because it rejected the bid and discontinued negotiations with Browning. Accordingly, the Court GRANTS the motion to dismiss Browning's implied contract claim for failure to make out a claim upon which relief may be granted.

### F. Browning Has Not Stated a Quasi-Contract Claim.

Browning also moves to dismiss count nine for quasi-contract for failure to state a claim. In the past, the legal basis for recovery under a theory of quasi-contract was that ideas were considered property rights. *See Weitzenkorn v. Sol Lesser,* 40 Cal.2d 778, 794-95, 256 P.2d 947 (1953). However, the *Desny* court found that "California does not now accord individual property type protection to abstract ideas."*Desny,* 46 Cal.2d at 732, 299 P.2d 257. Thus, the Court finds that Browning has not stated a legal basis to recover under a theory of quasi-contract/unjust enrichment. A quasi-contract (*i.e.* an implied-in-law contract) is an obligation imposed by law "for reasons of justice." *Weitzenkorn v. Sol Lesser,* 40 Cal.2d 778, 794, 256 P.2d 947 (1953) (citation omitted). Quasi-contracts are used by the courts to prevent unjust enrichment where recovery "is based upon a benefit accepted or derived for which the law implies an obligation to pay."*Id.* As such, the Court dismisses count eleven

as duplicative.

### G. Quasi-Contract/Unjust Enrichment Claim is Also Preempted by Copyright Law.

*9 The Venetian also moves to dismiss the state law claims of quasi-contract and unfair competition on the basis that the Federal Copyright Act preempts those claims.[FN2]Section 301 of the Federal Copyright Act provides in pertinent part:

> FN2. The Venetian also moved to dismiss the implied contract claim. Prior Ninth Circuit decisions "support treating the implied promise to pay required by *Desny* as an'extra element' for preemption purposes." *Grosso v. Miramax Film Corp.,* 383 F.3d at 968;*see also Landsberg v. Scrabble Crossword Game Players, Inc.,* 802 F.2d 1193, 1196-97 (9th Cir.1986)); *see also Firoozye v. Earthlink Network,* 153 F.Supp.2d 1115, 1127-28 (N.D.Cal.2001). However, the Court need not address the preemption issue, as the implied contract claim was dismissed on the merits.

All legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright ... are governed exclusively by this title. Thereafter, no person is entitled to such right or equivalent right in any such work under the common law or statutes of any State.
17 U.S.C. § 301. The federal copyright preemption of overlapping state law claims is "explicit and broad." *G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.,* 958 F.2d 896, 904 (9th Cir.1992).Section 301 establishes a two-part test for preemption: (1) the claims must come within the subject matter of copyright and (2) the rights granted under state law must be equivalent to any of the exclusive rights within the general scope of copyright as set forth in the Act. *Del Madera Props. v. Rhodes & Gardner,* 820 F.2d 973, 976 (9th Cir.1987). Here, there is no dispute that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sconces fall within the subject matter of the Copyright Act. (Opp. Br. at 15.) Thus, the first part of the test is satisfied.

To satisfy the "equivalent rights" part of the pre-emption test, Plaintiff's quasi-contract/unjust enrich-ment and unfair competition claims, which are pre-dicated upon the alleged reproduction of the copy-righted sconces, must be equivalent to rights within the general scope of copyright. *See Del Madera Props.,* 820 F.2d at 977. In other words, to survive preemption, the state causes of action must protect rights which are qualitatively different from the copyright laws. *Id.* (citing *Harper & Row, Publish-ers, Inc. v. Nation Enterprises,* 501 F.Supp. 848, 852 (S.D.N.Y.1980)). The state law claim must have an "extra element" which changes the nature of the action. *Id.* (citing *Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F.Supp. 1523, 1535 (S.D.N.Y.1985)).

The quasi-contract claim is equivalent to the copy-right infringement claims. Browning's argument is based upon the premise that the law should impose an obligation on the Venetian to prevent unjust en-richment because the Venetian and Browning both understood that the Venetian would not reproduce or copy the sconces unless it accepted Browning's bid. This understanding not to reproduce or copy its sconces is "equivalent to the protection provided by section 106 of the Copyright Act" which is to re-produce, distribute, and make derivative copies. *See Del Madera Props.,* 820 F.2d at 977. The claim does not add an "extra element" which changes the nature of the action or rights secured under federal copyright law. Accordingly, to the extent Browning makes out a claim for quasi-contract, it is preemp-ted by federal copyright law, and the Court there-fore GRANTS the motion to dismiss the claim on this alternative basis.

**H. Unfair Competition Claim is Not Preempted by Copyright Law.**

**\*10** Browning alleges an unfair competition claim against the Venetian based on interference with contractual relations and sham bidding. "Unfair competition law in California prohibits any 'unlawful, unfair, or fraudulent business practice.'"*Kodadek v. MTV Networks,* 152 F.3d 1209, 1212 (9th Cir.1998) (quoting *Barquis v. Mer-chants Collection Assn.,* 7 Cal.3d 94, 109, 101 Cal.Rptr. 745, 496 P.2d 817 (1972))."Knowledge and intent are essential elements of an intentional interference [with contractual relations] claim."*Summit Machine Tool Manufacturing Corp. v. Victor GNC Systems, Inc.,* 7 F.3d 1434, 1442 (9th Cir.1993). A claim for intentional interference with contractual relations provides the extra element that is not preempted by federal law. *See id.*

Browning alleges that it was able to provide a com-petitive bid to the Venetian because it had dis-covered Diamond Life, a manufacturing company that would produce its sconces. (Compl.¶ 20.) Dia-mond Life's ability to produce a large quantity of sconces at a high quality and lower price would have allowed Browning to fill large orders for po-tential customers such as the Venetian.(*Id.*) The Venetian allegedly used deceptive and unfair means to learn the identity of Diamond Life, and then ap-proached the company directly to manufacture thousands of nearly identical sconces without Browning's knowledge or permission. (*Id.* ¶ 32.)This act allegedly resulted in an interference in Browning's contractual relationship with its manu-facturer. The "extra element" is that there is a loss of Diamond Life's professional services, which is not an exclusive right granted in copyright law. As such, the motion to dismiss the unfair competition claims as preempted by the Copyright Act is DENIED.

**I. Browning Has Alleged That Las Vegas Sands LLC and Las Vegas Corporation Are Defend-ants Under the Alter Ego Doctrine.**
The Venetian asserts that the claims against the Las Vegas Sands, LLC and Las Vegas Sands Corpora-tion should be dismissed because Browning has failed to state a claim against them. "California law

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

recognizes an alter ego relationship, such that a corporation's liabilities may be imposed on an individual only when two conditions are met: (1) 'there is such a unity of interest and ownership that the individuality or separateness, of the said person and corporation has ceased, and (2) an adherence to the fiction of the separate existence of the corporation would ... sanction or promote injustice.'"*Securities and Exchange Commission v. Hickey,* 322 F.3d 1123, 1128 (9th Cir.2003) (citing *Firstmark Capital Corp. v. Hempel Fin. Corp.,* 859 F.2d 92, 94 (9th Cir.1988)). Here, Browning alleges that Las Vegas Sands, LLC and Las Vegas Corporation are agents and alter egos of each other. (Compl.¶ 9.) Browning further alleges that this conduct will continue at other Venetian properties that are under construction or renovation, which may promote injustice. (Compl.¶ 37.) Thus, the Venetian's motion to dismiss Las Vegas Sands LLC and Las Vegas Corporation is DENIED.

## CONCLUSION

**\*11** For the foregoing reasons, and pursuant to Federal Rules of Civil Procedure 12(b)(1); 12(b)(2); 12(b)(3); 28 U.S.C. § 1404(a); and Federal Rule of Civil Procedure 12(b)(6), the Court holds as follows:

1. The motion to dismiss for lack of subject matter jurisdiction over Browning's copyright claim is DENIED;

2. The motion to dismiss for lack of personal jurisdiction over the Venetian is DENIED;

3. The motion to dismiss on the basis of improper venue is DENIED;

4. The motion to transfer to the District of Nevada is DENIED;

5. The motion to dismiss count number ten for implied contract is GRANTED;

6. The motion to dismiss count number nine for

quasi-contract is GRANTED;

7. The motion to dismiss count number eleven for implied-in-law is GRANTED;

8. The motion to dismiss counts number six and seven unfair competition is DENIED; and,

9. The motion to dismiss Las Vegas Sands LLC and Las Vegas Corporation is DENIED.

The Court hereby sets a case management conference for February 8, 2008 at 1:30 p.m. The parties' joint case management statement is due on Friday, February 1, 2008.

**IT IS SO ORDERED.**

N.D.Cal.,2007.
Jonathan Browning, Inc. v. Venetian Casino Resort, LLC
Slip Copy, 2007 WL 4532214 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                                Page 1
Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.), 41 U.S.P.Q.2d 1886
**(Cite as: Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.))**

**C**

Multistate Legal Studies, Inc. v. Marino
C.D.Cal.,1996.

United States District Court, C.D. California.
MULTISTATE LEGAL STUDIES, INC., a
Delaware Corporation, Plaintiff,
v.
Joseph L. MARINO, an individual; Emily M.
Grufferman, an individual; Joseph L. Marino d.b.a.
Multistate Bar Exam Review; Emily M. Gruffer-
man d.b.a. Multistate Bar Exam Review; Black's
Law Publishing Co., Inc., a corporation, Defend-
ants.
**No. CV 96-5118 ABC (RNBx).**

Nov. 4, 1996.

ORDER RE: MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION AND IMPROP-
ER VENUE OR, IN THE ALTERNATIVE, TO
TRANSFER ACTION TO THE SOUTHERN DIS-
TRICT OF NEW YORK PURSUANT TO 28
U.S.C. §1404(a)

COLLINS, District Judge.
**\*1** Defendants' motion to dismiss for lack of per-
sonal jurisdiction pursuant to Federal Rule of Civil
Procedure 12(b)(2) and improper venue pursuant to
Federal Rule of Civil Procedure 12(b)(3) or, in the
alternative, to transfer the action to the Southern
District of New York pursuant to 28 U.S.C. §
1404(a) came on regularly for hearing before this
Court on November 4, 1996. After reviewing the
materials submitted by the parties, argument of
counsel, and the case file, it is hereby ORDERED
that: (1) Defendant Black's Law Publishing Co.,
Inc.'s motion to dismiss for lack of personal juris-
diction pursuant to Federal Rule of Civil Procedure
12(b)(2) is DENIED; (2) Defendant Black's Law
Publishing Co., Inc.'s motion to dismiss for improp-
er venue pursuant to Federal Rule of Civil Proced-
ure 12(b)(3) is DENIED; and (3) Defendants' mo-

tion to transfer venue to the Southern District of
New York pursuant to 28 U.S.C. § 1404(a) is
GRANTED.

I. Procedural Background

On July 23, 1996, Plaintiff MULTISTATE LEGAL
STUDIES, INC. ("Multistate") filed a Complaint
against Defendants JOSEPH L. MARINO
("Marino"), an individual, EMILY M. GRUFFER-
MAN ("Grufferman"), an individual, JOSEPH L.
MARINO d.b.a. MULTISTATE BAR EXAM RE-
VIEW, EMILY M. GRUFFERMAN, d.b.a.
MULTISTATE BAR REVIEW, and BLACK'S
LAW PUBLISHING CO., INC. ("BLP"), a corpor-
ation. The Complaint alleges that Defendants in-
fringed Plaintiff's exclusive rights in copyright.

On October 11, 1996, Defendants filed the instant
motion to dismiss for lack of personal jurisdiction
pursuant to Federal Rule of Civil Procedure
12(b)(2) and improper venue pursuant to Federal
Rule of Civil Procedure 12(b)(3) or, in the alternat-
ive, to transfer the action to the Southern District of
New York pursuant to 28 U.S.C. § 1404(a).
Plaintiff filed an Opposition to Defendants' motion
on October 18, 1996. On October 28, 1996, De-
fendants filed a Reply.

II. Factual Background

Plaintiff's Complaint and Robert Feinberg's[FN1] De-
claration state [FN2], in pertinent part, as follows:

> FN1. Robert Feinberg, as indicated below,
> is the President of Multistate.
>
> FN2. For the purpose of the personal juris-
> diction motion, the Court will only inquire
> into whether Plaintiff's pleadings and affi-
> davits make a prima facie showing of per-
> sonal jurisdiction. *See Caruth v. Interna-
> tional Psychoanalytical Ass'n,* 59 F.3d 126

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.), 41 U.S.P.Q.2d 1886
(Cite as: Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.))

Page 2

(9th Cir. 1995) (citing *Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)).

- Plaintiff Multistate is a corporation duly organized and existing under the laws of the State of Delaware. Multistate is authorized to conduct business in the State of California, where it has its principal place of business.

- Robert Feinberg ("Feinberg") is the President of Multistate.

- Defendants Marino and Grufferman are married, and they each have principal places of business at 255 West 99th Street, New York, New York and 124 East 37th Street, New York, New York 10016.

- Marino and Grufferman are doing business under the fictitious name of Multistate Bar Exam Review.

- Marino and Grufferman are also officers of Defendant BLP. BLP is a shell through which Marino and Grufferman carry on their business in a corporate name. Marino and Grufferman dominate, control and influence BLP. Moreover, they caused BLP to be formed and conduct business without adequate capitalization, and they commingled their books and accounts with those of BLP.

**\*2** - Both Multistate Bar Exam Review and BLP have principal places of business at 255 West 99th Street, New York, New York and 124 East 37th Street, New York, New York 10016.

- Since 1977, Plaintiff, under the fictitious name of PMBR, has been in the business of offering bar review courses which help law school graduates to prepare for the Multistate Bar Examination ("MBE").

- PMBR conducts its courses in many states, including California and New York.

- Plaintiff, through its employees, has created numerous questions with multiple choice answers (hereinafter PMBR questions) which are similar in

style and complexity to the type of questions law students are expected to encounter on the MBE.

- Plaintiff applied to and received from the Registrar of Copyrights a Registration Certificate for the PMBR questions. Plaintiff has complied in all respects with the Copyright Act of 1976, Title 17 of the United States Code and all other laws governing copyrights.

- Defendants are competitors of Plaintiff in the bar review business.

- In addition to their bar review courses, Defendants market study materials directed towards first year law students. These materials consist of audio cassette tapes and printed pamphlets, which are sold under the trademark "Marino Study System." Separate Marino Study Systems are available for the law school courses of contracts, torts, criminal law, civil procedure, and property. Defendants market these materials in California as well as throughout the United States.

- Around three years prior to the filing of this action, Defendants infringed on Plaintiff's exclusive rights in copyrights of the PMBR questions by incorporating the questions into Defendants' course materials.

- Defendants have been fully aware since they began to infringe on the PMBR questions that such questions were protected by the copyright laws of the United States of America. Notwithstanding such knowledge and awareness, Defendants have willingly and intentionally infringed Plaintiff's exclusive rights.

- Defendants have sold materials that incorporate PMBR questions, without Plaintiff's consent, in "this district"[FN3] and elsewhere.

> FN3. The Court is not sure what Plaintiff means by "this district," but assumes that Plaintiff refers, at the very least, to the greater Los Angeles area.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 3
Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.), 41 U.S.P.Q.2d 1886
(Cite as: Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.))

- Specifically, the Torts volume of the Marino Study System, which is published by BLP, contains at least a dozen questions which infringe upon PM-BR questions. The questions printed in BLP's Torts volume are substantially similar to the PMBR questions, except that BLP's versions have been condensed to eliminate the multiple choice format.

- Defendant BLP advertised the Marino Study System in the California Law Student Journal in 1996.

- BLP distributed brochures at various California law schools in 1995 and 1996.

- Defendants' infringement of the PMBR questions has caused and continues to cause Plaintiff to suffer serious and irreparable harm in ways including, but not limited to, the fact that the feasibility and profitability of marketing Plaintiff's course materials is seriously jeopardized and diminished.

*3 Plaintiff prays: (1) for an injunction, at first preliminarily and then permanently, enjoining and restraining Defendants from infringing on Plaintiff's copyright and directing that Defendants deliver to Plaintiff all copies of the infringing questions and all materials used for printing the PMBR questions; (2) that Defendants be required to render an accounting of the profits derived from the duplication and/or sale of the PMBR questions and that Defendants pay to Plaintiff these profits; (3) that at Plaintiff's election, in lieu of profits, Defendants pay Plaintiff statutory damages for the infringement; and (4) that Defendants pay reasonable attorneys fees and costs of this suit.

### III. Discussion

A. Personal Jurisdiction

1. Standard

A motion to dismiss for lack of personal jurisdiction is based on Federal Rule of Civil Procedure 12(b)(2). While Fed.R.Civ.P. 12(b)(2) does not pre-

scribe the procedure for resolving such a motion, case law indicates that a court has two options: (1) it can decide the motion on the basis of the plaintiff's affidavits submitted in response to the motion; or (2) it can delay a decision and hold an evidentiary hearing. 5A Wright & Miller, *Federal Practice and Procedure:* Civil § 1351 at 248 n.27 (citations omitted). Whichever procedure is used, the plaintiff bears the burden of proof on the necessary jurisdictional facts. *Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir. 1995); *Flynt Distributing Co. v. Harvey,* 734 F.2d 1389, 1392 (9th Cir. 1984). When a court rules on the basis of affidavits alone, or, on the basis of affidavits and discovery materials without holding an evidentiary hearing, plaintiff's burden is met with a simple prima facie showing of personal jurisdiction. *Fields v. Sedgwick Associated Risks, Ltd.,* 796 F.2d 299, 301 (9th Cir. 1986). In determining whether a plaintiff has met this burden, uncontroverted allegations in the plaintiff's complaint must be taken as true, and "'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor...[.]'"*AT&T Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996) (citing *WNS, Inc. v. Farrow,* 884 F.2d 200, 203 (5th Cir. 1989)). However, when a court rules after an evidentiary hearing, the plaintiff must establish the jurisdictional facts by a preponderance of the evidence. *Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977).

In copyright infringement cases, such as the instant case, "[t]here is no applicable federal statute governing personal jurisdiction... hence the law of the state in which the district court sits -California- applies."*Rano v. Sipa Press, Inc.,* 987 F.2d 580, 587 (9th Cir. 1993) (citing *Hylwa, M.D., Inc. v. Palka,* 823 F.2d 310, 312 (9th Cir. 1987)).

In California, the personal jurisdiction statute extends jurisdiction to the very limits of constitutional due process. *See*Cal. Code. Civ. Proc. § 410.10 (West 1973) ("A court of this state may exercise

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 4
Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.), 41 U.S.P.Q.2d 1886
(Cite as: Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.))

jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.") Therefore, this Court need only determine whether the exercise of jurisdiction in this case would comport with due process. *See Haisten v. Grass Valley Medical Reimbursement,* 784 F.2d 1392, 1396 (9th Cir. 1986).

**\*4** The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over any defendant who has had "certain minimum contacts" with the forum state such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice."*International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

There are two recognized bases for personal jurisdiction over nonresident defendants: (1) "general jurisdiction," which arises when a nonresident defendant's activities within the forum state are "substantial" or "continuous and systematic" enough to justify the exercise of jurisdiction over the defendant in all matters, and (2) "specific jurisdiction," which arises out of the defendant's contacts with the forum giving rise to the subject litigation.*Helicopteros Nacionales de Columbia S.A. v. Hall,* 466 U.S. 408, 414-16 (1984); *Omeluk v. Langsten Slip & Batbyqqeri A/S,* 52 F.3d 267, 270 (9th Cir. 1995); *Perkins v. Benquet Consol. Mining Co.,* 342 U.S. 437 (1952); *Data Disc,* 557 F.2d at 1287.

Whether specific jurisdiction will lie "turns on the nature and quality of the defendant's contacts in relation to the cause of action."*Data Disc,* 557 F.2d at 1287. The Ninth Circuit has articulated a three-prong test for determining the existence of specific jurisdiction:

(1) the nonresident defendant must perform some act by which he purposefully avails himself of the benefits and protections of the forum's laws;

(2) the plaintiff's claim must arise out of or result from the defendant's forum-related activities; and

(3) the exercise of jurisdiction must be reasonable.

*Data Disc,* 557 F.2d at 1287. The first two requirements "are closely related because they focus on the relationship of the defendant and the claim to the forum state."*Paccar Int'l., Inc. v. Commercial Bank of Kuwait, S.A.K,* 757 F.2d 1058, 1062 (9th Cir. 1985). Once the first two requirements are shown, a rebuttable presumption arises that the exercise of jurisdiction is reasonable. *Haisten,* 784 F.2d at 1397. The burden is thus on defendant to present "a compelling case that jurisdiction would be unreasonable."*Id.* at 1397 (citing *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 477-78 (1985)).

2. Analysis

1. *General Jurisdiction*

To establish that this Court has general jurisdiction over Defendants, Plaintiff must show that Defendants had "substantial" or "continuous and systematic" contacts with California. Here, because Plaintiff does not explicitly argue that any of the Defendants are subject to general jurisdiction, the Court declines to rule as to whether this Court can assert general jurisdiction over Defendants.

2. *Specific Jurisdiction*

a. *Defendant BLP*

Plaintiff argues that this Court can assert specific jurisdiction over Defendant BLP. The Court agrees.

(1) *Purposeful Availment*

**\*5** The "purposeful availment" prong assures that a nonresident defendant will be aware that it could be sued in the forum state. *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). In other words, the "purposeful availment" prong protects a nonresident from being haled into a court

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 5
Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.), 41 U.S.P.Q.2d 1886
(Cite as: Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.))

solely because of "random, fortuitous or attenu-
ated" contacts over which it has no control. *Burger
King,* 471 U.S. at 476. Specifically, the Ninth Cir-
cuit has indicated that in order for a defendant to
have purposefully availed itself of the forum state,
it must have committed an affirmative act which
either allowed or promoted the transaction of busi-
ness within the forum state. *Shute v. Carnival
Cruise Lines,* 897 F.2d 377, 381 (9th Cir. 1990);
*Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191,
1195 (9th Cir. 1988); *Decker Coal Co. v. Common-
wealth Edison Co.,* 805 F.2d 834, 840 (9th Cir.
1986). Generally, this "affirmative conduct" re-
quirement is satisfied where defendant's efforts to
solicit customers or advertise within the forum state
ultimately result in a sale or contractual negoti-
ations. *See Decker Coal Co.,* 805 F.2d at 840 ("if
the defendant directly solicits business in the forum
state, the resulting transactions will probably con-
stitute the deliberate transaction of business invok-
ing the benefits of the forum state's laws"); *see also
Shute,* 897 F.2d at 382 (holding that defendant pur-
posefully availed itself of the California forum
where defendants advertised in local media in Cali-
fornia, sent brochures to businesses in California,
and California residents purchased tickets from de-
fendants).

In the present case, Plaintiff alleges that BLP ad-
vertised in a California-based legal periodical and
distributed brochures in California to promote a law
school exam preparation course entitled "Marino's
Study System."[FN4]Feinberg Decl. ¶¶ 6, 9.
Moreover, Defendant BLP admits to receiving
around $500.00 in profits from the sale of Marino's
Study Systems.[FN5]Grufferman Decl. ¶ 8. Con-
sequently, because Defendant BLP solicited and ul-
timately consummated business transactions in
California, the Court finds that Defendant BLP had
more than "random, fortuitous or attenuated" con-
tacts with California, and accordingly concludes
that Defendant BLP purposefully availed itself of
the California forum.[FN6]

FN4. Defendant Grufferman concedes that

BLP placed six advertisements in a Cali-
fornia legal periodical, at a total cost of
about $750.00 per advertisement. Gruffer-
man Decl. ¶ 8. However, regarding the
brochures, Defendant Marino asserts that
the brochures were never sent to, or dis-
tributed in, California. Supp. Marino Decl.
¶ 20. However, because at this stage of the
proceeding factual conflicts must be re-
solved in Plaintiff's favor, *AT&T,* 94 F.3d
at 588, Plaintiff's allegations control.

FN5. The Court notes that the $500.00 fig-
ure stated in Grufferman's declaration dif-
fers from the "less than $1000.00" figure
stated in Defendants' Motion at 13.

FN6. Relying on decisions from the Dis-
trict of Arizona, the Southern District of
Texas and the Fifth Circuit, Defendants ar-
gue that the six advertisements and approx-
imately $1,000 in sales were *de minimus*
and, thus, insufficient to establish personal
jurisdiction. Mot. at 13-14. In *Gordy v. The
Daily News, L.P.,* --- F.3d ----, 1996 WL
50913, *5-6. (9th Cir. 1996), the Ninth
Circuit rejected a *de minimus* rule for pur-
poseful availment. There, the defendants
had allegedly written and published a de-
famatory article in a New York based
newspaper about a California resident.
*Gordy,* at *1. Although the paper enjoyed a
substantial market in New York, only 13 to
18 of its total subscriptions actually
reached California. *Id.* Undeterred by the
minimal number of contacts defendants
had with the forum state, however, the
Court focused its purposeful availment
analysis on where the tortious act was tar-
geted and where the most harm was
suffered. *Id.* at 5. Because the libelous
statements were directed at Plaintiff in
California and resulted in damage to
Plaintiff's reputation there, the Court found
that the number of subscription sales in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 6
Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.), 41 U.S.P.Q.2d 1886
(Cite as: Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.))

California satisfied the purposeful avail-
ment prong. *Id.* at *6.

Applying the reasoning of *Gordy,* it is
clear that the advertisements and sales of
Marino's Study System in California are
sufficient contacts for this Court to as-
sert personal jurisdiction over BLP. Be-
cause BLP allegedly infringed Plaintiff's
copyrighted material, Defendant has
clearly "targeted" Plaintiff. In addition,
because Plaintiff is based in California,
that is where it suffers the majority of
the harm from the copyright infringe- ment.

#### (2) *Arising out of Forum-Related Activities*

The Ninth Circuit follows a "but for" analysis of
this second prong of the specific jurisdiction test.
*See e.g. Shute,* 897 F.2d at 385. Specifically, if a
plaintiff would not have suffered a loss "but for"
the defendant's forum-related activities, courts hold
that the claim arises out of the defendant's forum-
related activities. *Id..*

In this case, as articulated above, Defendant BLP's
forum-related activities include its advertisements
for the "Marino Study System" in California.
Plaintiff alleges that it suffered a loss when Defend-
ant BLP infringed upon Plaintiff's copyrighted
questions in Defendant's "Marino Study System"
materials and then sold the materials in several loc-
ations, including California. Complaint ¶¶ 24, 26.
Because Plaintiff's alleged loss (including the deni-
al of profits) would not have occurred "but for" De-
fendant BLP's advertisements in California, the
Court concludes that Plaintiff has satisfied the
second prong of specific jurisdiction.[FN7]

> FN7. Defendants Grufferman and Marino
> assert that the actual materials marketed
> and sold in California did not contain the
> alleged infringing questions and accord-
> ingly, that the alleged injury did not arise
> out of the forum related activity. Gruffer-

man Decl. ¶ 8, Marino Supp. Decl. ¶¶
11-14. Here the Court relies, however, on
Plaintiff's allegation that Defendant's ma-
terial did contain infringing questions as
there is a conflict between the parties' de-
clarations. *See AT&T Corp.,* 94 F.3d at 588.

Defendant Marino also voices his con-
cern that "[if] the Marino Study System
contains no questions which infringe on
Plaintiff's copyrighted multiple choice
bar review questions ... then jurisdiction
and venue are not proper in Califor-
nia."Marino Supp. ¶ 14; *see also* Reply
at 8-9. While the Court is satisfied that
the Plaintiff has made a *prima facie
showing* that this Court may properly ex-
ercise personal jurisdiction over BLP,
were this Court to retain this case instead
of transferring it to the Southern District
of New York, Defendants would have
had the opportunity to contest Plaintiff's
prima facie showing. At that point in
time, Plaintiff would have had to prove
the existence of personal jurisdiction by
a *preponderance of the evidence. See*
Schwarzer, Tashima & Wagstaffe, *Fed-
eral Civil Procedure Before Trial* at
9:119 (The Rutter Group 1996) (citing
*Rano v. Sipa Press, Inc.,* 987 F.2d 580,
587 n.3 (9th Cir. 1993)) ("[i]f plaintiff's
prima facie showing is contested by de-
fendant, at some point (either at a later
evidentiary hearing or at a trial) plaintiff
will have to prove the existence of min-
imum contacts by a *preponderance* of
evidence.").

#### (3) *Reasonableness*

**\*6** The "reasonableness" prong requires that the
Court's exercise of jurisdiction comport with "fair
play and substantial justice." *Burger King,* 471 U.S.
at 477-78. The Ninth Circuit regularly evaluates
seven factors in considering whether the exercise of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 7
Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.), 41 U.S.P.Q.2d 1886
(Cite as: Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.))

jurisdiction is reasonable. These factors are: (1) the extent of a defendant's purposeful interjection into the forum; (2) a defendant's burden from litigating in the forum; (3) the extent of conflict with the sovereignty of a defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Terracom v. Valley Nat'l Bank,* 49 F.3d 555, 561 (9th Cir. 1995); *Ziegler,* 64 F.3d at 476-77;*Decker Coal Co.,* 805 F.2d at 840. No one factor is dispositive; the court must balance all seven. *Core-Vent,* 11 F.3d 1482, 1486-87 (9th Cir. 1993).

### (i) *Extent of purposeful interjection into the forum state*

The Court's determination that BLP purposefully availed itself of California law "does not obviate the need to consider the degree of [its] intrusion."FN8*Zielger,* 64 F.3d at 475. "Even if there is sufficient "interjection" into the state to satisfy [the purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the [reasonableness prong.]"*Core-Vent,* 11 F.3d at 1488.

> FN8. Plaintiff states that this factor is "identical to the first prong [ [of purposeful availment]." Opp. at 5. This is not entirely true. Ninth Circuit cases make it clear that a finding that a defendant has purposefully availed himself of a state's forum does not preclude an analysis of the "extent of the purposeful interjection." *See Ziegler,* 64 F.3d at 475;*Core-Vent,* 11 F.3d at 1488.

In this case, the degree of interjection into California by BLP is moderate. While BLP placed a series of advertisements in a California legal periodical and allegedly distributed brochures in California,

BLP did not regularly advertise and distribute brochures in California, nor did it generate many sales.FN9Accordingly, the Court finds that this factor favors neither party.

> FN9. There is little case law to guide the Court's analysis of the extent of purposeful interjection. Until very recently, the Ninth Circuit did not analyze this factor where there had already been a finding of "purposeful availment." Accordingly, the Court concludes that although the Defendants in this case did interject themselves into California, such interjection was not necessarily high on the "scale" of possible interjection.

### (ii) *Burden on the defendant*

"This factor examines how difficult it will be for a defendant to travel to the forum state to defend itself."*Indiana Plumbing Supply v. Standard of Lynn, Inc.,* 880 F.Supp. 743 (C.D. Cal 1995). The Ninth Circuit has recognized that "modern means of communication and transportation have tended to diminish the burdens of defense of a lawsuit in a distant forum."*Marina Salina Cruz,* 649 F.2d at 1271. While the Ninth Circuit has been more sensitive to foreign parties needing to defend themselves in the United States, *see Asahi Metal Indus., Ltd. v. Superior Court,* 480 U.S. 102, 112 (1987) ("[t]he unique burdens placed on one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness" of exercising jurisdiction), there are no alleged problems of extreme distance here. Accordingly, the Court finds that this factor, at best, is neutral to both parties.

### (iii) *Conflict with Sovereignty of Defendants' State*

**\*7** Although sovereignty interests may carry significant weight when a defendant hails from a foreign country, this factor is of minimal significance with respect to state sovereignty. *Decker Coal Co.,* 805

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 8
Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.), 41 U.S.P.Q.2d 1886
**(Cite as: Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.))**

F.2d at 841. This factor, then, does not favor Defendant.

#### (iv) *Forum State's Interest in Adjudication*

A state generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries by non-resident actors. *Burger King,* 471 U.S. at 473. Here, Plaintiff alleges that Defendant BLP inflicted harm upon it by infringing Plaintiff's copyright and than selling products containing copyrighted materials. Accordingly, California has a "manifest interest" in providing Plaintiff with a convenient forum and this factor tips in Plaintiff's favor.

#### (v) *Most Efficient Judicial Resolution*

This factor involves a comparison of alternative forums. The location of the witnesses and the evidence is an important consideration. *Core-Vent,* 11 F.3d at 1489. Plaintiff argues that, based on the location of the witnesses, the case can be litigated just as effectively in California, as in New York. Opp. at 6. Plaintiff asserts that Plaintiff's witness lives in California, that Defendant's advertising contacts are in California, that Defendant's president and independent contractor live in New York, and that Defendant's sales are handled by a company in Florida. Opp. at 5-6, 8 (addressing Feinberg Decl. ¶ 3; Grufferman's Decl. ¶ 3, 10; Marino's Decl. ¶ 3, 5.) Plaintiff therefore argues that the number of witnesses in New York is relatively small and that New York is no more a convenient and efficient forum than California. Opp. at 6. In contrast, Defendant alleges that additionally, there are four to five material witnesses who have worked on the questions in issue and all of them reside in New York. Marino's Decl. ¶ 11. The declarations of both Plaintiff and Defendants therefore suggest that there are more witnesses in New York than in California. Accordingly, it appears that New York is a more efficient forum for judicial resolution. Thus, this factor favors Defendant.

#### (vi) *Convenience and Effectiveness of Relief for Plaintiff*

It is uncontested that California is the more convenient and effective forum from Plaintiff's perspective. However, courts have not given much weight to convenience to the Plaintiff in the balancing of these factors. *See e.g. Core-Vent,* 11 F.3d at 1489 ("[a] mere preference on the part of the plaintiff for its home forum does not affect the balancing.") Put another way, "no doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference."*Roth v. Marquez,* 942 F.2d 617, 624 (9th Cir. 1991). Thus, this factor is either neutral or it favors Plaintiff.

#### (vii) *Availability of an Alternative Forum*

Plaintiff "bears the burden of proving the unavailability of an alternative forum."*FDIC v. British-American Ins. Co., Ltd.,* 828 F.2d 1439, 1445 (9th Cir. 1987). Here, Plaintiff has not met this burden as it concedes that "[b]oth New York and Florida are available."Opp. at 6. Consequently, the Court finds that this factor favors Defendant.

**\*8** As indicated above, Defendant's burden is to "present a compelling case" that the exercise of jurisdiction is unreasonable. *Ziegler,* 64 F.3d at 476. In the instant case, Defendant BLP has failed to meet this burden.[FN10]Consequently, Plaintiff has satisfied each of the three prongs necessary for a finding of specific jurisdiction, and the Court accordingly finds that Plaintiff has made a prima facie showing that this Court can assert personal jurisdiction over Defendant BLP.

> FN10. In sum, only two factors appear to weigh in BLP's favor: the most efficient judicial resolution and the availability of an alternative forum.

#### b. *Individual Defendants*

Defendants argue that this Court cannot assert per-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sonal jurisdiction over Marino and Grufferman because they "have not engaged in any affirmative conduct which constitutes the transaction of business within the state of California."Mot. at 12. Putting aside for a moment the notion of potential alter ego liability, the Court agrees with Defendants. Neither Marino or Grufferman have been in the State of California for at least twenty years, have any assets in California, or have any contacts with California. Grufferman Decl. ¶ 4 & Marino Decl. ¶ 4. Accordingly, at first blush, it appears that the Court cannot assert jurisdiction over either Marino or Grufferman.

However, Plaintiff alleges that BLP constitutes the alter ego of Marino and Grufferman, Feinberg Decl. ¶ 13, and furthermore, argues that this Court may be able to assert personal jurisdiction over both Grufferman and Marino. Opp. at 7. On this basis, Plaintiff has requested the opportunity to conduct discovery as to Marino and Grufferman's personal involvement before this Court rules on whether Plaintiff can make a prima facie showing of alter ego liability and personal jurisdiction.

If this Court were to retain jurisdiction over this case, the Court would have granted Plaintiff's request. It is in this Court's discretion to permit discovery to aid in the determination of alter ego liability and personal jurisdiction. *See Data Disc,* 557 F.2d 1280, 1284-1285 & n.1 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 4006, at 430 n.24 (9th Cir. 1977)) ("[i]n granting discovery, the trial court is vested with broad discretion ...[and] [d]iscovery may appropriately be granted where .. a more satisfactory showing of the [jurisdictional] facts is necessary.); *see also Flynt Distributing Co.,* 734 F.2d at 1393-1394 (applying the jurisdiction analysis set forth in *Data Disc* to alter ego liability). However, because this Court is transferring this case to the Southern District of New York, Plaintiff's request to conduct discovery on this issue is moot.

B. Venue

1. Standard

Federal venue is governed entirely by statute. *Leroy v. Great Western United Corp.,* 443 U.S. 173, 181 (1979). Except as otherwise provided by special venue rules, venue in federal question cases is governed by 28 U.S.C. § 1391(b). Actions arising under federal copyright laws, however, are governed by 28 U.S.C. § 1400(a), which provides that "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyright or exclusive rights in mask works may be instituted in the district in which the defendant or his agent resides or may be found."Accordingly, in order for venue to be proper in the Central District, the Court must find that Defendants Grufferman, Marino and BLP each "reside or may be found" in the Central District of California. *See* Shwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* 4:189 at 4-42.5 (The Rutter Group 1996) ("Ordinarily, venue must be satisfied as to *each* defendant in the action.")

2. Analysis

**\*9** Defendants argue that the instant case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue. The Court does not agree.

The Court first addresses Defendants' venue argument as it relates to Defendant BLP. Defendants correctly assert that pursuant to the copyright venue provision, an action arising under the copyright laws may only be instituted in the district in which the defendant resides or "may be found." 28 U.S.C. § 1400(a). Where the Defendants are mistaken, however, is in their assertion that "[the] declarations [,] clearly show that *neither* the individual defendants nor the corporate defendants, or their agents, reside in California, or may be found there."Mot. at 15.

In discussing venue statutes, the Ninth Circuit has specifically noted that for the purposes of the copy-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                            Page 10
Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.), 41 U.S.P.Q.2d 1886
(Cite as: Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.))

right venue provisions, "'[a] corporation is 'found' in any district in which personal jurisdiction might be obtained over it.'"[FN11]*See Varsic v. U.S. Distr. Court for Central Dist. of California,* 607 F.2d 245, 248 (9th Cir. 1977) (citing *Mode Art Jewelers Co. v. Expansion Jewelry Ltd.,* 409 F.Supp. 921, 923 (S.D.N.Y. 1976); *Sterling Television Presentations, Inc. v. Shintron Co.,* 454 F.Supp. 183, 190-91 (S.D.N.Y. 1978)). Accordingly, because the Court has found that it can assert personal jurisdiction over BLP and that BLP maintained contacts with the Central District, it finds that venue is proper here.

> FN11. Because this Ninth Circuit language is in dicta, the Court also looks to *Milwaukee Concrete Studios Ltd. v. Fjeld Mfg. Co.,* 8 F.3d 441 (7th Cir. 1993), a more recent case which directly addresses the copyright venue provision. In *Milwaukee Concrete Studios Ltd.,* the court held that it must find that a defendant possesses contacts with the particular federal district in which the copyright action has been filed, above and beyond the court's finding of personal jurisdiction, before the requirements of the copyright venue provision are satisfied. *Id.* at 445-446 (holding that while defendant was subject to personal jurisdiction in Wisconsin, venue was not proper in the Eastern District of Wisconsin because defendant's contacts were limited to the Western District of Wisconsin). Even applying this heightened standard, the Court may nonetheless dispose of BLP's venue challenge. Based on Plaintiff's allegation that BLP sold its products containing copyrighted material specifically within the Central District, Complaint ¶ 24, the Court finds that BLP possesses sufficient contacts with the Central District to be amenable to suit here.

Regarding Defendants Marino and Grufferman, the Court cannot rule at this time whether venue in this district is proper. While it is clear that neither Defendant resides in California, it is not clear that they may not be "found" in California. This determination depends upon whether the Court can assert personal jurisdiction over them. *See Advideo, Inc. v. Kimel Broadcast Group, Inc.,* 727 F.Supp. 1337 (N.D. Cal. 1989) (defendant is "found" within meaning of copyright venue statute wherever personal jurisdiction is proper); *Store Decor Div. of Jas Intern., Inc. v. Stylex Worldwide Industries, Ltd.,* 767 F.Supp. 181 (N.D. Ill. 1991) (same). Accordingly, because Grufferman and Marino do not reside in California, the Court cannot rule on whether proper venue lies in the Central District of California without a resolution of the issue of personal jurisdiction. As articulated above, a determination of whether the Court can assert personal jurisdiction over Defendants Marino and Grufferman would require the parties to conduct further discovery.

Because the Court finds first, that venue is proper as to Defendant BLP, and second, that it cannot reach the propriety of venue as to Defendants Marino and Grufferman without first reaching the issue of personal jurisdiction, the Court DENIES Defendants' motion to dismiss for improper venue.

C. Transfer

1. Applicable Transfer Statute

There are two distinct grounds on which parties may seek to change venue in federal courts. First, under 28 U.S.C. § 1404(a), where venue is *proper* in the transferor court, the court may transfer to another district "for the convenience of parties and witnesses, in the interest of justice."Second, under 28 U.S.C. § 1406(a), where venue is *improper* in the transferor court, the court may dismiss the case or transfer "if it be in the interest of justice."

**\*10** Upon thoughtful consideration of U.S.C. § 1404(a) and related case law, the Court finds that U.S.C. § 1404(a) may be utilized in this case, even

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

though the Court has not made the threshold determination as to whether venue is proper in the Central District of California as to Marino and Grufferman. See C. Wright, A. Miller & E. Cooper, 15 *Federal Practice and Procedure* § 3854 at 469-470 ("It may well conserve judicial resources, and serve the interests of the parties as well, to transfer from a forum in which there is a difficult question of personal jurisdiction or venue to a district in which there are no such uncertainties"); *see also Kahhan v. City of Fort Lauderdale,* 566 F.Supp. 736 (E.D. Pa. 1983) (granting transfer under 28 U.S.C. § 1404(a) where personal jurisdiction over defendant and venue in transferor court in was doubt, whereas personal jurisdiction over defendant and venue in transferee court was certain).

2. Standard for 28 U.S.C. § 1404(a)

Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."Thus, in ruling on a motion to transfer, the Court must evaluate three elements raised by the statute: (1) convenience of the parties (2) convenience of the witnesses and (3) interests of justice.*A.J. Industries, Inc. v. United States District Court For The Central District of California,* 503 F.2d 384 (9th Cir. 1974) (paraphrasing statute); *Los Angeles Memorial Coliseum Commission v. NFL,* 89 F.R.D. 497, 499 (C.D.Cal. 1994) (same). In addition, a court may also balance additional factors previously weighed under the common law doctrine of forum non conveniens, the predecessor to § 1404(a).*Los Angeles Memorial Coliseum Commission,* 89 F.R.D. at 499. These include the relative ease of access to sources of proof, the availability of process to compel the presence of unwilling witness, the expense of presenting willing ones, and the practical problems indicating that the case can be tried more expeditiously and inexpensively elsewhere. *Id.* (citing *Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 508-09 (1947)).

The party seeking 28 U.S.C. § 1404(a) transfer has the burden of justifying that the particular circumstances warrant a change of venue. *Id.;Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979); *Decker Coal Co.,* 805 F.2d at 843. Additionally, Plaintiff's choice of forum must be accorded a certain deference. *Decker Coal Co.,* 805 F.2d at 843.

3. Analysis

A transfer of this case is appropriate because convenience to the parties, convenience to the witnesses, and the interests of justice each favor a transfer to New York.

Defendants argue that New York is a more convenient forum for the parties to litigate the instant case. Mot. at 17-18. The Court finds Defendants' argument to have merit. First, both Plaintiff Multistate and Defendant BLP maintain offices in New York. Marino Decl. ¶ 10; Complaint ¶ 8. Second, Defendants Marino and Grufferman reside in New York. Grufferman Decl. ¶ 3; Marino Decl. ¶ 3. While Plaintiff Multistate's principal place of business is in California, New York is not so inconvenient a forum for Plaintiff as to justify forcing Defendants to litigate in California, where they neither live, work, or maintain an office.

**11** Defendants also argue that the convenience of witnesses favors a transfer to New York. Mot. at 17-18. Again, the Court finds this argument to have merit. Defendants assert that there are four to five potential witnesses, all of whom live in New York, who have worked on the questions that Plaintiff claims infringe upon PMBR's questions. Grufferman Decl. § 11; Marino Decl. § 11. Not only is the Southern District of New York a more convenient location than Los Angeles for these witnesses, but these nonparty witnesses are not subject to the subpoena power of this Court. In contrast, Plaintiff only identifies one witness, Robert Feinberg. While Feinberg does reside in Los Angeles, he maintains offices in both Los Angeles and New York. Com-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaint ¶ 4; Reply at 16. Accordingly, the Court finds that New York is a more convenient forum for the majority of the proposed non-party witnesses.

While the convenience of both parties and witnesses weigh in favor of transferring this action to New York, it is the "interest of justice" factor that convinces this Court to transfer this case to the Southern District of New York. Courts have repeatedly held that a change of venue from a forum where there is a difficult question of personal jurisdiction or venue to a district where there are not such uncertainties serves the interest of justice. *See DataSouth Computer Corp. v. Three Dimensional Technologies, Inc.,* 719 F.Supp. 446 (W.D.N.C. 1989) (transfer from district where resolution of jurisdiction issue would "require a substantial expenditure of additional resources" to district which rendered "moot the issue of personal jurisdiction").*See also Kahhan v. City of Fort Lauderdale,* 566 F.Supp. at 739 (transfer which obviated jurisdiction and venue difficulties serves interest of justice within meaning of § 1404(a)); *Donnelly v.Klosters Rederi A/S/,* 515 F.Supp. 5, 7 (E.D. Pa. 1981) ("[s]ubstantial time, money, and effort will be required to determine .. preliminary jurisdictional issue which [will be] rendered unnecessary if the action is transferred to a [district] which has *in personam* jurisdiction over defendant and is a forum where the action might have been brought"); *X-Rail Sys., Inc. v. Norfolk & W. Ry. Co.,* 485 F.Supp. 553, 555 (D.N.J. 1980) ("[t]ransfer will ... strike a constructive blow in support of the need to eliminate avoidable discovery, and aid in the inexpensive determination of the action, Rule 1, F.R.Civ.P., since it will render moot the dispute over minimum contacts"); *Terukuni Kaiun Kaisha, Ltd. v. CB. Rittenberry and Associates, Inc.,* 454 F.Supp. 418 (S.D.N.Y. 1978) ("prosecuting action in district where personal jurisdiction can clearly be obtained over defendant will avoid risk of squandered energies on personal jurisdiction issue.")

In the instant case, as articulated above, there are substantial questions as to whether Defendants

Marino and Grufferman are subject to personal jurisdiction in California and whether venue is proper in the Central District of California. Both issues require parties to engage in further discovery, file further briefing and potentially conduct an evidentiary hearing. Moreover, there is a great likelihood, as indicated by Defendants' moving papers and declarations, Reply at 8-9; Marino Supp. Decl. ¶¶ 7-19, that Defendants would contest Plaintiff's prima facie showing that this Court can assert personal jurisdiction over Defendant BLP. In this scenario, the Court would hold an evidentiary hearing. Consequently, were the Court to retain this case, significant discovery and at least one evidentiary hearing would be required before jurisdiction and venue could be properly, and finally, established. Thus, if this case is not transferred, it will be necessary for both the parties and the Court to expend substantial efforts to resolve preliminary issues. Moreover, these efforts will consume time, energy and resources of all involved whether the Court ultimately retains jurisdiction or concludes that it cannot assert jurisdiction over some or all of the defendants, compelling a transfer or dismissal.[FN12]Because the preliminary issues regarding jurisdiction and venue will be eliminated from an action litigated in New York, transfer of this case to the Southern District of New York avoids the potential for squandering resources. Under these circumstances, the Court finds transferring this case to the Southern District of New York clearly serves the interest of justice.

> FN12. It is even possible that the Court would ultimately conclude that it can assert personal jurisdiction over Defendant BLP but not over Defendants Grufferman and Marino (and likewise that venue would be improper in the Central District of California for Grufferman and Marino), a result which might necessitate transfer to avoid duplicative litigation.

**\*12** Accordingly, because the interests of the parties, the witnesses and justice would be advanced by suit in New York, it is appropriate to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.), 41 U.S.P.Q.2d 1886
**(Cite as: Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.))**

transfer this action there. Moreover, there is no question that the action "might have been brought," 28 U.S.C. § 1404(a), in the Southern District of New York, as venue is proper because all Defendants either reside or "may be found" there and the traditional bases of personal jurisdiction exists since all parties were served in New York. Consequently, this action is TRANSFERRED to the Southern District of New York.

### IV. Conclusion

For all of the reasons set forth above, the Court hereby ORDERS that: (1) Defendant BLP's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is DENIED; (2) Defendant BLP's motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) is DENIED; and (3) Defendants' motion to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) is GRANTED.

SO ORDERED.

C.D.Cal.,1996.
Multistate Legal Studies, Inc. v. Marino
Not Reported in F.Supp., 1996 WL 786124 (C.D.Cal.), 41 U.S.P.Q.2d 1886

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.), 2003 Copr.L.Dec. P 28,611
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.))**

**C**

Quality Improvement Consultants, Inc. v. Williams
D.Minn.,2003.

United States District Court,D. Minnesota.
QUALITY IMPROVEMENT CONSULTANTS,
INC., Plaintiff,
v.
Ralph WILLIAMS, Cooliemon, LLC, and Alan S.
Koch, Defendants.
**No. Civ.02-3994(JEL/JGL).**

Feb. 24, 2003.

Sarah Crippen Madison, Best & Flanagan LLP, for
Plaintiff Quality Improvement Consultants, Inc.
Patrick C. Summers, Mackall, Crounse & Moore,
plc, for Defendants Ralph Williams, Cooliemon,
LLC, and Alan S. Koch.

ORDER

LANCASTER, J.

*1 This is an action by a consulting and training
company, Quality Improvement Services, Inc.
(QIC), against two of its former independent con-
tractors, Ralph Williams and Alan Koch, and a con-
sulting and training company created by Williams,
Cooliemon, LLC (Cooliemon). QIC asserts claims
under federal law for copyright infringement and
service mark infringement, as well as several
claims under state law. Before the Court is a motion
by the defendants to dismiss for lack of personal
jurisdiction or improper venue. In the alternative,
the defendants seek to transfer the action to the
United States District Court for the Western Dis-
trict of Pennsylvania, or to stay the action pending
the resolution of a similar action in Pennsylvania
state court. For the reasons given below, the Court
transfers the action to the Western District of
Pennsylvania.

I. SUBJECT MATTER JURISDICTION

The Court has jurisdiction over QIC's federal law
claims pursuant to 28 U.S.C. §§ 1331, 1338 (2000),
and over its state law claims pursuant to 28 U.S.C.
§§ 1332(a)(1), 1367(a) (2000).

II. BACKGROUND

QIC is a corporation engaged in the business of
providing "quality and process improvement con-
sulting services and training to businesses."(Olson
Aff. ¶ 2.) The president of QIC, Timothy Olson,
moved from Pennsylvania to Minnesota in April
1994. (*Id.* at ¶ 4.) Olson operated QIC as a Min-
nesota sole proprietorship from April 1994 until
October 1997, and as a Minnesota corporation from
October 1997 until the summer of 2001. (*Id.*) In
June 2001, QIC merged with a Nevada corporation,
and in August 2001, Olson moved QIC's principal
place of business to California. (*Id.* at ¶ 16.)QIC is
a citizen of Nevada and California, and Olson is a
citizen of California. (*See id.*)

Williams and Koch are citizens of Pennsylvania.
(*See* Williams Aff. ¶ 1; Koch Aff. ¶ 1.) Williams
began working for QIC as an independent contract-
or in 1996, providing training and consulting ser-
vices to QIC's customers in Minnesota and in other
states. (Olson Aff. ¶ 5.) In October 1997, Williams
and QIC formalized their relationship by executing
a professional services agreement (*id.* at ¶ 6), and
they executed a second professional services agree-
ment in Minnesota in May 1999 (*id.* at ¶ 7). Willi-
ams continued to provide services to QIC's custom-
ers until early 2002. (*Id.* at ¶ 21.)

Koch and QIC executed a professional services
agreement in September 1999, pursuant to which
Koch agreed to work for QIC as an independent
contractor, providing consulting and training ser-
vices to QIC's customers. (*Id.* at ¶ 9.) Koch's rela-
tionship with QIC ended in early 2002. (*Id.* at ¶ 21.)

In 2001 or early 2002, Williams formed Cool-
iemon, a Pennsylvania limited liability company,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.), 2003 Copr.L.Dec. P 28,611
(Cite as: Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.))

which provides consulting and training services and products to businesses. (Cooliemon Aff. ¶¶ 2-3; Olson Aff. ¶ 22.) Williams is the president and sole member of Cooliemon. (Cooliemon Aff. at ¶ 1.) Unlike Williams and Koch, Cooliemon has never had a business relationship with QIC, and has not had any contacts with QIC.

**\*2** In June 2002, Williams filed, but did not serve, an action against QIC and Olson in Pennsylvania state court. (Madison Aff. ¶ 2, Ex. A.) Williams sought damages for breach of contract and unjust enrichment based on QIC and Olson's alleged failure to pay him for services he provided to QIC's customers. He also sought a declaratory judgment that certain noncompetition provisions found in his professional service agreements were unenforceable or, in the alternative, that he had not violated the noncompetition provisions, and an injunction preventing QIC and Olson from taking any action to enforce the noncompetition provisions.

QIC filed this action on October 8, 2002, alleging that Williams and Koch violated the noncompetition provisions of their professional services agreements, and that Williams, Koch, and Cooliemon misused information and intellectual property that Williams and Koch had obtained during their relationships with QIC. On October 23, 2002, approximately two weeks after QIC commenced this action, Williams filed an Amended Complaint in the Pennsylvania state court action which, among other things, added Koch as a plaintiff.(*Id.* at ¶ 3.) Koch did not assert any claims for damages, but he did join Williams in seeking declaratory and injunctive relief with respect to the noncompetition provisions. QIC and Olson were served with the Amended Complaint on October 28, 2002. (*Id.*)

In November 2002, QIC and Olson filed a petition to compel arbitration in the Pennsylvania state court action. The petition was based on an arbitration provision found in all of the professional services agreements, which stated in relevant part:

All disputes arising out of this contract, or with re-

spect to its effectiveness, shall, if a mutual settlement cannot be reached (e.g., mediation), be decided by arbitration barring ordinary legal proceedings.... The arbitration shall be conducted either via electronic medium or in person in the Minneapolis/ St. Paul, MN, metro area. The laws of the State of Minnesota shall be applicable.

On January 14, 2003, the Pennsylvania state court granted the petition and ordered a stay of Williams's breach of contract and unjust enrichment claims pending the arbitration decision.[FN1]

> FN1. The parties disagree as to the effect of the Pennsylvania state court's decision. According to QIC, the entire action will be decided by arbitration. According to Williams and Koch, the only issue to be decided by arbitration is whether the noncompetition provisions are enforceable.

### III. DISCUSSION

A. Personal Jurisdiction

Williams, Koch, and Cooliemon move to dismiss this action for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). To survive this motion, QIC must make a prima facie showing of personal jurisdiction. *Stevens v. Redwing,* 146 F.3d 538, 543 (8th Cir.1998); *Digi-Tel Holdings, Inc. v. Porteq Telecomms. (PTE), Ltd.,* 89 F.3d 519, 522 (8th Cir.1996). For purposes of a prima facie showing, the Court must view the evidence in the light most favorable to QIC, and must resolve all factual conflicts in QIC's favor.*Digi-Tel,* 89 F.3d at 522;*Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir.1991).

The Court can exercise personal jurisdiction over a nonresident defendant if (1) Minnesota's long-arm statute, Minn.Stat. § 543.19 (2002), is satisfied and (2) the exercise of personal jurisdiction does not offend due process.*Guinness Import Co. v. Mark VII Distribs., Inc.,* 153 F.3d 607, 613-14 (8th Cir.1998); *Minn. Mining & Mfg. Co. v. Nippon*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 3
Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.), 2003 Copr.L.Dec. P 28,611
(Cite as: Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.))

*Carbide Indus. Co.,* 63 F.3d 694, 696-97 (8th Cir.1995). Because Minnesota's long-arm statute extends the personal jurisdiction of Minnesota courts as far as due process allows, *In re Minn. Asbestos Litig.,* 552 N.W.2d 242, 246 (Minn.1996); *Marquette Nat'l Bank of Minneapolis v. Norris,* 270 N.W.2d 290, 294 (Minn.1978), the two requirements collapse into one, and the Court need only determine whether the exercise of personal jurisdiction comports with due process, *Guinness Import,* 153 F.3d at 614;*Minn. Mining & Mfg.,* 63 F.3d at 697.

**\*3** A court's assertion of personal jurisdiction over a nonresident defendant satisfies due process when the defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." ' *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). Minimum contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). It is "essential ... that there be some act by which the defendant purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). In contrast, contacts that are merely "random," "fortuitous," "attenuated," or that are the result of "unilateral activity of another party or a third person" will not support personal jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

Once it has been decided that a defendant purposefully established minimum contacts with the forum state, the contacts must be considered in light of other factors to determine whether the assertion of personal jurisdiction comports with "fair play and substantial justice." *Burger King,* 471 U.S. at 476. The five factors to consider are: (1) the nature and quality of the contacts; (2) the quantity of the con-

tacts; (3) the relation between the contacts and the action; (4) the forum state's interest in the litigation; and (5) the convenience of the parties. *Digi-Tel,* 89 F.3d at 522-23;*Aftanase v. Econ. Baler Co.,* 343 F.2d 187, 197 (8th Cir.1965). The last two factors are of secondary importance and are not determinative. *Guinness Import,* 153 F.3d at 614;*Minn. Mining & Mfg.,* 63 F.3d at 697. The third factor is used to distinguish specific jurisdiction from general jurisdiction. *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir.1996); *Digi-Tel,* 89 F.3d at 522 n. 4. Specific jurisdiction refers to the exercise of personal jurisdiction over a defendant in an action arising out of or related to the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8 (1984). General jurisdiction refers to the exercise of personal jurisdiction over a defendant in an action not arising out of or related to the defendant's contacts with the forum.*Id.* at 414 n. 9. General jurisdiction is proper only when the defendant's contacts with the forum state are "continuous and systematic." *Id.* at 416.

In this case, QIC argues that Williams, Koch, and Cooliemon are subject to specific and general jurisdiction. The Court will consider each defendant in turn. *See Calder v. Jones,* 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

### 1. Williams

**\*4** Williams's six-year relationship with QIC began in 1996, when Williams and Olson first entered discussions about the possibility of Williams serving as an independent contractor for QIC. (Olson Aff. ¶ 5.) Williams worked on "a few" projects for QIC in 1996 (*id .*), including a project that required him to travel to Chaska, Minnesota, to provide services to FSI, Inc., one of QIC's Minnesota-based customers (*id.* at ¶ 19). Williams and QIC entered the first of two professional services agreements in October 1997, pursuant to which QIC hired Williams as an independent contractor. (*Id.* at ¶ 5.) The profession-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.), 2003 Copr.L.Dec. P 28,611
(Cite as: Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.))

al services agreement's arbitration provision stated that all disputes arising out of the contract or relating to its effectiveness would be arbitrated in Minnesota under Minnesota law.

Williams traveled to Minnesota twice in 1999 to provide services to QIC's customers, with each trip lasting at least five days. (*Id* . at ¶ 19.)Williams and Olson signed a second professional services agreement on May 6, 1999, when Williams was in Shoreview, Minnesota, performing work for Deluxe Corporation, another of QIC's Minnesota-based customers. (*Id.* at ¶ 7.) Like the first agreement, the second provided for arbitration in Minnesota under Minnesota law of all disputes arising out of the contract or relating to its effectiveness. On the same day and at the same location, Williams and Olson signed a Statement of Work that described the services Williams was to provide to Deluxe Corporation. (*Id.*) Williams and Olson discussed the Deluxe Corporation project and the need to revise Williams's first professional services agreement for at least one month prior to May 6, 1999. (*Id.*)

Throughout his service as an independent contractor for QIC, Williams engaged in frequent contacts with Olson in Minnesota by telephone and e-mail. (*See* Williams Aff. ¶ 14; Olson Aff. ¶ 17.) He also visited QIC's office in Minnesota once or twice, and he "spent a great deal of time discussing business and doing work" with Olson during those visits. (Olson Aff. ¶ 19.) All of Williams's work assignments came from QIC in Minnesota, as did the approximately \$414,000 he received from QIC in exchange for his work. (*Id.* at ¶¶ 17-18.)

These facts demonstrate that Williams purposefully directed his activities at QIC, a Minnesota corporation, as well as a number of QIC's Minnesota-based customers. These contacts were not random, fortuitous, or attenuated, nor were they result of the unilateral activity of another party or a third person. Rather, they were the result of Williams's deliberate decision to enter a business relationship with QIC. Williams derived a substantial commercial benefit from this relationship, as evidenced by his receipt

of more than \$410,000 over approximately six years. Furthermore, by agreeing to arbitrate disputes in Minnesota under Minnesota law, Williams strengthened his connection to Minnesota and ensured that his activities would receive the benefits and protections of Minnesota law.

**\*5** QIC's claims are related to Williams's contacts with Minnesota, in that they are all predicated on Williams's alleged violations of his contracts with QIC and his alleged misuse of information and intellectual property he obtained during his relationship with QIC. For these reasons, the Court concludes that QIC has made a prima facie showing of specific jurisdiction over Williams, and it therefore denies the motion to dismiss QIC's claims against Williams for lack of personal jurisdiction.

### 2. Koch

Viewing the record in the light most favorable to QIC, the Court concludes that QIC has also carried its burden of making a prima facie showing of specific jurisdiction over Koch. Like Williams, Koch deliberately reached out beyond his home state of Pennsylvania and became an independent contractor of a Minnesota corporation. Their relationship lasted for approximately two-and-one-half years (*id.* at ¶¶ 9, 21), and Koch derived a substantial commercial benefit from his contacts with QIC, receiving more than \$75,000 in exchange for the services he provided to QIC's customers (*id.* at ¶¶ 17, 18). Those customers were located in Iowa and Virginia (Koch Aff. ¶¶ 13, 15), but all of the work assignments and payments came from QIC in Minnesota (Olson Aff. ¶ 17). In addition, during his tenure as an independent contractor, Koch traveled to QIC's office in Minnesota at least once to discuss business with Olson (*id.* at ¶ 20), engaged in marketing efforts in Minnesota (*id.*), and frequently contacted Olson in Minnesota by telephone and e-mail (*see* Koch Aff. ¶ 17; Olson Aff. ¶ 17). The presence of the arbitration provision in Koch's professional services agreement reinforced his deliberate affiliation with Minnesota. QIC's claims against

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.), 2003 Copr.L.Dec. P 28,611
(Cite as: Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.))

Koch are related to his contacts with QIC in Minnesota, as they are based on his alleged failure to abide by the terms of his personal services agreement and his alleged misuse of information and intellectual property he obtained from QIC. Based on these considerations, the Court denies the motion to dismiss QIC's claims against Koch for lack of personal jurisdiction.

### 3. Cooliemon

QIC makes two arguments in support of its position that Cooliemon is subject to personal jurisdiction. First, it claims that Cooliemon has purposefully directed its activities toward Minnesota residents by marketing its services and offering publications for sale through its website. To determine whether personal jurisdiction is proper based on Cooliemon's Internet activity, the Court assesses the nature and quality of the activity using the "sliding scale" approach established in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997).*See Multi-Tech Sys., Inc. v. Vocal-Tec Communications, Inc.,* 122 F.Supp.2d 1046, 1050-51 (D.Minn.2000) (applying *Zippo'* s sliding scale approach). That approach divides commercial Internet activity into three general areas along a spectrum. At the active end of the spectrum, the defendant clearly does business over the Internet, entering into contracts with residents of the forum State that involve "knowing and repeated transmission of computer files."*Zippo,* 952 F.Supp. at 1124. Activity at the active end of the spectrum generally supports personal jurisdiction. *Id.* At the passive end of the spectrum, the defendant merely posts information on a website that is accessible to users in the forum State. *Id.* Activity at the passive end of the spectrum does not support personal jurisdiction. *Id.* The middle of the spectrum is occupied by interactive websites that permit users to exchange information with a host computer. *Id.* Whether activity that falls mid-spectrum supports personal jurisdiction depends on "the level of interactivity and [the] commercial nature of the exchange of information."*Id.*

*6 Cooliemon's website advertises its services and offers publications for sale. (Olson Aff., Ex. C.) Users can purchase the publications online by submitting their billing, shipping, and credit card information, or they can print an order form and send it to Cooliemon by fax. (*Id.*) Relying on two decisions from this district, *Multi-Tech* and *Mulcahy v. Cheetah Learning LLC,* Civ. No. 02-791, 2002 WL 31053211 (D.Minn. Sept. 4, 2002), QIC argues that Cooliemon is subject to personal jurisdiction due to these interactive features. In *Multi-Tech,* the court exercised jurisdiction over an Israeli corporation in a patent infringement action, in part because the corporation's website allowed Minnesota residents to download the defendant's allegedly infringing software product after registering and entering a software licensing agreement with the defendant online. 122 F.Supp.2d at 1048. It appears that Minnesota residents actually had downloaded the software from the defendant's website. The court noted, for example, that one of the arguments made by the plaintiff was that "Minnesotans can [download] *and have* downloaded" the software. *Id.* at 1049 (emphasis added). The court also stated:

"[i]f the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet computer network, personal jurisdiction over defendant is proper."*Zippo,* 952 F.Supp. at 1124. Here, there has been no discovery to date of knowing and *repeated* transmissions of ... software from [the defendant's] website to Minnesota residents.

*Id.* at 1050.The court's emphasis of the word "repeated" suggests that transmissions had occurred, but that the transmissions were relatively few in number.

In *Mulcahy,* the court exercised specific jurisdiction over a Connecticut company that provided examination preparation courses and material in a copyright infringement action. 2002 WL 31053211, at *3-4. The court's decision was based in part on the fact that the defendant had advertised a course to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.), 2003 Copr.L.Dec. P 28,611
(Cite as: Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.))

Page 6

Minnesota residents through its interactive website, *id.* at *3, and in part on the fact that the defendant had sold tickets to Minnesota residents for a course to be held in Minnesota, *id.* at *3-4. It is not clear whether those sales took place through the defendant's website or through more traditional means of exchange. In any event, in both *Multi-Tech* and *Mulcahy,* the nonresident defendant's contacts with Minnesota extended beyond the existence of an interactive website offering goods or services to Minnesota residents to include actual transactions and exchanges of information with Minnesota residents.

In this case, there is no evidence that Cooliemon engaged in *any* transaction or exchange of information with a Minnesota resident through its website. (*See* Cooliemon Aff. ¶¶ 4-5.) Thus, while it is somewhat difficult to pinpoint Cooliemon's position on *Zippo'* s spectrum, it is safe to say that Cooliemon's contacts with Minnesota are less than those of the defendants in *Multi-Tech* and *Mulcahy.*More to the point, the nature and quality of Cooliemon's Internet activity places it on that part of the spectrum that does not support the exercise of personal jurisdiction. If Cooliemon's website, standing alone, were enough to satisfy *International Shoe'* s "minimum contacts" standard, then due process would impose little restraint on the Court's ability to exercise jurisdiction over every e-commerce entrepreneur who offers goods or services for sale online. The Court is not willing to interpret due process so narrowly, and it therefore concludes that QIC has failed to make a prima facie showing of personal jurisdiction over Cooliemon on the basis of its Internet activity.

*7 QIC's second argument is based on the theory that Williams acted both as an individual and in his capacity as president and owner of Cooliemon when he engaged in contacts with Minnesota, and that, as a result, Williams's contacts with Minnesota should also be counted as contacts by Cooliemon. According to QIC, its dual capacity theory is supported by *Arneson v. Gygax,* 473 F.Supp. 759 (D.Minn.1979).*Arneson* involved a suit by a coau-thor of the game "Dungeons and Dragons" against the other coauthor and the corporation that owned the rights to publish, sell, and distribute the game. *Id.* at 760-61.The defendant coauthor, Gygax, was also the chief executive officer of the corporation. *Id.* at 762.In deciding whether to exercise jurisdiction over Gygax as an individual, the court noted that his activities as coauthor of the game were "intermingled and coincide[d] with" his activities as chief executive officer of the corporation, thereby creating an inference that Gygax was acting both in his corporate capacity and in his individual capacity when he engaged in activities in Minnesota. *Id.* at 762-63.

The evidence in this case does not support an inference that Williams acted in a dual capacity when he engaged in contacts with Minnesota. Williams's contacts with QIC in Minnesota began in 1996 and terminated in August 2001, when Olson moved the company to California. Williams did not form Cooliemon until 2001 or early 2002. Thus, with respect to the bulk of Williams's contacts with Minnesota, it would be impossible to conclude that he was acting in a dual capacity. As for Williams's contacts with QIC during the first eight months of 2001, there is no evidence that Williams intermingled his activities as an independent contractor of QIC with his activities as a representative of Cooliemon during that period.

In sum, QIC has failed to make a prima facie showing of personal jurisdiction over Cooliemon, either on the basis of Cooliemon's website or under the theory that Williams acted in a dual capacity when he engaged in contacts with QIC in Minnesota. Accordingly, the Court concludes that it cannot exercise personal jurisdiction over Cooliemon.

B. Venue

The Court will next address whether venue is proper with respect to QIC's claims against Williams and Koch.[FN2]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 7
Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.), 2003 Copr.L.Dec. P 28,611
(Cite as: Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.))

FN2. Given that Cooliemon is not subject to personal jurisdiction, the Court need not address whether venue is proper with respect to QIC's claims against Cooliemon.

*1. Copyright infringement claim*

QIC's copyright infringement claims are governed by a special venue statute, 28 U.S.C. § 1400(a) (2000), which provides that actions "arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides *or may be found.*"(Emphasis added.) It is undisputed that neither Williams nor Koch "resides" in the District of Minnesota; the issue presented is whether they "may be found" here.

The overwhelming majority of decisions interpreting section 1400(a) hold that a defendant "may be found" in any district in which he is subject to personal jurisdiction. *See, e.g., Real Good Toys, Inc. v. XL Mach. Ltd.,* 163 F.Supp.2d 421, 425 (D.Vt.2001); *Dakotah, Inc. v. Tomelleri,* 21 F.Supp.2d 1066, 1075 (D.S.D.1998); *Blackburn v. Walker Oriental Rug Galleries, Inc.,* 999 F.Supp. 636, 638 (E.D.Pa.1998); *Linzer v. EMI Blackwood Music, Inc.,* 904 F.Supp. 207, 215 (S.D.N.Y.1995); *Johannsen v. Brown,* 788 F.Supp. 465, 469 (D.Or.1992); *Store Decor Div. of Jas Int'l, Inc. v. Stylex Worldwide Indus., Ltd.,* 767 F.Supp. 181, 185 (N.D.Ill.1991); *Advideo, Inc. v. Kimel Broadcast Group, Inc.,* 727 F.Supp. 1337, 1341 (N.D.Cal.1989); *Thomas Jackson Publ'g, Inc. v. Buckner,* 625 F.Supp. 1044, 1046 (D.Neb.1985); *Micromanipulator Co., Inc. v. Bough,* 558 F.Supp. 36, 37 (D.Nev.1982); *United Merchs. & Mfrs., Inc. v. David & Dash, Inc.,* 439 F.Supp. 1078, 1085 (D.Md.1977). Decisions from this district are consistent with this interpretation. *See Network Prof'ls, Inc. v. Network Int'l Ltd.,* 146 F.R.D. 179, 184 (D.Minn.1993) (observing that section 1400(a)"has been interpreted to mean that a copyright action may be brought in any district in which the defendant is subject to personal jurisdiction"); *Alternative Pioneering Sys., Inc. v. Direct Innovative Prods.,* *Inc.,* Civ. No. 4-92-278, 1992 WL 510190, at *4 (D.Minn. Aug. 20, 1992) ("For purposes of § 1400(a), a defendant may be 'found' in those districts in which personal jurisdiction might be obtained over it.").

*8 Relying on a single case, *Blue Compass Corp. v. Polish Masters of America,* 777 F.Supp. 4 (D.Vt.1999), Williams and Koch argue that only corporate defendants "may be found" in any district in which they are subject to personal jurisdiction. In *Blue Compass,* the United States District Court for the District of Vermont held that, although it had personal jurisdiction over a California sole proprietor, venue was improper under section 1400(a) because the defendant did not reside and could not be found in Vermont. *Blue Compass,* 777 F.Supp. at 5. The court reasoned:

[The defendant,] lives and operates his business in California, and, according to his affidavit, has never set foot in Vermont. Although a corporat[e] defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction" for purposes of venue, under 28 U.S.C. § 1391(c), [the defendant's] business is not a corporation. The materials before the court show that [the defendant] and his sole proprietorship do not reside and may not be found in Vermont under the venue provisions.

*Blue Compass,* 777 F.Supp. at 5.

The Court is not persuaded that noncorporate defendants should be treated differently than corporate defendants for purposes of determining whether they "may be found" in a district under section 1400(a).Section 1400(a) itself does not draw a distinction between corporations and noncorporations, *see Donner,* 480 F.Supp. at 1234-35 ("The language of 28 U.S.C. § 1400(a) makes no distinction between corporate defendants and individual defendants, and we can discern no reason for any such distinction."), and it appears that *Blue Compass* is the only case to draw such a distinction. Furthermore, a subsequent case from the District of Ver-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 8
Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.), 2003 Copr.L.Dec. P 28,611
(Cite as: Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.))

mont minimized the significance of *Blue Compass,* stating in a footnote that it "was limited to the 'resides' language, and did not discuss whether the defendant could be 'found' in the forum."*Real Good Toys,* 163 F.Supp.2d at 426 n. 3.

Applying the well-established interpretation of section 1400(a), the Court concludes that Williams and Koch "may be found" in this district because they are subject to personal jurisdiction. *See Network Prof'ls,* 146 F.R.D. at 184;*Alternative Pioneering,* 1992 WL 510190, at *4. Venue is therefore proper with respect to QIC's copyright infringement claims against Williams and Koch.

*2. Remaining claims*

QIC's remaining claims are governed by the general venue statute, 28 U.S.C. § 1391 (2000). QIC asserts that venue is proper under section 1391(b)(2), which provides that a civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

In *Woodke v. Dahm,* 70 F.3d 983 (8th Cir.1995), the Eighth Circuit stated that, "by referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff."*Id.* at 985. *Woodke* also instructs that it is not enough that a defendant's acts or omissions are connected to the claim "in a causal sense." *See id.*Rather, only an act or omission that is "itself wrongful" can be counted as an event or omission giving rise to the claim. *Id.; see also Barber v. Simpson,* Civ. No. 95-4210, 1996 WL 477005, at *1 (8th Cir. Aug. 23, 1996) (per curiam) (citing *Woodke* in support of holding that venue was improper when "the specific allegedly wrongful conduct of [the] defendants ... occurred elsewhere"). Thus, under *Woodke,* to decide whether venue is proper under section 1391(b)(2), the Court must determine whether a substantial part of the defendants' allegedly wrong-

ful acts or omissions occurred in this district.

*\*9 In this case, QIC failed to identify, either in its Complaint or in its evidentiary submissions in connection with the defendants' motion, any allegedly wrongful act or omission by Williams or Koch that occurred in Minnesota. Accordingly, the Court concludes that the District of Minnesota is not one in which "a substantial part of the events or omissions giving rise to [QIC's claims] occurred."*See Barber,* 1996 WL 477005, at *1;*Woodke,* 70 F.3d at 985. Venue is therefore improper as to these claims.

C. Transfer

Having concluded that venue is proper as to QIC's copyright infringement claims, and that venue is improper with respect to QIC's other claims, the Court will now address the defendants' motion to transfer the action to the United States District Court for the Western District of Pennsylvania. The posture of this case calls for the application of two transfer statutes: 28 U.S.C. § 1404(a) (2000), which authorizes transfer from a proper venue, and 28 U.S.C. § 1406(a) (2000), which authorizes transfer from an improper venue.

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."A party seeking a transfer under this section typically bears the burden of proving that a transfer is warranted. *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 695 (8th Cir.1997). In deciding whether to transfer an action, a district court must consider the three factors listed in the statute-the convenience of the parties, the convenience of the witnesses, and the interest of justice-and it may also consider "any other relevant factors." *Id.* at 696.To satisfy its burden of proof, the movant must demonstrate that the balance of factors strongly favors transfer. *Graff v. Qwest Communications Corp.,* 33 F.Supp.2d 1117, 1121 (D.Minn.1999).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 9
Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.), 2003 Copr.L.Dec. P 28,611
(Cite as: Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.))

Under section 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought ."The standard for transfer under section 1406(a) is less demanding than the standard used in connection with section 1404(a)."Transfer pursuant to § 1406(a) to remove a procedural obstacle such as lack of personal jurisdiction is favored over dismissing an action because transfer facilitates the adjudication of a dispute on its merits."*Wilson v. St. Mary's Hosp.,* 822 F.Supp. 1450, 1451 (D.Minn.1993) (citing *Sinclair v. Kleindienst,* 711 F.2d 291, 294 (D.C.Cir.1983)). A district court can transfer an action under section 1406(a) even if it lacks personal jurisdiction over the defendant. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466 (1962). Thus, QIC's claims against Cooliemon can be transferred under this section, as well.

There is no dispute that QIC could have brought all of its claims against Williams, Koch, and Cooliemon in the Western District of Pennsylvania; all of the defendants reside in that district.

**\*10** It is also clear that transfer of QIC's copyright infringement claims against Williams and Koch would greatly enhance the overall convenience of the parties. QIC operates out of California, Olson resides in California, and Williams and Koch are residents of Pennsylvania. Thus, unlike cases involving a defendant who seeks to transfer an action from the district in which the plaintiff resides to the district in which the defendant resides, a transfer here would not merely shift the inconvenience of litigating in a foreign district from one party to the other. On the plaintiff's side of the balance, litigating in the Western District of Pennsylvania is only marginally less convenient than litigating in Minnesota. On the defendants' side, it would be far more convenient for Williams and Koch to litigate in their home district. This factor weighs heavily in favor of transfer.

As for the convenience of the witnesses, the parties

have provided the Court with scant information about the identity of the witnesses they plan to call, the location of those witnesses, their relative degree of importance, or the nature of their testimony. The defendants state merely that QIC has not identified any potential witnesses located in Minnesota. For its part, QIC makes the vague claim that "witnesses who might be called, including QIC's customers, are distributed around the country."(Plaint.'s Mem. Opp. Mot. Dismiss, Transfer, or Stay at 26.) Without more information, it is impossible to determine whether transfer would serve the convenience of the witnesses in this case. Thus, this factor weighs neither for nor against transfer.

Finally, the interest of justice, which is considered under both section 1404(a) and section 1406(a), weighs heavily in favor of transfer. In essence, this is a dispute between residents of California and residents of Pennsylvania that stems from allegedly wrongful acts and omissions that occurred outside of Minnesota. The Court does not have personal jurisdiction over one of the three defendants in this action, and this is an improper venue for all but two of QIC's claims. If the Court permits QIC's copyright infringement claims against Williams and Koch to proceed in this district and dismisses the remainder of the action without prejudice, it is likely that QIC will bring an action (or actions) against Williams, Koch, and Cooliemon in another district. Given that all of QIC's claims arise from the same underlying set of facts, such an action would closely parallel the action proceeding here. The same difficulty would result if the Court permits the copyright infringement claims to proceed here and transfers the remainder of the action to the Western District of Pennsylvania pursuant to section 1406(a). Breaking this case into separate pieces would create additional costs for the parties and for the courts. To avoid this problem, and to further the convenience of the parties, the Court concludes that QIC's copyright infringement claims against Williams and Koch should be transferred to the Western District of Pennsylvania pursuant to section 1404(a), and that the remainder of the action, in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.), 2003 Copr.L.Dec. P 28,611
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.))**

Page 10

cluding QIC's claims against Cooliemon, should be transferred to the same district pursuant to section 1406(a).

D. Stay

**\*11** The defendants' also move for a stay of this action pending the resolution of the Pennsylvania state court action. Having decided that transfer is appropriate, the Court declines to rule on this motion.

## IV. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. This action shall be transferred to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a), and 28 U.S.C. § 1406(a).

D.Minn.,2003.
Quality Improvement Consultants, Inc. v. Williams
Not Reported in F.Supp.2d, 2003 WL 543393 (D.Minn.), 2003 Copr.L.Dec. P 28,611

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2007 WL 1455903 (N.D.Cal.)
**(Cite as: 2007 WL 1455903 (N.D.Cal.))**

**H**
Silicon Image, Inc. v. Analogix Semiconductor, Inc.
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
SILICON IMAGE, INC., Plaintiff,
v.
ANALOGIX SEMICONDUCTOR, INC., Defendant.
No. C-07-0635 JCS.

May 16, 2007.

David Douglas Schumann, Jedediah Wakefield, Fenwick & West LLP, San Francisco, CA, J. David Hadden, Saina Sason Shamilov, Fenwick & West LLP, Mountain View, CA, for Plaintiff.
Ryan James Padden, Luann Loraine Simmons, O'Melveny & Myers LLP, San Francisco, CA, for Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART ANALOGIX'S MOTION TO DISMISS SILICON IMAGE'S UNFAIR COMPETITION CLAIM AND DISMISSING UNFAIR COMPETITION CLAIM WITH LEAVE TO AMEND [Docket No. 9]**

JOSEPH C. SPERO, United States Magistrate Judge.

**I. INTRODUCTION**

*\*1* On January 31, 2007, Plaintiff Silicon Image, Inc. ("Silicon Image") filed this action against Analogix Semiconductor ("Analogix"), asserting claims for copyright infringement, trade secret misappropriation and unfair competition. Analogix brings a Motion to Dismiss Silicon Image's Unfair Competition Claim ("the Motion"), which came on for hearing on Friday, May 11, 2007. For the reasons stated below, the Motion is GRANTED IN PART and DENIED IN PART. Plaintiff's Unfair Competition Claim is dismissed with leave to amend.

**II. BACKGROUND**

**A. The Complaint**

Silicon Image is a "leading provider of semiconductor solutions for the secure storage, distribution and presentation of high-definition content in the consumer electronics and personal computing markets."Complaint at 2. Analogix also provides semiconductor solutions for HDTV products and is a competitor of Silicon Image. *Id* at 4. Silicon Image alleges that it enjoys a competitive advantage in the marketplace, in part, as a result of its semiconductor layout designs, which it has developed "[a]t great expense and effort" and which account for the "high performance" of Silicon Image's semiconductor chips.*Id.* at 3. These layout designs include "register maps that identify locations of registers within its chip designs."*Id.* The layout designs and register maps are trade secrets. *Id.* Silicon Image further alleges that "[a]long with its chips, Silicon Image has developed at substantial expense its configuration software that interoperates with its semiconductor chips."*Id.* This software is subject to copyright protection. *Id.* According to the Complaint, Analogix, without authorization, copied and used Silicon Image's register maps and configuration software in order to create semiconductor chips that mirror those that are made by Silicon Images. *Id.* Allegedly, Analogix markets these chips as "drop-in replaceable" with Silicon Image's chips, even though use of Analogix's chips with Silicon Image's configuration software violates the terms of Silicon Image's Software License Agreement. *Id.* According to Silicon Image, the Software License Agreement "specifies that Silicon Image's configuration software can only be used with Silicon Image chips and no other products."*Id* at 3. Silicon Image alleges that "[s]uch a restriction is common in the industry."*Id.* Silicon Image also alleges that it contacted Analogix and "placed it on notice of Silicon Image's intellectual property rights [but that] Analogix has continued its unlawful activities."*Id.* at 4.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 2
Slip Copy, 2007 WL 1455903 (N.D.Cal.)
**(Cite as: 2007 WL 1455903 (N.D.Cal.))**

Based on these allegations, Silicon Image asserts three claims: 1) Copyright Infringement in violation of the Copyright Act (17 §§ U .S.C. 101*et seq.*); 2) Trade Secret Misappropriation in violation of California's Uniform Trade Secrets Act (California Civil Code §§ 3426*et seq.*); and 3) Unfair Competition in violation of California's Business and Professions Code §§ 17200*et seq.* ("the UCL Claim"). The UCL Claim incorporates by reference all of Silicon Image's factual allegations. *Id.* at 7. In addition, Silicon Image specifically alleges in the UCL Claim that:

*2 Analogix's actions described herein constitute an (sic) unlawful, unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof.Code §§ 17200*et seq.* The unlawful business acts include, without limitation, violations of the Copyright Act, including, but not limited to, inducing customers to infringe Silicon Image's intellectual property rights by encouraging use of Silicon Image configuration software with Analogix chips, and theft of trade secrets.

*Id.*

**B. The Motion**

In the Motion, Analogix asserts that Silicon Image's UCL Claim is preempted by the federal Copyright Act and the California Uniform Trade Secrets Act. In support of this position, Analogix points to the fact that Silicon Image expressly alleges in its UCL Claim that that claim is based on violations of the Copyright Act and theft of trade secrets.

In its Opposition brief, Silicon Image does not dispute that the UCL Claim is preempted to the extent it is based on alleged violation of the Copyright Act and theft of trade secrets.[FN1]Instead, it argues that its UCL Claim should not be dismissed because it is based on unlawful and unfair conduct that is independent from and extends beyond the alleged violation of the Copyright Act and theft of trade secrets. In particular, it asserts that its UCL Claim is based

on Analogix's intentional interference with contractual relations and misleading advertising, both of which are unlawful business practices under the UCL. Silicon Image further asserts that Analogix's alleged conduct threatens competition, which is an unfair business practice under the UCL. Finally, Silicon Image asserts that it should be given the opportunity to amend the claim if the Court finds that it is defective.

> FN1. At oral argument, Silicon Image stipulated that the UCL Claim is preempted to the extent it is based on alleged violations of the Copyright Act and theft of trade secrets.

In its Reply brief, Analogix argues that Silicon Image has not adequately pleaded intentional interference with contractual relations or misleading advertising, and that even if it had, the UCL Claim would still be preempted because this alleged unlawful conduct is based on the same nucleus of facts as the Copyright violation and the trade secret theft. Analogix further asserts that Silicon Image does not sufficiently allege unfair business practices under the UCL because "Silicon Image has not tied [its] allegations to any alleged violation of an antitrust law or policy or any alleged Analogix conduct that 'threatens an incipient violation of an antitrust law.' " *Id.* at 9.

**III. ANALYSIS**

**A. Legal Standard Applicable to Rule 12(b)(6) Motions**

A claim should not be dismissed pursuant to Fed.R.Civ.P. 12(b) (6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). Dismissal can be based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1455903 (N.D.Cal.)
**(Cite as: 2007 WL 1455903 (N.D.Cal.))**

F.2d 696, 699 (9th Cir.1990). On a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* Where a court dismisses for failure to state a claim pursuant to Rule 12(b)(6), it "should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts."*Cook, Perkiss & Liehe v. N. Cal. Collection Serv.,* 911 F.2d 242, 247 (9th Cir.1990).

**B. Sufficiency of Allegations**

**\*3** California's Unfair Competition Law, Cal. Bus. & Prof.Code §§ 17200*et seq.,* defines unfair competition as any "unlawful, unfair or fraudulent business practice."Silicon Image asserts that it has alleged violations of the UCL based on two unlawful business practices, namely, intentional interference with contractual relations and misleading advertising. In addition, Silicon Image asserts that it has alleged that Analogix has engaged in unfair business practices by threatening competition. Silicon Image argues that none of these three theories is adequately pleaded. The Court finds that while the allegations in the Complaint as a whole are sufficient to support all three of these theories of liability under the UCL, the UCL Claim is nonetheless deficient to the extent that it fails to articulate any of these theories.

**1. UCL Claim Based on Intentional Interference With Contractual Relations**

In a recent decision addressing the types of conduct that are prohibited under the UCL, the Ninth Circuit noted that "[t]he California Supreme Court has given the word 'unlawful' a straightforward and broad interpretation:

The UCL covers a wide range of conduct. It embraces anything that can properly be called a business practice and that at the same time is forbidden by law....Section 17200 "borrows" violations from other laws by making them independently actionable as unfair competitive practices."

*CRST Van Expedited, Inc. v. Werner Enters., Inc.,* 479 F.3d 1099, 1107 (9th Cir.2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1143, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003)). Here, the alleged interference by Analogix with the Software License Agreement between Silicon Image and its customers is a business process. *See CRST,* 479 F.3d at 1107 (holding that alleged interference by corporate competitor with plaintiff's employment contracts was a business practice). Moreover, "intentional interference with contract is a tortious violation of duties imposed by law."*Id.* Therefore, so long as the underlying claim for interference with contractual relations is adequately pleaded, so is the UCL Claim to the extent that it is based on the tortious interference claim.

While the elements of the UCL Claim derive from state substantive law, the degree of specificity required is governed by the Federal Rules of Civil Procedure. *See Taylor v. U.S.,* 821 F.2d 1428, 1432 (9th Cir.1987). Under Rule 8(a), a plaintiff is required to provide only a "short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a). The Supreme Court has admonished that "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim."*Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Rather, the allegations are sufficient so long as they provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests."*Id.* The UCL Claim fails to expressly allege that it is based on tortious interference with contract and therefore fails to meet the "fair notice" requirement under Rule 8(a). On the other hand, the factual allegations in the Complaint would be sufficient to support allegations of tortious interference, were they to be articulated in the UCL Claim, as discussed below.

**\*4** To state a claim for intentional interference with contractual relations, a plaintiff must allege the following elements: (1) a valid contract between plaintiff and a third party; (2) defendant's know-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1455903 (N.D.Cal.)
(Cite as: 2007 WL 1455903 (N.D.Cal.))

Page 4

ledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118, 1126, 270 Cal.Rptr. 1, 791 P.2d 587 (1990). Analogix argues that Silicon Image's interference with contract claim is deficient because the Complaint fails to allege adequately the first three elements of such a claim. Drawing all reasonable inferences in favor of Silicon Image, as the Court is required to do at this stage of the proceeding, the Court concludes that the allegations are sufficient to support a claim for intentional interference with contract.

First, Silicon Image has adequately alleged the existence of a contract between itself and a third party by alleging that its customers are required to enter into a Software License Agreement which provides that Silicon Image's configuration software can only be used with Silicon Image chips. While Silicon Image does not identify the customers by name, its allegations are sufficiently specific to place Analogix on notice of the contractual relationship at issue.

The decisions cited by Analogix do not support a contrary result because in those cases, the allegations regarding the existence of a contract with a third party were so vague that they failed to indicate even the *nature* of the contract at issue, in contrast to the allegations here. *See Accuimage Diagnostics Corp. v. Terarecon, Inc.,* 260 F.Supp.2d 941 (N.D.Cal.2003) (holding that allegation that "valid contracts" existed between the plaintiff and an unspecified third party were insufficient because the plaintiff failed to give the defendants notice of "some facts surrounding the type or nature of the contracts their conduct allegedly interfered with"); *Brown v. Allstate Ins. Co.,* 17 F.Supp.2d 1134 (S.D.Cal.1998) (allegation regarding existence of valid contract with third party found insufficient where allegation was conclusory and contained no description of the nature of the existing relation-

ship); *Bradley v. Google,* 2006 WL 3798134 (N.D.Cal. Dec.22, 2006) (same). The Court also finds that Silicon Image's allegations are sufficient to allege knowledge of the Software License Agreement on the part of Analogix. In particular, Silicon Image alleges that Analogix is a competitor and that such licensing agreements are common in the industry. Based on these allegations, one could reasonably infer that Analogix knew that sale of its product to Silicon Image customers violated the Software License Agreement. In contrast, the allegations in *Beverly v. Network Solutions, Inc.,* 1998 WL 917526 (N.D.Cal. Dec.30, 1998), on which Analogix relies, did not support a similar inference. In that case, the plaintiff asserted a claim for tortious interference with contract against Network Solutions, Inc. ("NSI"), the entity that registers top level internet domain names, alleging that by enforcing its dispute resolution policy against the plaintiff-which resulted in a hold being placed on the plaintiff's domain name registration-NSI interfered with the plaintiff's existing economic relationship with a "Mr. Ross." *Id.* at *1, 3. The plaintiff did not allege that NSI knew or should have known of the plaintiff's economic relationship with Mr. Ross and there were no facts alleged that would have supported such an inference. To the contrary, the court noted that the domain name registration process was entirely automated and therefore, there would have been no reason NSI would have been aware of the Plaintiff's relationship with Mr. Ross.*Id* . at * 10.

**\*5** *Summit Mach. Tool, Mfg. Corp. v. Victor CNC Sys., Inc.,* 7 F.3d 1434, (9th Cir.1993), another case cited by Analogix, is also inapposite. In that case, the court dismissed the plaintiff's claim for intentional interference with contractual relations following a bench trial during which the plaintiff admitted there was no evidence showing that the defendant knew about the contractual relationship with which it had allegedly interfered. 7 F.3d at 1436, 1442.

Finally, by alleging that Analogix markets its

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1455903 (N.D.Cal.)
**(Cite as: 2007 WL 1455903 (N.D.Cal.))**

product as "drop-in replaceable" with Silicon Image's product, Silicon Image has adequately alleged that Analogix has engaged in intentional acts designed to induce a breach of contract. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.,* 461 F.Supp.2d 1188, 1193 (C.D.Cal.2006), cited by Analogix, has no bearing on this question because it was decided on summary judgment on the basis that there was no *evidence* that the defendant intended to induce a breach of contract.

Therefore, the Court concludes that Plaintiff's UCL Claim is deficient as to the tortious interference theory of liability only to the extent that the Claim fails to expressly allege that it is based on such a theory.

**2. False or Misleading Advertising**

California's false advertising law provides as follows:

It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated

any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

Cal. Bus. & Prof.Code § 17500. This provision has been "interpreted broadly to embrace not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."*Leoni v. State Bar,* 39 Cal.3d 609, 626, 217 Cal.Rptr. 423, 704 P.2d 183 (1985). Whether the public actually has been or will be misled for purposes of a claim under the false advertising law is a factual question that cannot be resolved on a motion to dismiss. *Cairns v. Franklin Mint Co.,* 24 F.Supp.2d 1013, 1037 (C.D.Cal.1998). It is established that a violation of the false advertising law is also a violation of the UCL. *Comm. on Children's Television, Inc. v. Gen. Foods Corp.,* 35 Cal.3d 197, 210, 197 Cal.Rptr. 783, 673 P.2d 660 (1983).

**\*6** Here again, Silicon Image's Complaint is deficient to the extent that the UCL Claim fails to provide Analogix "fair notice" that the UCL Claim is based on a false advertising theory. On the other hand, the allegations in the Complaint would be sufficient to support such a theory if it were expressly alleged in the UCL Claim. In particular, Silicon Image has alleged that Analogix has told customers of Silicon Image that they can replace their Silicon Image chips with those of Analogix. Drawing all reasonable inferences in favor of Silicon Image, one could reasonably infer based on this allegation that the statements were likely to mislead the public to the extent they suggested that use of the Analogix chip with Silicon Image software was permissible under the Software License Agreement. Therefore, this theory of liability is adequately pleaded except insofar as Silicon Image has failed to identify the theory in its UCL Claim.

**3. Unfair Business Practices**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

As noted above, the UCL defines unfair competition as any "unlawful, unfair or fraudulent business practice."Cal. Bus. & Prof. §§ 17200*et seq.* In *Cel-Tech Commcations v. Los Angeles Cellular Telephone Co.,* the California Supreme Court clarified the test for determining what business practices fall under the "unfair prong" in the context of suits by competitors:

to guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition. We thus adopt the following test: When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999).

Here, Silicon Image asserts that Analogix's promotion of "drop-in replaceability" is unfair because, as alleged in the Complaint, its development of both its semiconductor layout designs and the configuration software used with its chips has involved "substantial expense." *See* Complaint at 3. Further, the layout designs are, allegedly, the source of Silicon Image's competitive advantage in the marketplace. Drawing all reasonable inferences in Silicon Image's favor, these allegations could support the inference that Analogix conduct, which creates a disincentive for semiconductor manufacturers to invest in the development of semiconductor chips and related software, threatens to harm competition. Silicon Image must, however, provide adequate notice in the UCL Claim itself that it is proceeding on such a theory.

While Analogix is correct that Silicon Image will be required to establish that Analogix's conduct harms *competition* as a whole and not just Silicon Image, Analogix has not cited any case that persuades the Court that dismissal of the claim is appropriate at the pleading stage. Indeed, neither of the cases on which Analogix relies were decided on the pleadings. *See RLH Indus., Inc. v. SBC Commc'ns, Inc.,* 133 Cal.App.4th 1277, 1286, 35 Cal.Rptr.3d 469 (2005) (holding that there was no evidence of harm to competition and on that basis granting summary judgment); *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.,* 178 F.Supp.2d 1099 (C.D.Cal.2001) (holding that evidence of harm to competition was not sufficient to survive summary judgment). Accordingly, the Court concludes that Silicon Image's allegations of unfair business practices under the UCL are sufficient except to the extent that the UCL Claim does not identify this theory of liability.

## C. Preemption

**\*7** Analogix asserts that even if Silicon Image has adequately alleged tortious interference and false advertising, its UCL Claim is, nonetheless, preempted to the extent it is based on this alleged unlawful conduct, both by the Copyright Act and the California Uniform Trade Secret Act.[FN2]The Court concludes that although Silicon Image will be required to amend its Complaint to identify these theories of liability, the UCL Claim based on tortious interference and false advertising is not preempted.

> FN2. Analogix stipulated at oral argument that it does *not* challenge the "unfair" business practices alleged by Silicon Image on the basis of preemption.

### 1. Preemption Under the Copyright Act

The Copyright Act preempts a state law cause of action when two requirements are met. First, the rights asserted under state law must be " 'rights that are equivalent' to those protected by the Copyright

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 7

Act."*Kodadek v. MTV Networks, Inc.,* 152 F.3d 1209, 1212 (9th Cir.1998) (quoting 1 Nimmer, § 1.01[B] at 1-11)."Second, the work involved must fall within the 'subject matter' of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103."*Id.* Here, the Court concludes that the first prong is not met either as to the intentional interference claim or the false advertising claim. Silicon Image's UCL Claim, to the extent it is based on these theories of liability, is not preempted by the Copyright Act.

The determination of whether state law rights are "equivalent" to those protected by the Copyright Act "involves determining whether the state law claim contains an element not shared by the federal law."*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.,* 7 F.3d 1434, 1440 (9th Cir.1993). The Copyright Act provides copyright owners with the exclusive rights of reproduction, distribution, performance, display and preparation of derivative works. 17 U.S.C § 106. "If a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law is not preempted by the Copyright Act."*Altera Corp. v. Clear Logic,* 424 F.3d 1079, 1089 (9th Cir.2005) (internal citation omitted). Here, both the false advertising allegation and the tortious interference allegation include the required extra element necessary to avoid preemption by the Copyright Act.

### a. False Advertising

The false advertising allegation requires that Silicon Image establish that Analogix has made representations that are false or misleading. A number of courts have held that claims that involve the element of misrepresentation or deception-including false advertising-are not equivalent to any exclusive right protected by the Copyright Act, and therefore are not preempted. *See, e.g., Baekert Progressive Composites v. Wave Cyber Ltd.,* 2007 WL 1110736 (S.D.Cal. April 5, 2007) (holding that California state law claim for false advertising was not preempted by Copyright Act because claim included

element of misrepresentation) (citing *Valente-Kritzer Video v. Pinckney,* 881 F.2d 772 (9th Cir.1989) (holding that fraud claim was not substantially equivalent to any right protected under Copyright Act because it required proof of misrepresentation)); *Tracy v. Skate Key, Inc.,* 697 F.Supp. 748, 750-51 (S.D.N.Y.1988) (holding that claim for trademark dilution was not preempted because it involved the "additional element" of misrepresentation or deception); *Brignoli v. Balch, Hardy & Scheinman, Inc.,* 645 F.Supp. 1201, 1205 (S.D.N.Y.1986) (holding that fraud claim was not preempted by the Copyright Act because it contained the "extra element" of misrepresentation). The Court finds these cases persuasive and therefore concludes that the UCL Claim is not preempted to the extent it is based on false advertising.

**\*8** The Court concludes that *Motown Records Corp. v. George A. Hormel & Co.,* 657 F.Supp. 1236 (C.D.Cal.1987), cited by Analogix, is distinguishable. In that case, the defendant was alleged to have produced and aired a television advertisement for its product, Dinty Moore Stew, in which a modified version of the Supremes song "Baby Love" was performed by three women who were made to look like the members of the Supremes. *Id.* at 1237.The plaintiff alleged that the advertisement constituted unfair competition in violation of California's UCL because the advertisement falsely implied that the image of the Supremes was used with the permission of the plaintiff, who owned the copyright to the song. *Id.* at 1239.The court held that the Copyright Act preempted the UCL claim because "the essence of the plaintiff's claim derived from defendants' unauthorized use of a copyrighted work."*Id.* at 1240.In contrast, the alleged misrepresentation here is independent of the alleged copyright violation: Silicon Image does not allege that Analogix has created the false impression that its reproduction of the Silicon Image software is authorized-which would amount to copyright infringement claim-but rather, that Silicon Image customers may use the Silicon Image software in combination with the Analogix chip without violating

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1455903 (N.D.Cal.)
(Cite as: 2007 WL 1455903 (N.D.Cal.))

Page 8

the Silicon Image Software License Agreement.
Because of this additional element that is not
present in *Motown Records,* the holding in that case
does not apply here.

### b. Intentional Interference with Contractual Relations

The Court concludes that the tortious interference
allegation is based on rights not protected by the
Copyright Act and therefore, that the claim is qual-
itatively different from a copyright infringement
claim. In reaching this conclusion, the Court finds
persuasive the reasoning in *Altera Corp. v. Clear
Logic,* 424 F.3d 1079, 1089 (9th Cir.2005).

In *Altera,* plaintiff Altera and defendant Clear Lo-
gic were competitors in the semiconductor industry.
*Id.* at 1081.Altera manufactured chips called
"programmable logic devices" ("PLDs"), which
customers tailored to their specific needs using a
software program that was also developed and sold
by Altera. *Id.* Clear Logic manufactured a different
kind of chip called an Application-Specific Integ-
rated Circuit ("ASIC"). ASIC chips usually use less
power than PLDs and are often cheaper than PLD's.
*Id.* Traditionally, customers who wanted to replace
PLDs with ASICs had to go through a lengthy and
difficult process to develop an ASIC that worked.
*Id.* at 1082.However, Clear Logic developed a tech-
nique that was much faster and more dependable to
create ASIC chips to replace Altera PLDs: Clear
Logic would have Altera customers send it the
"bitstream" file that was generated during the pro-
gramming of the PLD. *Id.*Using that bitstream,
Clear Logic could create a compatible ASIC chip in
just a few weeks. *Id.*

**\*9** Altera asserted that Clear Logic, in having Al-
tera customers send it the bitstreams, was intention-
ally interfering with Altera's contractual relations
with its customers because the software license
agreement which all Altera's customers must accept
prohibits use of the Altera software for any purpose
other than development of PLDs by Altera. *Id.* at

1082.Clear Logic, on the other hand, argued that
this claim was preempted by the Copyright Act be-
cause the alleged conduct really amounted to repro-
duction of Altera's software in violation of the
copyright infringement. *Id.* at 1090.The Ninth Cir-
cuit held that the claim was not preempted, explain-
ing its conclusion as follows:

Altera's customers use software to create a bit-
stream (which is essentially information) and
provide that information to Clear Logic, despite the
terms of the agreement that restrict the customers to
using that information for programming Altera
products. The right at issue is not the reproduction
of the software as Clear Logic argues, but is more
appropriately characterized as the use of the bit-
stream.

*Id.* at 1089.

Here, as in *Altera,* the right at issue is not the repro-
duction of Silicon Image's semiconductor chip-a
right that is protected under the Copyright Act-but
rather, the use of Silicon Image's software in a man-
ner that is in violation of the Software License
Agreement. The latter provides the "extra element"
necessary to avoid preemption.

Accordingly, to the extent the UCL claim is based
on tortious interference with contract, the claim is
not preempted by the Copyright Act.

### 2. Preemption Under the UTSA

California's Uniform Trade Secrets Act ("UTSA")
explicitly states that it does not preempt claims
which derive from "(1) contractual remedies,
whether or not based upon misappropriation of a
trade secret, (2) other civil remedies that are not
based upon misappropriation of a trade secret, or
(3) criminal remedies, whether or not based upon
misappropriation of a trade secret."Cal. Civ.Code §
3426.7(b). Courts have held that where a claim is
based on the "identical nucleus" of facts as a trade
secrets misappropriation claim, it is preempted by
UTSA. *See Digital Envoy, Inc. v. Google, Inc.,* 370

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.Supp.2d 1025, 1033 (N.D.Cal.2005) (holding that unfair competition claim was preempted by UTSA because it was based on same nucleus of facts as trade secret misappropriation claim); *cf. Postx Corp. Secure Data In Motion, Inc.,* 2004 WL 266 3518 (N.D.Cal. Nov. 20, 2004) at * 3 (holding that unfair competition claim was not preempted by UTSA where the claim was based on "an alternative theory of liability as well as new facts").

Here, both the false advertising and tortious interference allegations are based on new facts that go beyond the alleged misappropriation of trade secrets, namely facts relating to the Software License Agreement. Further, neither the false advertising claim nor the tortious interference claim is based on the theory that the wrong for which redress is sought is the misappropriation of trade secrets. In contrast, in *Ernest Paper Products, Inc. v. Mobil Chemical Co., Inc.,* 1997 WL 33483520 (C.D.Cal. Dec.2, 1997), on which Analogix relies, a claim for intentional interference with contractual relations was found to be preempted by UTSA because the wrongful conduct on which the tortious interference claim was based was the alleged misappropriation by the defendant of the plaintiff's confidential customer lists. The Court also rejects Analogix's reliance on *Samsung Electronics America, Inc. v. Bilbruck,* 2006 WL 301287 (Cal.Super.Ct. Oct. 19, 2006). In that case, the court held that a claim for intentional interference with contract was preempted by UTSA because the claim was based on misappropriation of trade secrets but the court did not describe the facts on which either claim was based.

**\*10** The Court concludes that the UCL Claim is not preempted by the UTSA.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED IN PART and DENIED IN PART. In particular, the Unfair Competition Claim is deficient to the extent it fails to identify any specific theories in the Claim other than copyright infringement and trade secret theft, both of which are preempted. On the other hand, the factual allegations in the Complaint are sufficient to support the theories of liability on the UCL Claim identified by Plaintiff in its Opposition brief. Further, to the extent that the UCL Claim is based on those theories, it is not preempted. Plaintiff shall be given leave to amend the Complaint, within ten (10) days of the date of this Order, to expressly allege in the UCL Claim the theories identified in its Opposition brief.

IT IS SO ORDERED.

N.D.Cal.,2007.
Silicon Image, Inc. v. Analogix Semiconductor, Inc.
Slip Copy, 2007 WL 1455903 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.